DAVID A. HUBBERT
Acting Assistant Attorney General

JEREMY N. HENDON (ORBN 982490)
AMY MATCHISON (CABN 217022)
Trial Attorneys
United States Department of Justice, Tax Division
P.O. Box 683, Ben Franklin Station
Washington, D.C. 20044
Telephone:     (202) 353-2466
               (202) 307-6422
Fax:           (202) 307-0054
E-mail: Jeremy.Hendon@usdoj.gov
        Amy.T.Matchison@usdoj.gov
        Western.Taxcivil@usdoj.gov

BRIAN J. STRETCH (CABN 163973)
United States Attorney
THOMAS MOORE (ALBN 4305-O78T)
Chief, Tax Division
COLIN C. SAMPSON (CABN 249784)
Assistant United States Attorney
450 Golden Gate Avenue, 11th Floor
San Francisco, California 94102
Telephone: (415) 436-7020
Email:  Colin.Sampson@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Petitioner,<br><br>  v.<br><br>COINBASE, INC.,<br><br>  Respondent. | Case No.<br><br>**DECLARATION OF DAVID UTZKE IN SUPPORT OF PETITION TO ENFORCE INTERNAL REVENUE SERVICE SUMMONS** |

I, David Utzke, pursuant to 28 U.S.C. § 1746, declare and state:

1. I am employed as a duly commissioned Senior Revenue Agent by the Internal Revenue Service (IRS) and am assigned to the IRS's Offshore Compliance Initiatives program. My post of duty is in Phoenix, Arizona.

2. The IRS is conducting an investigation to determine the identity and correct federal income tax liability of United States persons who conducted transactions in a convertible virtual currency as that term is defined in IRS Notice 2014-21 for the years ended December 31, 2013, 2014, and 2015.

3. Coinbase, Inc., is a United States corporation with its principal place of business in San Francisco, California.

4. Bryan Stiernagle is a Program Manager (International Programs) assigned to the IRS's Offshore Compliance Initiatives program with a post of duty in Brooklyn Center, Minnesota.

5. In furtherance of the investigation for the years ended December 31, 2013, 2014, and 2015, in accordance with 26 U.S.C. § 7602, on December 6, 2016, a summons was issued directing Coinbase to appear at 450 Golden Gate Avenue, San Francisco, California 94102 on January 9, 2017, at 9:00 a.m., and to produce for examination books, records, papers and other data as described in the summons. A copy of the summons is attached as Exhibit A.

6. In furtherance of the investigation, in accordance with 26 U.S.C. § 7609(f), and pursuant to Court Order, an attested copy of the summons was served on Coinbase. Pursuant to the agreement of the parties, counsel for Coinbase, Grant P. Fondo, accepted service of the summons on December 8, 2016.

7. The summons seeks information regarding United States persons who, at any time during the period January 1, 2013, through December 31, 2015, conducted transactions in a convertible virtual currency as defined in IRS Notice 2014-21.

8. IRS Notice 2014-21 describes how the IRS applies U.S. tax principles to transactions involving virtual currency. A copy of Notice 2014-21 is attached as Exhibit B. Virtual currencies that can be converted into traditional currency are property for tax purposes, and a taxpayer can have a gain or loss on the sale or exchange of a virtual currency, depending on the taxpayer's cost to purchase the

virtual currency (that is, the taxpayer's tax basis).

9. Under general tax principles applicable to property transactions, the following virtual currency transactions are reportable in the manner indicated:

- Wage, salary, or other income paid to an employee with virtual currency, is reportable by the employee as ordinary income and subject to employment taxes paid by the employer.
- Virtual currency received by a self-employed individual in exchange for goods or services is reportable as ordinary income and is subject to self-employment tax. This would include a person who "mines" virtual currency as a trade or business.
- Virtual currency received in exchange for goods or services by a business is reportable as ordinary income.
- Gain on the exchange of virtual currency for other property is generally reportable as a capital gain if the virtual currency was held as a capital asset and as ordinary income if it is property held for sale to customers in a trade or business.
- Gain on the sale of property held as a capital asset in exchange for virtual currency is reportable as a capital gain.
- Payments made in virtual currency are subject to information reporting requirements to the same extent as payments made in real currency or instruments denominated in real currency.

10. Taxpayers who have engaged in such virtual currency transactions and have not properly reported them have failed to comply with internal revenue laws.

11. The IRS maintains various databases with information from filed returns. One such database is the Modernized Tax Return Data Base (MTRDB), which contains some of the information reported on electronically filed tax returns. Capital gain or loss for property transactions (which gains and losses from virtual currency are considered) are reported on Form 8949, which is attached to Schedule D of a Form 1040. The Form 8949 includes a section for the description of the property sold,

and this information is captured in the MTRDB and can be queried using search terms. The query is limited to the transactional detail provided by an individual filing a Form 8949. The query results, which include unique taxpayer identification numbers, occurrences of the search term item, and the tax year of an occurrence, can then be exported.

12. In 2013, 122,515,000 returns were electronically filed out of the 147,910,000 total filed returns (approximately 83% of total returns filed were electronically filed). In 2014, 125,821,000 returns were electronically filed out of the 149,510,000 total filed returns (approximately 84% of total returns filed were electronically filed). And, in 2015, 128,784,000 returns were electronically filed out of the 150,694,000 total filed returns (approximately 83% of total returns filed were electronically filed).

13. The IRS searched the MTRDB for Form 8949 data for tax years 2013 through 2015. I received the results of those searches. Those results reflect that in 2013, 807 individuals reported a transaction on Form 8949 using a property description likely related to bitcoin; in 2014, 893 individuals reported a transaction on Form 8949 using a property description likely related to bitcoin; and in 2015, 802 individuals reported a transaction on Form 8949 using a property description likely related to bitcoin.

14. In a virtual currency system, a user creates a "wallet." A wallet is a digital computer file that contains information used in sending and receiving units of a virtual currency. When the wallet is created, a random wallet address is generated; this is a unique alphanumeric identifier, which is conceptually similar to an e-mail address.

15. A wallet holds any number of public keys with their associated private keys. The public key and private key are conceptually similar to a user ID and a digital signature, respectively. A virtual currency user will electronically send their public key to anyone with whom he or she wants to exchange units of a virtual currency. The public key contains information that verifies the wallet and the private key used to authenticate a transaction. If the transaction is signed by both parties, the transaction is complete. Once the transaction has been confirmed as authentic, it is added to the blockchain.

16. All transactions in a virtual currency blockchain can be viewed by the public on any

computer connected to the Internet. However, the blockchain transactional history only reveals the date, the time, the amount (denominated in virtual currency), and the wallet addresses associated with a transaction. The blockchain does not identify the actual identities of the wallet owners.

17. In order to buy virtual currency, the virtual currency user will have to find some way to transfer traditional currency to someone who already has virtual currency and wishes to exchange it for traditional currency. This exchange can occur with anyone holding a virtual currency, but tends to be handled through businesses called virtual currency exchangers that trade between virtual currencies and traditional currencies. A virtual currency exchanger functions much like an exchanger for traditional currency except it can exchange virtual currency for traditional currency or vice versa.

18. Virtual currency exchangers may also provide wallet services, which allow a user to quickly authorize virtual currency transactions with another user through the use of a traditional money account held at the exchanger similar to a margin account held with a stock broker. Wallet accounts are easily accessed through a computer or mobile device like a smartphone.

19. Although the blockchain is a public ledger of all virtual currency transactions, the blockchain does not record information that identifies the persons involved in the transaction. The only third parties possessing information relating to virtual currency transactions that identify the persons involved are their exchangers and any intermediaries to the parties to the transaction and their exchangers.

20. Coinbase, Inc., is a Delaware corporation that operates a bitcoin wallet and exchange business. Coinbase started business in June 2012 as a digital wallet service. By October 2012, the company launched the ability to buy and sell bitcoin through bank transfers. According to its website (www.coinbase.com), the company currently offers buy/sell trading functionality in 33 countries, with 5.9 million customers served, and $6 billion exchanged in bitcoin. Additional research on Coinbase shows that in the 30-day period ending December 14, 2015, Coinbase was the fourth largest exchanger globally of bitcoin into U.S. dollars and the largest exchanger in the U.S. of bitcoin into U.S. dollars.

21. As of December 2015, Coinbase had four main products: (1) an exchange for trading bitcoin and fiat currency (funded through bank or wire transfers); (2) a wallet for bitcoin storage and

1 transactions; (3) an application programming interface (API) for developers and merchants to build applications and accept bitcoin payments; and (4) "Shift Card," the first U.S.-issued bitcoin debit card. The Shift Card is a VISA branded debit card that enables Coinbase users in the U.S. (currently forty-one states, Washington, D.C., and Puerto Rico) to spend bitcoin anywhere VISA is globally accepted.

22. On April 23, 2013, Coinbase registered with FinCEN as a Money Transmitter. As a Money Transmitter, Coinbase is required by the Bank Secrecy Act and FinCEN regulations to develop, implement, and maintain an effective anti-money laundering program that, among other things, includes a process for verifying customer identification. Coinbase's user agreement states that all U.S. users who wish to use Coinbase's USD Wallet or the Coinbase Exchange, at minimum, must:

- Establish a Coinbase Account by providing a name, authenticating an e-mail address, and accepting the Coinbase User Terms;
- Add and verify a phone number;
- Add and verify a bank account;
- Add personal details (full name, date of birth, residential address); and
- Complete identity verification by answering a few questions.

23. In addition, users based in New York State conducting a bitcoin transaction in excess of $3,000 must submit a copy of an acceptable form of identification (i.e. passport, state driver's license, or state identification card).

24. Coinbase offers its users different ways to organize, store, and access their virtual currency. Each Coinbase account includes at least a standard wallet. A wallet is a digital computer file that contains information used in sending and receiving units of a virtual currency. In addition to having a standard wallet account, a Coinbase user can also establish a vault account. A vault account still receives virtual currency, but differs from a standard wallet account in that the virtual currency stored in a vault account cannot be immediately withdrawn – any withdrawal would be delayed depending on the additional security steps a user has defined. Further, a vault account may be an individual vault that requires only one person's permission (the Coinbase account user) to withdraw funds, or a group vault

that requires confirmations from multiple users when the Coinbase account user requests a withdrawal.

25. Regardless of whether a Coinbase user has a standard wallet account or a vault account, Coinbase automatically generates a new wallet address after every transaction. That transaction specific wallet address remains associated with the Coinbase user's account forever. Coinbase users can view a complete list of the wallet addresses associated with their account by accessing the Coinbase website.

26. The summons, attached as Exhibit A, seeks records that may reveal the identity and transaction activity of Coinbase users, from January 1, 2013 through December 31, 2015, who are U.S. persons. This information may be relevant to the underlying IRS investigation into the identity and correct federal income tax liability of U.S. persons who conducted transactions in a convertible virtual currency as that term is defined in IRS Notice 2014-21.

27. More specifically, request number 1 seeks account/wallet/vault registration (collectively, "account") records for each account owned or controlled by the user, including the complete user profile, history of changes to the user profile from account inception, complete user preferences, complete user security settings and history (including confirmed devices and account activity), complete user payment methods, and any other information related to the funding sources for the account.

    a. It is expected that account registration records and the complete user profile should provide the identity of each Coinbase user during the summoned time period. Additionally, this information may be relevant in verifying the identity of the Coinbase user and assisting in the determination of whether they are a U.S. person.

    b. The history of changes to the user profile may identify if a Coinbase user has employed an alias, used a nominee, or some other sort of tactic to disguise his identity after the initial user account setup. This information may be relevant in determining, and verifying, the identity of Coinbase users who are U.S. persons.

    c. The user preferences, security settings and history may reveal how the account was managed and controlled by the user and any other third parties. This information may be relevant in determining, and verifying, the identity and

Declaration of David Utzke in Support of
Petition to Enforce Internal
Revenue Service Summons                7

transaction activity of Coinbase users who are U.S. persons.

  d. A user's payment methods may identify sources of funds that may have been undisclosed for tax purposes. This information may be relevant in determining, and verifying, the identity and transaction activity of Coinbase users who are U.S. persons.

28. Request number 2 seeks any records associated with Know-Your-Customer due diligence Coinbase performed on its users that was not produced in response to request number 1. These records may be relevant in determining, and verifying, the identity of Coinbase users who are U.S. persons.

29. Request number 3 seeks all powers of attorney, letters of wishes, corporate minutes, or other agreements or instructions records for any account for which the registered Coinbase user gave a third party access, control, or transaction approval authority. These records may be relevant in identifying Coinbase users who have employed an alias, pseudonym, or used a nominee while transacting in virtual currency. In addition, these records may be relevant in determining the identity of the person(s) that controls the account and is initiating transactions involving its assets, and whether they are U.S. persons.

30. Request number 4 seeks all records of account activity, including transaction logs or other records that reflect the particulars of a transaction: the date, the amount, the transaction type, the account post-transaction balance, requests or instructions to send or receive bitcoin, the names or other identifiers of counterparties, and where counterparties transaction through their own Coinbase accounts – all available information identifying the users of such accounts and their contact information. It is expected that these records should provide the information necessary to determine the correct federal tax liability of Coinbase users, who are also U.S. persons, whose transaction(s) in virtual currency constituted a taxable event. For example, wallet addresses may be relevant in determining, and verifying, the transaction activity of Coinbase users who are U.S. persons. Moreover, records that identify any counterparty may be relevant in determining whether that party is also a U.S. person, whose participation in the transaction has triggered a taxable event.

31. Request number 5 seeks the records of all payments processed for each merchant for

Declaration of David Utzke in Support of
Petition to Enforce Internal
Revenue Service Summons   8

which Coinbase acts as the Payment Service Provider, including the records identifying the user of the wallet charged for each payment processed. In addition, if the wallet charged cannot be identified by Coinbase, then the date and amount of the transaction, and any other information that will enable the merchant to identify the transaction should be provided. These records may be relevant in identifying users who are U.S. persons that have transacted in virtual currency to buy goods and services from merchants and whether a taxable event has resulted.

32. Request number 6 seeks all correspondence between Coinbase and its users (or any third party that has access to the account) about the account. This information may be relevant in determining, and verifying, the identity of the account user. Moreover, communications pertaining to the account may be relevant to reveal other accounts and U.S. persons involved in virtual currency transactions that constitute taxable events.

33. Request number 7 seeks all periodic statements of accounts or invoices (or the equivalent). For example, Coinbase can generate a Cost Basis for Tax Report for its users. These reports and other records may be relevant in determining the federal tax liability of Coinbase users who are U.S. persons who have engaged in virtual currency transactions that have resulted in taxable events.

34. Request number 8 seeks all records of payments to and from the Coinbase account user. These records may be relevant in identifying sources of funds used by Coinbase account users in connection with virtual currency transactions. These records may assist in investigating possible tax non-compliance and tax liability of Coinbase users who are U.S. persons. These records may also assist in tracing funds to other sources that may be relevant in determining tax non-compliance and tax liability.

35. Request number 9 seeks all exception reports produced by Coinbase's AML (Anti-Money Laundering) System and all records related to investigations of those reported exceptions. These records may be relevant in assisting with tax non-compliance investigations by identifying beneficial owners and parties involved in virtual currency transactions conducted through aliases, pseudonyms, or nominees as well as identifying internet protocol and email addresses of U.S. persons. The records sought do not include any suspicious activity reports (SAR) that were ultimately generated as a

consequence of an AML alert or any other information that would reveal the existence of a SAR.

36. Despite discussions between the parties, Coinbase has failed to comply with the summons and has not produced the books, records, papers, and other data demanded in the summons.

37. Coinbase's failure to comply with the summons continues to this date.

38. The books, records, papers, and other data demanded in the summons are not already in the possession of the IRS.

39. All administrative steps as required by the Internal Revenue Code for issuance and service of the summons have been followed.

40. The identities of the John Does are unknown. Accordingly, the IRS does not know whether there is any "Justice Department referral," as that term is described in Section 7602(d)(2) of the Internal Revenue Code, in effect with respect to any unknown John Does for the years ended December 31, 2013, 2014, and 2015.

41. The IRS is not seeking records for certain identified persons who are known to the IRS but who would have been otherwise included in the summons because they were Coinbase users during the relevant period. A list of these individuals will be provided to Coinbase.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this __th day of March, 2017.

DAVID UTZKE
Senior Revenue Agent
Internal Revenue Service

Declaration of David Utzke in Support of
Petition to Enforce Internal
Revenue Service Summons     10