Jeffrey K. Berns (SBN 131351)
    jberns@law111.com
Albert G. Lum (SBN 259053)
    alum@law111.com
**BERNS WEISS LLP**
6800 Owensmouth Avenue, Suite 310
Canoga Park, CA 91303
Telephone:     (818) 961-2000
Facsimile:     (818) 936-0232


Lee A. Weiss (SBN 297834)
    lweiss@law111.com
**BERNS WEISS LLP**
585 Stewart Avenue, Suite L-20
Garden City, NY 11530
Telephone:     (516) 222-2900
Facsimile:     (818) 936-0232


Attorneys for Proposed Intervenors John
Does 1 and 2

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                  Petitioner,<br><br>          v.<br><br>COINBASE, INC.,<br><br>                  Respondent. | Case No.: 3:17-cv-01431-JSC<br><br>**NOTICE OF MOTION AND MOTION TO INTERVENE, TO QUASH SUMMONS, OR FOR PROTECTIVE ORDER, OR FOR AN ORDER SCHEDULING AN EVIDENTIARY HEARING AND PERMITTING LIMITED DISCOVERY**<br><br>Date:          June 22, 2017<br>Time:          9:00 a.m.<br>Courtroom:   F, 15th Floor<br>Judge:         Hon. Jacqueline Scott Corley |

Motion to Intervene, to Quash Summons, or for Protective Order, or for an Order
Scheduling an Evidentiary Hearing and Permitting Limited Discovery

1

## TABLE OF CONTENTS

2

PAGE

3

I.    INTRODUCTION ......................................................................... 2

II.   STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY ................... 4

4

      A.    IRS Guidance Concerning Virtual Currency ................................. 4

5

      B.    The Treasury Department Sharply Criticizes the IRS's Virtual Currency
            Policies Due to the IRS's Inability to Provide Clear Guidance to
            Taxpayers ............................................................................. 5

6

7

      C.    The IRS Acknowledges Its Failure to Provide Meaningful Virtual
            Currency Guidance to Taxpayers and the Need for It to Promulgate Such
            Guidance ............................................................................... 6

8

9

      D.    The IRS Fails to Issue Any Further Virtual Currency Guidance, but Seeks
            Information on Over One Million Coinbase Customers for Supposed
            Enforcement Purposes ............................................................. 6

10

      E.    The IRS Summons Covers Movants' Personal Information ............... 9

11

III.  ARGUMENT ............................................................................. 10

12

      A.    Movants Are Entitled to Intervene in This Proceeding as of Right ...... 10

            1.    This Application Is Timely ............................................. 10

13

            2.    Movants Have a Legally Protectable Interest ...................... 10

14

            3.    There Is a Clear Risk That Movants' Interests Will Be Impaired by
                  the Disposition of This Action ....................................... 11

15

            4.    Coinbase Cannot Fully Represent Movants' Interests, as the IRS Is
                  Not Investigating Coinbase ........................................... 12

16

      B.    Movants Readily Meet the Standards for Permissive Intervention Pursuant
            to Fed. R. Civ. P. 24(b) ......................................................... 12

17

            1.    This Court Has Independent Jurisdiction Over Movants' Challenge
                  to the IRS Summons .................................................. 13

18

19            2.    Movants' Defenses Are Relevant to the Validity of the Petition ...... 13

20            3.    The IRS Will Suffer No Prejudice and There Will Be No Undue
                  Delay if Movants Are Permitted to Intervene ...................... 13

21            C.    The Court Should Quash the IRS Summons As It Is an Abuse of Process
            by the Government Because It Was Issued in Bad Faith .................. 14

22

            1.    The IRS Does Not Have a Legitimate Purpose in Issuing the
                  Summons ................................................................ 14

23

                  a.    The Government's Meager Foundation for a Summons
                        Seeking the Identities of, and Three Years of Transactions
                        for, over One Million Taxpayers Reflects That the IRS
                        Does Not Have a Legitimate Purpose ....................... 15

24

25

26                  b.    The 9/21/16 TIGTA Report Shows That the IRS Does Not
                        Currently Have the Ability to Enforce Compliance with Its
                        Vague Virtual Currency Guidance Issued in 2014 ......... 16

27

28

**Motion to Intervene, to Quash Summons, or for Protective Order, or for an Order
Scheduling an Evidentiary Hearing and Permitting Limited Discovery**

**TABLE OF CONTENTS (cont'd)**

PAGE

   c. The IRS Summons Is Improper Because It Is Designed to Seek Information for Research, as Opposed to Tax Compliance, Purposes ................................................................ 16

   d. The IRS Has Previously Been Accused of Abusing Its Power to Improperly Further the Government's Political Agenda ...................................................................................... 18

  2. The Unjustifiably Broad Scope of the IRS Summons Indicates That It Has Not Been Issued in Good Faith ................................ 19

   a. The Government Has Failed to Address the Significant Risks Associated with Allowing the IRS to Maintain Sensitive Virtual Currency Data ................................... 20

 D. If the Court Does Not Quash the IRS Summons, It Should Issue an Appropriate Protective Order ........................................................ 23

  1. Movants Have Readily Demonstrated Good Cause ................................. 23

 E. If the Court Does Not Quash the Subpoena or Issue a Protective Order, Movants Are Entitled to Conduct Limited Discovery and Then an Evidentiary Hearing Concerning the IRS's Bad Faith ......................................... 24

  1. Movants Have Provided Specific Facts That Raise Doubts Concerning the IRS's Good Faith in Issuing the IRS Summons ............. 24

IV. CONCLUSION ............................................................................................. 25

**Motion to Intervene, to Quash Summons, or for Protective Order, or for an Order Scheduling an Evidentiary Hearing and Permitting Limited Discovery**

1

**TABLE OF AUTHORITIES**

2

**CASES**                                                                 **PAGES**

3
*2121 Arlington Heights Corp. v. I.R.S.*,
    109 F.3d 1221 (7th Cir. 1997) ................................................................. 11

4
*California ex rel. Lockyer v. United States*,
    450 F.3d 436 (9th Cir. 2006) .................................................................. 11

5

6
*Defs. of Wildlife v. Johanns*,
    No. C 04-4512 PJH, 2005 WL 3260986 (N.D. Cal. Dec. 1, 2005) ..................................... 12

7
*E.E.O.C. v. Nevada Resort Ass'n*,
    792 F.2d 882 (9th Cir. 1986) .................................................................. 13

8

9
*Hazel Green Ranch, LLC v. U.S. Dep't of Interior*,
    No. 1:07-CV-00414OWW-SMS, 2007 WL 2580570 (E.D. Cal. Sept. 5, 2007).................................. 12

10
*In re Roman Catholic Archbishop of Portland in Oregon*,
    661 F.3d 417 (9th Cir. 2011) .................................................................. 23

11

12
*LaSalle Nat. Bank*,
    437 U.S. 298 (1978)........................................................................... 14

13
*Matter of Does*,
    688 F.2d 144 (2d Cir. 1982) .................................................................. 15

14

15
*Mishewal Wappo Tribe of Alexander Valley v. Salazar*,
    534 F. App'x 665 (9th Cir. 2013) ............................................................. 12

16
*Nu Image, Inc. v. Does 1-3,932*,
    No. 2:11-CV-545-FTM-29, 2012 WL 1890854 (M.D. Fla. May 10, 2012) ............................... 9

17

18
*Pearson v. Miller*,
    211 F.3d 57 (3d Cir. 2000).................................................................... 23

19
*Ramirez v. United States*,
    No. SACV 13-00268 JVS, 2013 WL 10822053 (C.D. Cal. June 10, 2013)......................... 14

20

21
*Rivera v. NIBCO, Inc.*,
    364 F.3d 1057 (9th Cir. 2004) ................................................................ 23

22
*Sagebrush Rebellion, Inc. v. Watt*,
    713 F.2d 525 (9th Cir. 1983) ................................................................. 12

23

24
*Skellerup Indus. Ltd. v. City of Los Angeles*,
    163 F.R.D. 598 (C.D. Cal. 1995).............................................................. 23

25
*Sw. Ctr. for Biological Diversity v. Berg*,
    268 F.3d 810 (9th Cir. 2001) ................................................................. 11

26

27
*Stewart v. United States*,
    511 F.3d 1251 (9th Cir. 2008) ............................................................... 14

28

**Motion to Intervene, to Quash Summons, or for Protective Order, or for an Order
Scheduling an Evidentiary Hearing and Permitting Limited Discovery**

**TABLE OF AUTHORITIES (cont'd)**

CASES                                                                                      PAGES

*Tax Liabilities of: John Does, All Unknown Employees of Boundary Waters Rest. v.
United States,*
    866 F.2d 1015 (8th Cir. 1989) ............................................................... 20

*True the Vote, Inc. v. Internal Revenue Serv.,*
    831 F.3d 551 (D.C. Cir. 2016) ............................................................... 19

*United States v. Andrews,*
    No. MISC-95-280 GEB PAN, 1996 WL 442730 (E.D. Cal. May 24, 1996) ....................... 10

*United States v. Bisceglia,*
    420 U.S. 141 (1975) ............................................................................ 2

*United States v. Church of Scientology of Cal.,*
    520 F.2d 818 (9th Cir. 1975) ...............................................................24

*United States v. Dauphin Deposit Trust Co.,*
    385 F.2d 129 (3d Cir. 1967).................................................................. 19

*United States v. Humble Oil & Refining Co.,*
    488 F.2d 953 (5th Cir. 1974) ............................................................... 17

*United States v. Kersting,*
    891 F.2d 1407 (9th Cir. 1989) ............................................................. 15

*United States v. Kis*
    658 F.2d 526 (7th Cir. 1981) ............................................................... 24

*United States v. Samuels, Kramer & Co.,*
    712 F.2d 1342 (9th Cir. 1983) .............................................................24

*United States v. Powell,*
    379 U.S. 48 (1964)................................................................... 11, 14

*United States v. Ritchie,*
    15 F. 3d 592 (6th Cir. 1994) ............................................................... 15

*United States v. Sidley Austin Brown & Wood LLP,*
    No. 03 C 9355, 2004 WL 816448 (N.D. Ill. Apr. 15, 2004) .................................. 10, 13

*United States v. State of Wash.,*
    86 F.3d 1499 (9th Cir. 1996) ............................................................... 10

*United States v. Theodore,*
    479 F.2d 749 (4th Cir. 1973) ............................................................... 19

*Venegas v. Skaggs,*
    867 F.2d 527 (9th Cir. 1989) ............................................................... 13

Case No.: 3:17-cv-01431-JSC                Page iv
**Motion to Intervene, to Quash Summons, or for Protective Order, or for an Order
Scheduling an Evidentiary Hearing and Permitting Limited Discovery**

**TABLE OF AUTHORITIES (cont'd)**

STATUTES                                                                                   PAGES
26 U.S.C. § 7601(a) ............................................................................................ 17
26 U.S.C. § 7602(a) ............................................................................................ 14


RULES
Fed. R. Civ. P. 24(a)(2) ....................................................................................... 10
Fed. R. Civ. P. 24(b)(1)(B) ................................................................................. 12
Fed. R. Civ. P. 24(b)(3) ....................................................................................... 13

**Motion to Intervene, to Quash Summons, or for Protective Order, or for an Order
Scheduling an Evidentiary Hearing and Permitting Limited Discovery**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT, on June 22, 2017, at 9:00 a.m., in the United States District Court for the Northern District of California, Courtroom F, 15th Floor, located at 450 Golden Gate Avenue, San Francisco, California 94102, the Honorable Jacqueline Scott Corley, presiding, proposed Intervenors John Doe 1 and John Doe 2 ("Movants")[1] will move to intervene in the above-captioned proceeding pursuant to Federal Rule of Civil Procedure 24, for the purpose of moving, in the alternative, (a) to quash the John Doe summons ordered to be served upon Coinbase, Inc. pursuant to this Court's order dated November 30, 2016 (the "IRS Summons"), or (b) for a protective order concerning the IRS Summons, or (c) for an order scheduling an evidentiary hearing and permitting Movants to conduct limited discovery concerning the IRS Summons.

The Motion to Intervene is made on the grounds that Movants have an interest in this proceeding that will not be adequately and fully represented by the summoned party, Coinbase, Inc., and that this interest is sufficient to warrant intervention as a matter of right under Rule 24(a), or, alternatively, permissive intervention under Rule 24(b). The Motion to Quash, or, in the alternative, for a Protective Order is made on the grounds that (i) the IRS has no legitimate purpose in seeking all of the requested documents from Coinbase concerning its users, such that the Government is not acting in good faith, (ii) enforcement of the IRS Summons would constitute an abuse of process, and (iii) the categories of requested documents are so overbroad such that the IRS Summons would require the disclosure of a substantial amount of information and documents that are not relevant to the IRS's stated purpose in issuing the IRS Summons. The portion of the Motion seeking the alternative relief of an Order Scheduling an Evidentiary Hearing and Permitting Limited Discovery is made on the ground that Movants have alleged sufficient facts from which the Court can readily question the IRS's good faith in issuing the IRS Summons.

The Motion will be based on this Notice of Motion, the below Memorandum of Points and

---

[1] Simultaneously herewith, Movants are filing a motion for permission to proceed in this matter anonymously.

**Motion to Intervene, to Quash Summons, or for Protective Order, or for an Order Scheduling an Evidentiary Hearing and Permitting Limited Discovery**

Authorities; the Declarations of John Doe 1, John Doe 2, Lee A. Weiss, and Albert G. Lum, with exhibits; the accompanying request for judicial notice; the pleadings, orders, transcripts, and other papers on file in this action and in the related action captioned *In the Matter of the Tax Liabilities of John Does, United States person who, at any time during the period January 1, 2013, through December 31, 2015, conducted transaction in a convertible virtual currency as defined in IRS Notice 2014-21*, Case No. 3:16-cv-06658-JSC (N.D. Cal.); and any further evidence and arguments as may be presented at the hearing of this motion.

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.     INTRODUCTION**

        More than 40 years ago, the Supreme Court stated that the duty of the District Court with respect to an IRS summons was "to see that a legitimate investigation was being conducted and that the summons was no broader than necessary to achieve its purpose." *United States v. Bisceglia*, 420 U.S. 141, 146 (1975). The Supreme Court expounded on the District Court's role by stating, "[o]nce a summons is challenged it must be scrutinized by a court to determine whether it seeks information relevant to a legitimate investigative purpose and is not meant 'to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation.'" *Id.* at 151 (citing *United States v. Powell*, 379 U.S. 48, 58 (1964)). The IRS has not issued the subject summons pursuant to any "legitimate investigation," and, in any event, it is far broader than necessary to further the IRS's stated purpose of monitoring virtual currency tax compliance.

        The Government does not make any real attempt to offer facts concerning a legitimate IRS investigation, but instead, only pays lip service to that requirement by claiming that the IRS is conducting an investigation to determine the correct income tax liability of every U.S. citizen who conducted virtual currency transactions over a three-year period, of which there are millions.  Yet, the only action the IRS claims to have taken with respect to this supposed investigation is the issuance of the summons that is the subject of the enforcement petition.  Apart from the obvious circular reasoning on which the Government is relying, if the meager showing that the Government has made was sufficient, then the IRS would have unrestricted power to issue a summons to any

1    entity for any records it chose.  For example, the IRS could claim that is investigating the correct

2    income tax liability of every U.S. citizen who has transacted in cash to justify the issuance of a

3    summons to every single bank for all of its customers' ATM cash withdrawal activity.  This type of

4    boundless summons power is unquestionably not what the Supreme Court envisioned.

5        Perhaps even more troubling is that in connection with the proceeding in which this Court

6    approved the issuance of the IRS Summons, Coinbase and one of its customers raised significant

7    issues concerning the overbreadth of the summons and the dangers of allowing the IRS to have

8    access to personal information related to virtual currency, yet in this proceeding  the Government

9    has made no attempt to narrow the information or number of taxpayers covered by the summons to

10   reflect its stated goal of confirming compliance with the tax laws.  Instead, the Government's

11   enforcement petition ignores those issues completely and provides a grossly insufficient foundation

12   for its request that this Court compel Coinbase to identify over 1 million American citizens that

13   have transacted in virtual currency and to provide every piece of information in its possession

14   regarding those clients, including data concerning every single transaction over a 3-year period.

15       The IRS Summons is certainly not what Congress and the Supreme Court envisioned.  This

16   is not a circumstance where there is a well-defined group of taxpayers who are engaging in specific

17   activity that the IRS has deemed to be suspicious, such as using illegal tax shelters or engaging in

18   large cash transactions. Further, the breadth of the summons, which seeks substantial personal

19   information that is not at all relevant to tax compliance issues, and which could expose these

20   clients to significant risk of having their identity and funds stolen by hackers who have succeeded

21   previously in hacking the federal government, including the IRS, numerous times, makes it easy to

22   conclude that the Government is engaging in abuse of process.

23       Movants-Proposed Intervenors John Does 1 and 2, Coinbase customers whose accounts are

24   covered by the IRS Summons, are not filing this motion to prevent the IRS from seeking records

25   regarding their accounts due to a concern that they have violated any tax laws with respect to

26   virtual currency transactions. Instead, Movants' intent is to protect the interests of all of Coinbase's

27   customers who are subject to this overbroad summons, even though the IRS has made no showing

28   that any of them have engaged in suspect tax-avoidance conduct. Movants recognize that Coinbase

**Motion to Intervene, to Quash Summons, or for Protective Order, or for an Order
Scheduling an Evidentiary Hearing and Permitting Limited Discovery**

plans to oppose the Government's petition to enforce the summons and fully supports those efforts. However, as it is customers', and not Coinbase's, privacy interests that are at stake, intervention is appropriate to ensure that Coinbase's customers are fully protected.

Alleging that the Government has abused the John Doe summons process based on apparent ulterior motives is not done lightly here. However, the relevant facts readily support that conclusion. Nearly eight months ago, the Inspector General of the Treasury Department publicly slammed the IRS for issuing confusing and vague guidance regarding the taxation of virtual currency transactions in 2014, and then failing to take any steps in the next two years to provide taxpayers with any clarification. In response, the IRS conceded that such clarification was necessary, but it has yet to provide any new guidance. Nevertheless, the IRS is now seeking millions of records concerning virtual currency transactions under the guise of investigating compliance with the vague tax guidance that it has been unwilling, or unable, to clarify. Further, the Chairman of the IRS has repeatedly expressed his concern that the IRS is strapped for resources, such that it cannot effectively investigate tax compliance. Finally, the IRS Summons does not contain any dollar value or transaction thresholds, and seeks personal information concerning Coinbase's customers that has absolutely nothing to do with taxation issues. Putting these facts together easily suggests that the IRS has an improper motive in issuing the subject summons. Indeed, recent scandals reflect that the IRS is not unwilling to use its powers for non-tax collection purposes.

## II.    STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY

### A.    IRS Guidance Concerning Virtual Currency

In March 2014, the IRS issued Notice 2014-21 (the "2014 Notice"), which described how the IRS applies U.S. tax laws and general tax principles to transactions involving virtual currency. Declaration of David Utzke in Support of Petition to Enforce Internal Revenue Service Summons, filed on March 16, 2017 ("3/16/17 Utzke Declaration" or "3/16/17 Utzke Decl."), Ex. B (Dkt. Nos. 1-1; 1-3). The 2014 Notice states that "[convertible] virtual currency is treated as property," and "[g]eneral tax principles applicable to property transactions apply to transactions using virtual currency." 2014 Notice, § 4, A-1. Accordingly, a taxpayer must also pay capital gains tax if "the

**Motion to Intervene, to Quash Summons, or for Protective Order, or for an Order Scheduling an Evidentiary Hearing and Permitting Limited Discovery**

1    fair market value of property received in exchange for [convertible] virtual currency exceeds the

2    taxpayer's adjusted basis of the [convertible] virtual currency." 2014 Notice, § 4, A-6, A-7.

3         **B.**     **The Treasury Department Sharply Criticizes the IRS's Virtual Currency**

4                **Policies Due to the IRS's Inability to Provide Clear Guidance to Taxpayers.**

5          On September 21, 2016, the Treasury Inspector General for Tax Administration issued a

6    report titled "As the Use of Virtual Currencies in Taxable Transactions Becomes More Common,

7    Additional Actions Are Needed to Ensure Taxpayer Compliance"[2] ("9/21/16 TIGTA Report"),

8    which criticized the IRS for, among other things, its failure to provide adequate guidance to

9    taxpayers concerning the tax consequences of virtual currency transactions. The Report noted

10   that while the IRS had received and reviewed 36 public comments concerning the 2014 Notice, it

11   had taken no action to address these comments even though "information requested by the public

12   [would have been] helpful in understanding how to comply with the tax reporting requirements

13   when using or receiving virtual currencies." 9/21/16 TIGTA Report at 3. The Report further

14   stated that, while the IRS acknowledges there may be "a risk of reporting noncompliance through

15   the use of virtual currencies in taxable transactions," the IRS does not even have "a methodology

16   for gathering data on virtual currency use in taxable transactions—data that are necessary to

17   analyze the risk of noncompliance and to estimate its significance." 9/21/16 TIGTA Report at 13.

18         To address the IRS's failures, the Treasury Inspector General recommended that the IRS:

19       1)   develop a coordinated virtual currency strategy that includes outcome goals, a
20             description of how the agency intends to achieve those goals, and an action plan with
               a timeline for implementation;

21       2)   provide updated guidance to reflect the necessary documentation requirements and tax
22             treatments needed for the various uses of virtual currencies; and

23       3)   revise third-party information reporting documents to identify the amounts of virtual
               currencies used in taxable transactions

24   9/21/16 TIGTA Report at Highlights; 8-16.

25

26

27   _____

     [2] A copy of the 9/21/16 TIGTA Report is attached as Exhibit 1 to Movants' Request for Judicial
     Notice ("RFJN").

28

**Motion to Intervene, to Quash Summons, or for Protective Order, or for an Order**
**Scheduling an Evidentiary Hearing and Permitting Limited Discovery**

**C.     The IRS Acknowledges Its Failure to Provide Meaningful Virtual Currency Guidance to Taxpayers and the Need for It to Promulgate Such Guidance.**

The IRS agreed with all of the Treasury Inspector General's recommendations (9/21/16 TIGTA Report at 8, 11, 16), but raised its limited budget as an excuse for any future delays in issuing revised virtual currency guidance:

> The IRS agreed that additional guidance would be helpful; however, the IRS conveyed that guidance allocation decisions are based on available resources and other competing organizational and legislative priorities. The IRS will share this recommendation for guidance with the IRS's Office of Chief Counsel for coordination with the Department of the Treasury's Office of Tax Policy.

9/21/16 TIGTA Report at 11. In response, the Treasury Inspector General noted the importance of this guidance such that the IRS should make it a priority:

> While we understand that resources are limited and subject to competing priorities, the IRS's current guidance related to virtual currencies is insufficient. To help taxpayers voluntarily comply with their tax obligations, the IRS should devote some of its efforts to provide adequate direction in this new and complex area.

9/21/16 TIGTA Report at 12.

**D.     The IRS Fails to Issue Any Further Virtual Currency Guidance, but Seeks Information on Over One Million Coinbase Customers for Supposed Enforcement Purposes.**

Despite agreeing with the 9/21/16 TIGTA Report's recommendations, the IRS has not issued any further guidance concerning virtual currency. Yet, not even two months later, on November 17, 2016, the Government filed its *Ex Parte* Petition for Leave to Serve "John Doe" Summons[3] (the "Summons Issuance Proceeding") upon Coinbase, Inc. pursuant to 26 U.S.C. § 7609(h)(2). Coinbase is a virtual currency wallet and exchange where merchants and consumers can transact with virtual currencies like bitcoin, which is registered with FinCEN (3/16/17 Utzke Decl., ¶ 22) and a licensed money transmitter in 35 states, the District of Columbia, and Puerto

---

[3] *See* related action *In the Matter of the Tax Liabilities of John Does, United States person who, at any time during the period January 1, 2013, through December 31, 2015, conducted transaction in a convertible virtual currency as defined in IRS Notice 2014-21*, Case No. 3:16-cv-06658-JSC (N.D. Cal.).

**Motion to Intervene, to Quash Summons, or for Protective Order, or for an Order Scheduling an Evidentiary Hearing and Permitting Limited Discovery**

Rico. RFJN, Ex. 2. The IRS Summons seeks the identification of, and substantial personal and transaction information for, over one million Coinbase customers.3/16/17 Utzke Decl., ¶ 20.

The IRS Summons (Exhibit 1 to the accompanying Declaration of Albert G. Lum ("Lum Decl.")), defines the class of persons purportedly under investigation as "United States persons who, at any time during the period January 1, 2013, through December 31, 2015, conducted transactions in a convertible virtual currency as defined in IRS Notice 2014-21," and seeks the following information and documents from Coinbase for each of its U.S. customers:

1. Account/wallet/vault registration records for each account/wallet/vault owned or controlled by the user during the period stated above including, but not limited to, complete user profile, history of changes to user profile from account inception, complete user preferences, complete user security settings and history (including confirmed devices and account activity), complete user payment methods, and any other information related to the funding sources for the account/wallet/vault, regardless of date.

2. Any other records of Know-Your-Customer due diligence performed with respect to the user not included in paragraph 1, above.

3. For any account/wallet/vault with respect to which the registered user gave any third-party access, control, or transaction approval authority, all powers of attorney, letters of wishes, corporate minutes, or other agreements or instructions granting the third party such access, control, or approval authority.

4. All records of account/wallet/vault activity including transaction logs or other records identifying the date, amount, and type of transaction (purchase/sale/exchange), the post transaction balance, the names or other identifiers of counterparties to the transaction; requests or instructions to send or receive bitcoin; and, where counterparties transact through their own Coinbase accounts/wallets/vaults, all available information identifying the users of such accounts and their contact information.

5. For each merchant user for which you act as Payment Service Provider, records of all payments processed, including records identifying the user of the wallet charged, if a Coinbase user, or the address of the wallet charged, if not, the date and amount of the transaction, and any other information that will enable the merchant to identify the transaction.

6. All correspondence between Coinbase and the user or any third party with access to the account/wallet/vault pertaining to the account/wallet/vault, including but not limited to letters, memoranda, telegrams, telexes, facsimiles, e-mail, letters of instruction, and memoranda of telephone or oral instructions received.

7. All periodic statements of account or invoices (or the equivalent).

8. All records of payments to or from the user by checks, wire or other electronic transfer, ACH transaction, PayPal transfer, credit or debit card transaction, money order, transfer to or from other digital currency wallet address, or any other method, including records reflecting the form, manner, nature, and purpose of

**Motion to Intervene, to Quash Summons, or for Protective Order, or for an Order
Scheduling an Evidentiary Hearing and Permitting Limited Discovery**

1

2

such payment including, but not limited to, ABA routing number and other routing information, payment instructions, and any and all invoices, billing statements, receipts, or other documents memorializing and describing such transaction.

3

4

9. All exception reports produced by your AML system, and all records of investigation of such exceptions.

5

On November 30, 2016, this Court issued its Order Granting the Petition. Dkt. No. 7.[4]

6

On December 13, 2016, Coinbase user Jeffrey K. Berns filed a motion to intervene and to

7

quash the IRS Summons, arguing among other things that the IRS has no legitimate purpose in

8

seeking the requested documents from Coinbase concerning its users, enforcement of the IRS

9

Summons would constitute an abuse of process as the IRS does not currently have the ability to

10

enforce compliance with its 2014 virtual currency guidance or to prevent hackers from accessing

11

private user information, and the categories of requested documents are so overbroad such that the

12

IRS Summons would require the disclosure of a substantial amount of wholly irrelevant

13

information and documents.  Dkt. No. 9.

14

On December 27, 2016, the Government filed its opposition brief to Mr. Berns' motion and

15

a notice that it was withdrawing its request for records with respect to Mr. Berns' account because

16

the IRS "now knows Mr. Berns' identity." Dkt. Nos. 16, 16-1. Mr. Berns filed a reply on January 3,

17

2017, in which he contended, among other things, that the Government's willingness to withdraw

18

the IRS Summons as to him, without obtaining any of the information sought by the summons,

19

other than his identity, was further evidence of bad faith. Dkt. No. 17.

20

On January 11, 2017, Coinbase filed a motion to intervene in the Summons Issuance

21

Proceeding to preserve its right to be heard on the merits (or lack thereof) of the IRS Summons,

22

which the Government opposed. Dkt. Nos. 19, 27.

23

On February 2, 2017, the Government filed a stipulation (Dkt. No. 28), in which it sought a

24

continuance of the hearing on the intervention motions because it was "considering filing a petition

25

to enforce or taking other action." Counsel for Mr. Berns agreed to the continuance, and agreed to

26

27

---

[4] Citations in the form "Dkt. No. __" refer to docket entries in the Summons Issuance Proceeding, unless otherwise indicated.

28

**Motion to Intervene, to Quash Summons, or for Protective Order, or for an Order Scheduling an Evidentiary Hearing and Permitting Limited Discovery**

1
2
3

withdraw the intervention motion, if the Government filed a petition to enforce the IRS Summons. On February 3, 2017, the Court approved the stipulation and continued the hearing on Coinbase's and Mr. Berns' motions to March 23, 2017. Dkt. No. 29.

4
5
6
7
8
9
10

On March 16, 2017, because Coinbase had not provided any documents in response to the IRS Summons, the Government filed a Petition to Enforce Internal Revenue Service Summons ("Petition" or "Pet."). Pet., ¶ 16. The Government requested the Court enter an order directing Coinbase to show cause why it should not fully comply with the IRS Summons, and directing Coinbase to produce the requested records.  Pet. at 4. That same day, Coinbase issued a statement indicating that it planned to oppose the Petition if the Government refused to reconsider the focus and scope of the IRS Summons. https://blog.coinbase.com/coinbase-irs-update-8f3af2c18eb1.

11
12
13
14
15

On May 4, 2017, rather than issuing the Government's proposed order to show cause, the Court directed Coinbase and the Government to submit a proposed briefing schedule "[i]n light of the unique procedural history of this case, and especially given that Coinbase has already raised a number of challenges to the summons in the context of the related case."  Dkt. No. 9 in this enforcement proceeding.

16
17
18

On May 15, 2017, Movants' counsel notified counsel for the Government and Coinbase that Movants were filing the motion to intervene, and requested that the parties allow Movants to participate in the briefing schedule discussions. Declaration of Lee A. Weiss, ¶ 2.

19

**E.     The IRS Summons Covers Movants' Personal Information.**

20
21
22
23
24

Movants John Doe 1 and 2 are each within the class of persons described in the IRS Summons.  John Doe 1, a U.S. citizen residing in Florida, was a registered user of Coinbase during the time period covered by the IRS Summons and has a U.S. telephone number, U.S. email domain, and/or U.S. bank account. Declaration of John Doe 1[5] ("Doe 1 Decl."), ¶¶ 2-3. Between January 1, 2013, and December 31, 2015, John Doe 1 purchased bitcoin using

25
26
27
28

---

[5] Federal courts have considered John Doe declarations.  *See, e.g., Nu Image, Inc. v. Does 1-3,932*, No. 2:11-CV-545-FTM-29, 2012 WL 1890854, at *5 (M.D. Fla. May 10, 2012), *report and recommendation adopted,* No. 2:11-CV-545-FTM-29, 2012 WL 1890829 (M.D. Fla. May 24, 2012) (allowing John Doe declaration that is "dated and given under penalty of perjury" because it "complies with the statutory requirements" of 28 U.S.C. § 1746).

**Motion to Intervene, to Quash Summons, or for Protective Order, or for an Order
Scheduling an Evidentiary Hearing and Permitting Limited Discovery**

1    Coinbase's exchange, and John Doe 1 still owned all of that bitcoin as of December 31, 2015. *Id.*,
2    ¶ 4.

3        John Doe 2 was a registered user of Coinbase during the time period covered by the IRS
4    Summons, is a U.S. citizen, and has a U.S. email domain, and/or U.S. bank account. Declaration
5    of John Doe 2 ("Doe 2 Decl."), ¶¶ 2-3. Between January 1, 2013, and December 31, 2015, John
6    Doe 2 purchased bitcoin using Coinbase's exchange, and John Doe 2 still owned all of that
7    bitcoin as of December 31, 2015. *Id.,* ¶ 4.

8    **III.    ARGUMENT**

9        **A.    Movants Are Entitled to Intervene in This Proceeding as of Right.**

10       Fed. R. Civ. P. 24(a)(2) provides that a non-party is entitled to intervene as of right if it
11   proves that "(1) their application was timely; (2) they 'have an interest relating to the subject
12   matter of the action'; (3) there is a risk that their interests 'will be impaired by the action's
13   disposition'; and (4) their interests are not represented by the Government or [the subpoenaed
14   party]." *United States v. Sidley Austin Brown & Wood LLP*, No. 03 C 9355, 2004 WL 816448, at
15   *3 (N.D. Ill. Apr. 15, 2004) (citation omitted). Movants can readily prove these elements.

16                   **1.    This Application Is Timely.**

17       "The 'timeliness' requirement of Rule 24 is to be construed broadly in favor of the party
18   seeking intervention." *United States v. Andrews*, No. MISC-95-280 GEB PAN, 1996 WL 442730,
19   at *1 (E.D. Cal. May 24, 1996). Courts look at three factors in making this determination: "(1) the
20   stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties;
21   and (3) the reason for and length of the delay." *United States v. State of Wash.*, 86 F.3d 1499, 1503
22   (9th Cir. 1996) (citation omitted). Movants' application is timely, as they are filing this motion
23   within 11 days of when the Court entered its order directing the parties to meet and confer
24   regarding the schedule for submissions on the merits of the Government's Petition.

25                   **2.    Movants Have a Legally Protectable Interest.**

26       "The Supreme Court has recognized two legally protectable interests that may provide a
27   basis for a taxpayer to intervene under Rule 24(a)(2) in an IRS summons enforcement
28   proceeding: a privilege or a claim of abuse of process." *Sidley Austin,* 2004 WL 816448, at *3

**Motion to Intervene, to Quash Summons, or for Protective Order, or for an Order
Scheduling an Evidentiary Hearing and Permitting Limited Discovery**

(citing *Donaldson v. United States*, 400 U.S. 517, 531 (1971)). "Such an abuse would take place if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation." *United States v. Powell*, 379 U.S. 48, 58, 85 S. Ct. 248, 255, 13 L. Ed. 2d 112 (1964); *2121 Arlington Heights Corp. v. I.R.S.*, 109 F.3d 1221, 1224 (7th Cir. 1997) (abuse of process with by the IRS can be demonstrated "either by disproving the existence of one of the Powell factors or pointing to specific facts suggesting that the IRS issued the summons in bad faith").

As set forth below, the IRS has neither the intention nor the ability to review the tax returns of the more than a million American citizens, who are Coinbase customers, for whom it is seeking identity and detailed transaction information. Finally, the IRS has made no effort to tailor the IRS Summons to any purported indicia of tax-avoidance conduct. Thus, Movants have demonstrated that the IRS Summons constitutes a clear abuse of process.

### 3. There Is a Clear Risk That Movants' Interests Will Be Impaired by the Disposition of This Action.

"[A] party has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation." *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006); *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001) ("We follow the guidance of Rule 24 advisory committee notes that state that '[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene.'").

In the event that Coinbase is unsuccessful in resisting the Summons, Movants' transaction records and other personal information will be released to the IRS even though Movants are not the subject of an IRS investigation and there is no basis for such an investigation. Further, the IRS has not identified any basis for the disclosure of this information (or the disclosure of identification and transaction information for the other Coinbase customers), other than its implied assertion that the mere fact that any taxpayer transacting in bitcoin means that the taxpayer may be engaging in tax-avoidance behavior.

**Motion to Intervene, to Quash Summons, or for Protective Order, or for an Order
Scheduling an Evidentiary Hearing and Permitting Limited Discovery**

1
2

    **4.**     **Coinbase Cannot Fully Represent Movants' Interests, as the IRS Is Not Investigating Coinbase.**

3
4
5
6
7
8
9
10
11
12
13
14

"[T]he requirement of inadequacy of representation is satisfied if the applicant shows that representation of its interests 'may be' inadequate and that the burden of making this showing is minimal." *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983) (citing *Trbovich v. United Mine Workers,* 404 U.S. 528, 538 n.10 (1972)). Courts consider three factors: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary input to the proceedings that other parties would neglect." *Hazel Green Ranch, LLC v. U.S. Dep't of Interior*, No. 1:07-CV-00414OWW-SMS, 2007 WL 2580570, at *11 (E.D. Cal. Sept. 5, 2007). "The court also may find that a proposed intervenor's interests are not adequately represented where the intervenor would bring a perspective none of the other parties to the litigation have." *Defs. of Wildlife v. Johanns*, No. C 04-4512 PJH, 2005 WL 3260986, at *8 (N.D. Cal. Dec. 1, 2005).

15
16
17
18
19
20
21

The IRS is not investigating Coinbase's tax liabilities, such that the IRS Summons seeks only customer records. While Coinbase has so far resisted the Summons, Coinbase does not have the same interest as Movants. Coinbase's interest, first and foremost, is economic in nature. Movants certainly do not begrudge Coinbase for attempting to protect that interest, but that does not mean that Coinbase's and Movants' interests are completely aligned. Movants' primary interest is protecting the privacy of Coinbase's users' information, such that Movants' perspectives here are unique.

22
23

    **B.**     **Movants Readily Meet the Standards for Permissive Intervention Pursuant to Fed. R. Civ. P. 24(b).**

24
25
26
27
28

Pursuant to Federal Rule of Civil Procedure 24(b)(1)(B) (formerly Rule 24(b)(2)), "[o]n timely motion, the court may permit anyone to intervene who … has a claim or defense that shares with the main action a common question of law or fact." "Permissive intervention requires: '(1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action.'" *Mishewal*

**Motion to Intervene, to Quash Summons, or for Protective Order, or for an Order Scheduling an Evidentiary Hearing and Permitting Limited Discovery**

*Wappo Tribe of Alexander Valley v. Salazar*, 534 F. App'x 665, 667 (9th Cir. 2013) (citations omitted). Courts must also "consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

### 1. This Court Has Independent Jurisdiction Over Movants' Challenge to the IRS Summons.

"A party seeking permissive intervention under Fed.R.Civ.P. 24(b) must establish a basis for federal subject matter jurisdiction independent of the court's jurisdiction over the underlying action." *E.E.O.C. v. Nevada Resort Ass'n*, 792 F.2d 882, 886 (9th Cir. 1986). Here, there is no question that this Court has subject matter jurisdiction as Movants are challenging the IRS Summons issued pursuant to this Court's November 30, 2016 Order granting the federal government's Petition filed pursuant to 26 U.S.C. §§ 7402(a), 7609(f), and 7609(h).

### 2. Movants' Defenses Are Relevant to the Validity of the Petition.

Here, Movants are seeking to quash the IRS Summons that is the subject of this proceeding. In *Sidley Austin*, the court permitted intervention under former Rule 24(b)(2), reasoning that "a dispute regarding the sufficiency of the description of the material to be produced is an appropriate basis for a challenge to a summons in an enforcement proceeding." 2004 WL 816448, at *10 (citing *United States v. Beacon Fed. Sav. & Loan*, 718 F.2d 49, 54 (2d Cir. 1983) (citing legislative history of I.R.C. § 7609)).

### 3. The IRS Will Suffer No Prejudice and There Will Be No Undue Delay if Movants Are Permitted to Intervene.

"In exercising its discretion to grant or deny permissive intervention, a court must consider whether the intervention will 'unduly delay or prejudice the adjudication of the rights of the original parties.' Rule 24(b)." *Venegas v. Skaggs*, 867 F.2d 527, 530 (9th Cir. 1989), *aff'd sub nom. Venegas v. Mitchell*, 495 U.S. 82, 110 S. Ct. 1679, 109 L. Ed. 2d 74 (1990). Additionally, "judicial economy is a relevant consideration in deciding a motion for permissive intervention." *Id.* at 531.

No undue delay or prejudice to the IRS would result in permitting Movants to intervene to challenge the legitimacy and scope of the IRS Summons, as the parties have yet to submit the proposed briefing and hearing schedule requested by the Court. Further, to avoid any undue delay

Case No.: 3:17-cv-01431-JSC          Page 13
**Motion to Intervene, to Quash Summons, or for Protective Order, or for an Order
Scheduling an Evidentiary Hearing and Permitting Limited Discovery**

or prejudice, Movants' counsel has requested that he be included in the discussions of the proposed briefing schedule, so that all future submissions will be coordinated.

### C.    The Court Should Quash the IRS Summons As It Is an Abuse of Process by the Government Because It Was Issued in Bad Faith.

Once an IRS summons is challenged, "the IRS must make a prima facie showing that the summons was issued in good faith." *Stewart v. United States,* 511 F.3d 1251, 1254 (9th Cir. 2008) (citing *Powell,* 379 U.S. at 57). "Specifically, the IRS must establish that the summons (1) was issued pursuant to a 'legitimate purpose'; (2) seeks information 'relevant' to that purpose; (3) seeks information that is 'not already within the Commissioner's possession'; and (4) satisfies all 'administrative steps required by the Code.'" *Id*. If the government can satisfy this burden, the party challenging the summons needs to "show an abuse of process or a lack of good faith by the IRS." *Ramirez v. United States*, No. SACV 13-00268 JVS, 2013 WL 10822053, at *3 (C.D. Cal. June 10, 2013), *aff'd*, 604 F. App'x 567 (9th Cir. 2015) (citing *Fortney v. United States*, 59 F.3d 117, 120 (9th Cir. 1995)).

In *Powell*, the Court explained that in a summons enforcement proceeding:

> It is the court's process which is invoked to enforce the administrative summons and a court may not permit its process to be abused. Such an abuse would take place if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation.

379 U.S. at 58. "The purpose of the good-faith inquiry is to determine whether the agency is honestly pursuing the goals of § 7602[6] by issuing the summons." *LaSalle Nat. Bank*, 437 U.S. 298, 316 (1978). The facts and circumstances present here demonstrate that the IRS has not issued the IRS Summons for tax enforcement purposes.

### 1.    The IRS Does Not Have a Legitimate Purpose in Issuing the Summons

---

[6] The IRS may only exercise its investigative powers "[f]or the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability." 26 U.S.C. § 7602(a).

**Motion to Intervene, to Quash Summons, or for Protective Order, or for an Order Scheduling an Evidentiary Hearing and Permitting Limited Discovery**

a.     **The Government's Meager Foundation for a Summons Seeking the Identities of, and Three Years of Transactions for, over One Million Taxpayers Reflects That the IRS Does Not Have a Legitimate Purpose.**

While the *ex parte* showing required for the issuance of a John Doe summons is relatively minimal, as set forth above, the fact that the Court determined that the Government had met that burden is not relevant in this enforcement proceeding. *See, e.g., Matter of Does*, 688 F.2d 144, 145-46 (2d Cir. 1982) ("the criteria in 26 U.S.C. s 7609(f) governing ex parte issuance of a John Doe summons pursuant to 26 U.S.C. s 7609(h)(1) are not appropriate grounds to challenge enforcement of the summons"). As the Movant-Proposed Intervenor in the Summons Issuance Proceeding easily discredited the Government's evidence supporting the issuance of the IRS Summons (primarily, information concerning 3 unnamed taxpayers) (Dkt. No. 9, at 18-21; Dkt. No. 17, at 11-12), the Government has now retreated from that evidence.  The sole basis on which the Government bases its Petition to Enforce the IRS Summons is that several database searches did not reveal that a substantial number of taxpayers had identified bitcoin transactions on their tax returns. 3/16/17 Utzke Decl., ¶¶ 11-13. However, the Government only provides minimal information concerning those searches and does not offer any statement as to why those figures are meaningful, including whether the searches reasonably capture all individuals who reported capital gains from virtual currency transactions.  Instead, the Government merely provides the numbers and is presumably implying that this means that many taxpayers are failing to report virtual currency capital gains.

The statistics that the Government provides, without any explanation whatsoever as to their significance, pale in comparison to the specific types of suspicious activity that the Government has previously used to justify John Doe summonses, which include illegal tax shelters and large cash transactions. *See United States v. Kersting*, 891 F.2d 1407 (9th Cir. 1989); *United States v. Ritchie*, 15 F. 3d 592 (6th Cir. 1994). In those latter circumstances, the IRS sought the identification of a narrow class of persons that had engaged in suspect activity. Here, the IRS is seeking the identification of over a million individuals, and substantial transactional data, without

**Motion to Intervene, to Quash Summons, or for Protective Order, or for an Order Scheduling an Evidentiary Hearing and Permitting Limited Discovery**

any showing of suspect activity by any of these individuals, let alone a likelihood that any significant number of them engaged in suspect activity.

### b.      The 9/21/16 TIGTA Report Shows That the IRS Does Not Currently Have the Ability to Enforce Compliance with Its Vague Virtual Currency Guidance Issued in 2014.

As set forth above, the 9/21/16 TIGTA Report demonstrates that the IRS's 2014 virtual currency guidance is woefully insufficient, and thus, in the absence of clearer guidance, the IRS is not in a position to enforce compliance with the tax code with respect to virtual currency. The IRS's failure to issue any further virtual currency guidance since 2014, including in response to the 9/21/16 TIGTA Report, is stunning. The Report noted that while the IRS received and reviewed 36 public comments to its 2014 virtual currency guidance, it took no action in response to these comments, even though "information requested by the public [would have been] helpful in understanding how to comply with the tax reporting requirements when using or receiving virtual currencies." 9/21/16 TIGTA Report at 3. Further, the Treasury Department indicated that regardless of the IRS's budget constraints, the IRS should focus resources on clarified guidance to aid taxpayers in "voluntarily" complying with the tax code.

Despite the demonstrable need for clarifying virtual currency tax guidance, the IRS has opted not to issue a single word of virtual currency guidance since promulgating admittedly insufficient guidance more than two years ago. Having been unable, or unwilling, to issue such new guidance, it is hard to believe that the IRS has now issued the IRS Summons for a legitimate investigatory purpose. After all, if the IRS admits that it has not properly informed taxpayers of the virtual currency taxation rules, how could it now reasonably seek to review the records of over one million taxpayers for virtual currency tax compliance purposes?

### c.      The IRS Summons Is Improper Because It Is Designed to Seek Information for Research, as Opposed to Tax Compliance, Purposes.

As the IRS did not dispute the 9/21/16 TIGTA Report's conclusion that it did not have a method for gathering the necessary data to analyze the risk and scope of non-compliance with the

**Motion to Intervene, to Quash Summons, or for Protective Order, or for an Order Scheduling an Evidentiary Hearing and Permitting Limited Discovery**

tax code with respect to virtual currency, how could enforcement possibly be the goal of a summons issued only two months later for the mountain of data that it seeks from Coinbase? Rather than enforcement, it appears that the IRS is trying to use a John Doe summons to gather data for research purposes in response to the 9/21/16 TIGTA Report's criticism. This is improper in the absence of a specific investigation regarding tax compliance. A summons issued under Section 7602 may not be used solely for research purposes under Section 7601.[7] *See United States v. Humble Oil & Refining Co.,* 488 F.2d 953, 962-63 (5th Cir. 1974), *vacated and remanded,* 421 U.S. 943 (1975), *aff'd. per curiam,* 518 F.2d 747 (5th Cir. 1975) ("[W]e hold that the Internal Revenue Service is not empowered by section 7602 to issue a summons in aid of its section 7601 research projects or inquiries, absent an investigation of taxpayers or individuals and corporations from whom information is sought.").

The Petition does not allege any particular investigation for which the IRS is seeking the information in the IRS Summons.  Instead, the Petition, and the 3/16/17 Utzke Declaration, merely state generally that the IRS is conducting an investigation of all virtual currency users.  Pet. at 1 ("The IRS is conducting an investigation to determine the identity and correct federal income tax liabilities, for the years ended December 31, 2013, 2014, and 2015, of United States persons who conducted transactions in a convertible virtual currency as that term is defined in IRS Notice 2014-21"); 3/16/17 Utzke Decl., ¶ 2.  However, the Government does not offer a single detail concerning this supposed investigation of more than a million taxpayers.  In fact, the attempt to obtain the information concerning Coinbase users sought by the IRS Summons appears to be the only action taken by the IRS in this regard.

The Government's assertion that the requested information is needed as part of its "investigation into the identity and correct federal income tax liability of U.S. persons who conducted transactions in a convertible virtual currency as that term is defined in IRS Notice

---

[7] 26 U.S.C. § 7601(a) provides: "The Secretary shall, to the extent he deems it practicable, cause officers or employees of the Treasury Department to proceed, from time to time, through each internal revenue district and inquire after and concerning all persons therein who may be liable to pay any internal revenue tax, and all persons owning or having the care and management of any objects with respect to which any tax is imposed."

**Motion to Intervene, to Quash Summons, or for Protective Order, or for an Order Scheduling an Evidentiary Hearing and Permitting Limited Discovery**

2014-21" (3/16/17 Utzke Decl., ¶ 26) is undoubtedly a pretext, as the Commissioner of the IRS has repeatedly stated that the IRS does not have sufficient funding to pursue enforcement efforts. *See, e.g.,* October 23, 2015 Prepared Remarks of Commissioner John A. Koskinen Before The Council for Electronic Revenue Communication Advancement ("Since 2010, the IRS has suffered deep, dramatic funding reductions that have undermined our ability to provide taxpayers with top quality service and ensure compliance with the tax laws.") (RFJN, Ex. 3). *See also* April 4, 2016 report from Center on Budget and Policy Priorities, entitled "IRS Funding Cuts Compromise Taxpayer Service and Weaken Enforcement," at 6 ("As a result of cuts, the IRS is conducting fewer audits overall and fewer audits of high-income taxpayers and businesses."), a copy of which is attached as Exhibit 2 to the Lum Declaration. It is hard to believe that the current budget-strained IRS is going to review three years of tax returns for over one million taxpayers to determine if they properly paid taxes with respect to their virtual currency transactions.

Moreover, based on the current dollar volume of virtual currency transactions, it seems unlikely that the IRS would devote a substantial portion of its resources to enforcement of virtual currency tax obligations. According to the IRS, the 2015 transactional value of bitcoin was approximately $10 billion. 11/17/16 Utzke Decl., ¶ 27. Unpaid taxes on any portion of that amount which reflects taxable gains in the trading or use of bitcoin would pale in comparison to the total amount of U.S. tax revenue, which in 2014 was approximately $1.7 trillion,[8] and the annual Tax Gap, which is approximately $387 billion. It strains credulity that the financially-strapped IRS is going to spend substantial resources on reviewing the trading data and tax return of Coinbase customers, when that is not likely to yield tax revenue that would justify that expense.

### d. The IRS Has Previously Been Accused of Abusing Its Power to Improperly Further the Government's Political Agenda.

While the Court need not determine the IRS's true motive in order to find abuse of process based upon bad faith, it is hardly far-fetched to conclude that the IRS has an ulterior motive for

---

[8] *See* Tax Policy Center of the Urban Institute & Brookings Institution, *Amount of Revenue by Source*, http://www.taxpolicycenter.org/statistics/amount-revenue-source.

**Motion to Intervene, to Quash Summons, or for Protective Order, or for an Order Scheduling an Evidentiary Hearing and Permitting Limited Discovery**

1  pursuing the IRS Summons. As this Court may be aware, the IRS recently used its power to

2  retaliate against anti-administration political associations and political speech. In 2013, the IRS

3  revealed that it had selected political groups applying for tax-exempt status, "Tea Party", for

4  intensive scrutiny based on their names or political themes, which triggered widespread

5  condemnation of the agency. Multiple investigations of the IRS by the FBI and the U.S. Attorney

6  General are pending, while lawsuits filed against the IRS were recently reinstated by the D.C.

7  Circuit. *See True the Vote, Inc. v. Internal Revenue Serv.*, 831 F.3d 551 (D.C. Cir. 2016).

8  It is not a stretch to conclude that the government is similarly using the IRS's John Doe

9  summons authority to harass taxpayers who use virtual currencies, as politicians and financial

10  leaders have suggested an anti-virtual currency bias by the government. For example, Jamie

11  Dimon, CEO of JPMorgan Chase, stated: "Virtual currency, where it's called a bitcoin vs. a U.S.

12  dollar, that's going to be stopped. No government will ever support a virtual currency that goes

13  around borders and doesn't have the same controls. It's not going to happen."[9] Similarly, Sen. Joe

14  Manchin (D-W. Va.), a former member of the Senate banking committee, stated: "If the feds can't

15  get their hands around [bitcoin] to where they can secure it, then I would be very leery of investing

16  in it or trading with it or buying with it."[10]

17  ### 2. The Unjustifiably Broad Scope of the IRS Summons Indicates That It

18  ### Has Not Been Issued in Good Faith.

19  Even if the Court accepts the IRS's purported legitimate purpose, the IRS may not conduct

20  an unfettered "fishing expedition" through a taxpayer's records, but "must identify with some

21  precision the documents it wishes to inspect." *United States v. Dauphin Deposit Trust Co.*, 385

22  F.2d 129, 131 (3d Cir. 1967); *United States v. Theodore,* 479 F.2d 749, 754-55 (4th Cir. 1973)

23  (concluding that "summons directing [third-party accountant] to produce all of the returns and all

24

25  [9] Stephen Gandel, *Jamie Dimon: Virtual Currency Will Be Stopped*, Fortune, Nov. 4, 2015, *available at* http://fortune.com/2015/11/04/jamie-dimon-virtual-currency-bitcoin/.

26  [10] Brian Fung, *Last Month, Sen. Joe Manchin Wanteda to Ban Bitcoin. Now, He's Not So Sure*,
27  The Washington Post, Mar. 26, 2014, *available at* https://www.washingtonpost.com/news/the-switch/wp/2014/03/26/last-month-sen-joe-manchin-wanted-to-ban-bitcoin-now-hes-not-so-sure/?utm_term=.e2278c733b81.

28

**Motion to Intervene, to Quash Summons, or for Protective Order, or for an Order
Scheduling an Evidentiary Hearing and Permitting Limited Discovery**

of the work records relating to all of his clients for the years 1969-1971 is too broad and too vague to be enforced"). In testing for overbreadth, courts ask whether the summoned records are relevant to the inquiry, *Tax Liabilities of: John Does, All Unknown Employees of Boundary Waters Rest. v. United States*, 866 F.2d 1015, 1020-21 (8th Cir. 1989).

If the IRS is truly interested in policing virtual currency tax compliance and sending a message that it is focusing on this issue, it could easily accomplish these goals through less onerous methods. For example, as a general matter, the summons could have contained a certain dollar threshold or volume of transactions. The IRS's failure to make any effort to limit the scope of the IRS Summons or otherwise tailor it to the stated goal of enforcing compliance with the tax laws are strong indicators that the IRS Summons has been issued in bad faith.

Moreover, the IRS Summons requests substantial personal and security information that has absolutely nothing to do with tax compliance. If the IRS truly intended to compare tax returns to Coinbase's records for tax compliance purposes, the only information it would need are the names and social security numbers of Coinbase's customers, and their trading activity (i.e., bitcoin purchases and sales). Indeed, as acknowledged by the IRS, Coinbase requires substantial personal information before allowing a customer to use its service. 3/16/17 Utzke Decl., ¶ 22. Yet, rather than just seeking the names and social security numbers for Coinbase customers, the first category of information sought by the IRS Summons seeks profile information and security settings for all Coinbase customers. The first category in the summons also requests, among other things, the keys that a customer uses to access his or her Coinbase account, wallet or vault. Information concerning a customer's keys has no bearing on the issue of whether taxes have been paid on income related to virtual currency. The IRS's justification for this highly sensitive information is that it "may be relevant in determining, and verifying, the identity and transaction activity of Coinbase users who are U.S. persons." 3/16/17 Utzke Decl., ¶ 27. However, there is no need for such information as the fourth category of the summons requests all records of account activity.

A further example of the overbreadth of the IRS Summons, is category 6, which seeks all correspondence between Coinbase and its users. The IRS claims that this information is necessary to verify the identities of Coinbase users and because it "may" reveal other accounts or persons

**Motion to Intervene, to Quash Summons, or for Protective Order, or for an Order Scheduling an Evidentiary Hearing and Permitting Limited Discovery**

involved in taxable events.  3/16/17 Utzke Decl., ¶ 32.  First, the IRS does not indicate why correspondence would assist it in verifying the identities of Coinbase's customers.  Second, apart from the fact that the IRS is stating that it wants to take its improper fishing expedition even further by seeking information concerning non-Coinbase accounts, there is no basis for the unsupported statement that correspondence will reveal the information sought by the IRS. Third, and most importantly, much of the correspondence is undoubtedly irrelevant to the IRS's stated goal of monitoring tax compliance.  For example, John Doe No. 2 communicated with Coinbase between 2013 and 2015 concerning issues related to setting up and using his Coinbase account. Doe 2 Decl., ¶ 5. This has nothing to do with any tax issues, yet the Government has made absolutely no attempt to exclude these types of documents from the IRS Summons.

> a.   **The Government Has Failed to Address the Significant Risks Associated with Allowing the IRS to Maintain Sensitive Virtual Currency Data.**

In connection with his motion to intervene in the Summons Issuance Proceeding, Coinbase customer Jeffrey Berns identified numerous facts indicating that the IRS could not properly secure Coinbase user information, including that 1) the IRS had been hacked for 17 months in 2014 and 2015 and a TIGTA Report had concluded that the IRS did not respond to this attack appropriately because it failed to identify all the victims of the hack and provide sufficient relief to them (Dkt. No. 9, at 14-15); 2) a March 2016 GAO audit of IRS cyber security uncovered IRS's failure to perform comprehensive tests and evaluations of its information security controls which if not corrected will leave taxpayer data "unnecessarily vulnerable" to inappropriate use (Dkt. No. 9, at 15);[11] and 3) allowing the IRS to obtain personal taxpayer information that would allow access to hundreds of millions of dollars in virtual currency would create a significant potential for

---

[11] The audit also says the IRS claimed it had corrected previously identified control weaknesses in 28 cases, but in nine of those instances, auditors determined they were not "effectively corrected."U.S. Government Accountability Report, GAO-16-398, *Information Security: IRS Needs to Further Improve Controls Over Financial and Taxpayer Data* (Mar. 2016), *available at* http://www.gao.gov/assets/680/676097.pdf. RFJN, Ex. 4.

**Motion to Intervene, to Quash Summons, or for Protective Order, or for an Order Scheduling an Evidentiary Hearing and Permitting Limited Discovery**

1
2
wrongdoing by government employees, as there had already been several instances of such thefts of virtual currency (Dkt. No. 9, at 16).[12]

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
These cybersecurity issues are particularly acute with respect to virtual currency.  If this security information is obtained by a hacker who uses the information to misappropriate virtual currency, there is no way for the true owner of that virtual currency to recover it. If the IRS were to obtain this information, which again, is unrelated to tax compliance, it could expose the government to huge potential liability from Coinbase customers if the keys are not properly safeguarded. Indeed, these concerns were corroborated by a recent TIGTA report, issued on March 23, 2017, titled "Inconsistent Processes and Procedures Result in Many Victims of Identity Theft Not Receiving Identity Protection Personal Identification Numbers" ("3/23/17 TIGTA Report"), in which TIGTA assessed the IRS's corrective actions to TIGTA's prior recommendations, and the IRS's maintenance of the Identity Protection Personal Identification Numbers[13] ("IP PIN") program that was intended to help identity theft victims. The 3/23/17 TIGTA Report made a number of findings demonstrating that the IRS had failed to protect identity theft victims (*see* 3/23/17 TIGTA Report at 3) and found that even after being warned about potential breaches of its systems, the IRS "failed to protect taxpayers." TIGTA Report, at 5-7. Among many identified failures by the IRS, the Report noted that the IRS had failed to take sufficient action with respect to the taxpayers facing the highest risk of identity theft, which "is contrary to the intent of the program, which is to focus on taxpayers in States and locations with the highest per capita rate of identity theft." 3/23/17 TIGTA Report, at 14. Thus, given the IRS's inability to properly protect victims of identity theft (including its own admission that it lacks sufficient resources to implement TIGTA's recommendation), the IRS should not be allowed to obtain the sensitive information requested by the IRS Summons.

24
25
26
27
28

---

[12] Movants are, of course, not suggesting that government employees are generally untrustworthy. However, the potential for wrongful conduct here must be considered.

[13] IP PINs are six digit numbers issued to identity theft victims "that allows their tax returns/refunds to be processed without delay and helps prevent the misuse of their Social Security Numbers (SSN) to file fraudulent Federal income tax returns." RFJN, Ex. 5 (3/23/17 TIGTA Report, at 1).

**Motion to Intervene, to Quash Summons, or for Protective Order, or for an Order
Scheduling an Evidentiary Hearing and Permitting Limited Discovery**

1

2

**D.      If the Court Does Not Quash the IRS Summons, It Should Issue an**

**Appropriate Protective Order.**

3

**1.      Movants Have Readily Demonstrated Good Cause.**

4

A party seeking a protective order bears the burden of proving "good cause," which

5

requires a showing "that specific prejudice or harm will result" if the protective order is not

6

granted. *In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d 417, 424 (9th Cir.

7

2011); *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1063 (9th Cir. 2004). *See also Skellerup Indus. Ltd.*

8

*v. City of Los Angeles*, 163 F.R.D. 598, 600 (C.D. Cal. 1995) (confirming that a court should grant

9

a protective order "when the moving party establishes 'good cause' for the order" and justice

10

requires it). "The injury shown, however, need be no more than 'embarrassment'; thus, a party

11

need not establish a monetizable injury." *Pearson v. Miller*, 211 F.3d 57, 73 (3d Cir. 2000).

12

As discussed above, the IRS has no legitimate purpose in seeking the requested documents

13

and information concerning Movants. Nor does the IRS have a legitimate purpose for seeking the

14

identification of Coinbase's customers or all data and information concerning those customers for a

15

three-year period. Even if the IRS had not engaged in abuse of process and was acting in good

16

faith, there is no basis for seeking information from all of Coinbase's customers, regardless of the

17

size and volume of their virtual currency activity, and the categories of information sought by the

18

IRS Summons are not related to the IRS's stated goal of enforcing compliance with the tax code.

19

Finally, the privacy interests of Movants and all of Coinbase's customers substantially outweigh

20

the IRS's interest in enforcement where, as discussed above, the IRS has made no showing that

21

there is a significant risk that a meaningful portion of Coinbase's customers have failed to pay

22

taxes on income related to virtual currency transaction. Accordingly, the Court should issue an

23

appropriate Protective Order that only allows the IRS access to information that is relevant to a

24

legitimate enforcement purpose from customers whom the IRS can demonstrate engaged in

25

behavior that evidences potential tax evasion. The Court should require the IRS to make a factual

26

showing that is more than the mere fact that a taxpayer transacted in virtual currency.

27

28

**Motion to Intervene, to Quash Summons, or for Protective Order, or for an Order**
**Scheduling an Evidentiary Hearing and Permitting Limited Discovery**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**E.    If the Court Does Not Quash the Subpoena or Issue a Protective Order, Movants Are Entitled to Conduct Limited Discovery and Then an Evidentiary Hearing Concerning the IRS's Bad Faith.**

**1.    Movants Have Provided Specific Facts That Raise Doubts Concerning the IRS's Good Faith in Issuing the IRS Summons.**

A taxpayer, who has "[made] a sufficient showing of bad faith on the Government's part, … is entitled to a limited evidentiary hearing." *United States v. Samuels, Kramer & Co.*, 712 F.2d 1342, 1346-47 (9th Cir. 1983). To make a showing of bad faith, the taxpayer must introduce "some evidence" to support his allegations. *United States v. Church of Scientology of Cal.*, 520 F.2d 818, 824 (9th Cir. 1975) (quoting *United States v. Salter*, 432 F.2d 697, 700 (1st Cir. 1970)). The burden is not strict, as the Ninth Circuit has explained:

> A taxpayer must answer the Government's prima facie case "through responsive pleadings, supported by affidavits, that allege *specific facts* in rebuttal." [*U.S. v. Kis*, 658 F.2d 526, 539 (7th Cir. 1981)] (emphasis in original). The facts, however, need only raise "sufficient doubt" about the Government's purposes in seeking enforcement of a summons. *Church of Scientology,* 520 F.2d at 825. The taxpayer must thus allege facts "from which a court might *infer* a *possibility* of some wrongful conduct by the Government." *Kis,* 658 F.2d at 540 (emphasis in original). This implication alone is enough to trigger a limited evidentiary hearing. At this stage, the taxpayer need not actually be able to prove the Government's lack of good faith. *See id.*

*Samuels*, 712 F.2d at 1347–48 (emphasis in original); *see also Church of Scientology*, 520 F.2d at 825 (ordering limited evidentiary hearing where bad faith allegations were "thin"). "On the basis of evidence revealed at the limited evidentiary hearing, the court must determine whether the taxpayer should be permitted further discovery to uncover facts to support the assertion of bad faith." *Samuels*, 712 F.2d at 1347; *Kis*, 658 F.2d at 542 ("If the court cannot decide the merits of the enforcement petition at the hearing, then further discovery would clearly be helpful to the ultimate resolution of the case. The district court should therefore permit some discovery at this stage.").

As set forth above, Movants have provided specific facts that, at the very least, raise serious doubts concerning the IRS's good faith in issuing the IRS Summons, including 1) that over two years ago the Treasury Department recommended that the IRS clarify its vague virtual currency guidance and employ resources to educate taxpayers as to their obligations regarding the taxation

**Motion to Intervene, to Quash Summons, or for Protective Order, or for an Order Scheduling an Evidentiary Hearing and Permitting Limited Discovery**

of virtual currency, yet the IRS has failed to do that; 2) the IRS's factual showing to support the request for the identification of, and three years of transactional data for, Coinbase's customers is exceedingly weak and pales in comparison to the factual showings made by the IRS in connection with other John Doe summonses; 3) the IRS's only real basis for seeking the information in the IRS Summons is that Coinbase's customers have transacted in virtual currency; 4) the IRS Summons is extremely overbroad and not designed to elicit information concerning a legitimate investigative purpose; 5) the IRS does not have the resources to allow it to effectively analyze the data it is seeking; 6) the IRS has claimed that it is seeking information from Coinbase in connection with tax compliance efforts, when it seems clear that the IRS is improperly using the John Does summons procedure to obtain data for research purposes; and 7) the IRS has previously used its power for improper purposes. Thus, at the absolute minimum, this Court should allow Movants to take limited discovery regarding the IRS's bad faith and then set a limited evidentiary hearing. That discovery should include the deposition of the IRS Agent who filed a declaration in support of the Petition and the IRS's production of the documents that underlie that declaration.

Further, the Government has sought to imply that many Coinbase customers are not paying taxes on their bitcoin trading gains by providing certain figures regarding the number of tax returns that "us[e] a property description likely related to bitcoin." 3/16/17 Utzke Decl., ¶¶ 11-13. However, the Government has failed to provide any evidentiary basis for these figures, as it has not provided any supporting evidence concerning the supposed searches that were performed to derive these figures, or even a declaration from the IRS employee who purportedly performed these searches. To the extent that the Court is not prepared to quash the IRS Summons based on this motion alone, Movants should be granted leave to take appropriate discovery concerning the unsubstantiated "facts" offered by the Government.

## IV.   CONCLUSION

Based on the foregoing, Movants respectfully request that the Court grant their motion to intervene in this proceeding. Movants further request that the Court quash the IRS Summons or, in the alternative, issue an appropriate protective order, or, in the alternative, allow Movants to pursue reasonable discovery and then conduct an evidentiary hearing concerning the IRS's bad faith.

**Motion to Intervene, to Quash Summons, or for Protective Order, or for an Order
Scheduling an Evidentiary Hearing and Permitting Limited Discovery**

1

Dated: May 15, 2017

/s/ Lee A. Weiss

2

Lee A. Weiss (SBN 297834)
lweiss@law111.com

3

**BERNS WEISS LLP**

585 Stewart Avenue, Suite L-20

4

Garden City, NY 11530
Telephone:    (516) 222-2900

5

Facsimile:    (818) 936-0232

6

Jeffrey K. Berns (SBN 131351)
jberns@law111.com

7

Albert G. Lum (SBN 259053)
alum@law111.com

8

**BERNS WEISS LLP**
6800 Owensmouth Avenue, Suite 310

9

Canoga Park, CA 91303
Telephone:    (818) 961-2000

10

Facsimile:    (818) 936-0232

11

Attorneys for Proposed Intervenors John
Does 1 and 2

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No.: 3:17-cv-01431-JSC                    Page 26
**Motion to Intervene, to Quash Summons, or for Protective Order, or for an Order
Scheduling an Evidentiary Hearing and Permitting Limited Discovery**