EMMANUEL RAYES (SBN 304,934)
**Rayes Law**
1450 2nd Street, Suite 345
Santa Monica, California 90401
Telephone:      (424) 316-5081
Email:          RayesLaw@ProtonMail.com

Attorney for Proposed Intervenor John Doe 3

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES,<br><br>            Plaintiff,<br><br>       vs.<br><br>COINBASE, INC.,<br><br>            Defendant. | Case No. 3:17-CV-01431-JSC<br><br>**NOTICE OF MOTION AND MOTION TO INTERVENE, TO QUASH SUMMONS, OR FOR PROTECTIVE ORDER, OR FOR AN ORDER SCHEDULING AN EVIDENTIARY HEARING AND PERMITTING LIMITED DISCOVERY**<br><br>Date:          June 22, 2017<br>Time:          9:00 a.m.<br>Courtroom:  F, 15th Floor<br>Judge:        Hon. Jacqueline Scott Corley |

TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................................2

II.     STATEMENT OF FACTS AND PROCEDURAL HISTORY...............................3

III.    ARGUMENT ........................................................................................................5

        A.      Movant is Entitled to Intervene in This Proceeding as of Right Pursuant to Fed. R. Civ. P. 24(a) ........................................................................................................5

                1.      This Application is Timely ...............................................................6

                2.      Movant has a Significant Protectable Interest in the Subject Matter of This Case........................................................................................................7

                3.      The Disposition of This Action Will Impede Movant's Ability to Protect Interests .............................................................................................8

                4.      Existing Parties Cannot Adequately Represent Movant's Interests ......................8

        B.      Movant Meets the Standards for Permissive Intervention Pursuant to Fed. R. Civ. P. 24(b)........................................................................................................9

                1.      This Court has Federal Subject Matter Jurisdiction Over Movant's Challenge to the IRS Summons ...............................................................9

                2.      This Court has Broad Discretion to Allow Movant to Intervene in This Proceeding................................................................................................10

        C.      The Court Should Quash Because IRS Summons Constitutes an Impermissible Fishing Expedition and Enforcement of Summons Will Result in Abuse of Court Process ........................................................................................................10

                1.      Enforcement of John Doe Summons Will Result in Extensive Intrusion Into the Private Affairs of Coinbase Customers ....................................12

                2.      Political Bias is Embedded Into Bitcoin ........................................12

        D.      If the Court Does Not Quash the IRS Summons, It Should Issue an Appropriate Protective Order to Limit the Scope of the Summons ......................................14

        E.      If the Court Does Not Quash the Subpoena or Issue a Protective Order, Movant Is Entitled to Conduct Limited Discovery and Then an Evidentiary Hearing Concerning the IRS's Bad Faith .............................................................14

IV.     CONCLUSION..................................................................................................15

i

NOTICE OF MOTION AND MOTION TO INTERVENE, TO QUASH SUMMONS, OR FOR
PROTECTIVE ORDER, OR FOR AN ORDER SCHEDULING AN EVIDENTIARY HEARING AND
PERMITTING LIMITED DISCOVERY - CASE NO. 3:17-CV-01431-JSC

1

TABLE OF AUTHORITIES

2

**<u>Cases</u>**

3

*2121 Arlington Heights Corp. v. I.R.S.*, 109 F.3d 1221, 1224 (7th Cir. 1997)...........................10

4

*California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006).......................11

5

*Defs. of Wildlife v. Johanns*, No. C 04-4512 PJH, 2005 WL 3260986, at *8 (N.D. Cal. Dec. 1, 2005) ...12

6

*Donaldson v. United States*, 400 U.S. 517, 531 (1971) ............................................................10

7

*Donnelly v. Glickman*, 159 F.3d at 409 ......................................................................................9

8

*Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1496 n. 8 (9th Cir.1995).......................9

9

*Fortney v. United States*, 59 F.3d 117, 121 (9th Cir.1995)......................................................17

10

*Greene v. United States*, 996 F.2d 973, 980 (9th Cir.1993) ...................................................9

11

*Hazel Green Ranch, LLC v. U.S. Dep't of Interior*, No. 1:07-CV-00414OWW-SMS, 2007 WL 2580570, at *11 (E.D. Cal. Sept. 5, 2007).................................................................................12

12

13

*In re Oil & Gas Producers*, 500 F. Supp. 440 (W.D. Okla. 1980)...........................................11

*In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d 417, 424 (9th Cir. 2011) ...............17

14

*Jansen v. City of Cincinnati*, 904 F.2d 336, 340 (6th Cir. 1990)..........................................10

15

*Mishewal Wappo Tribe of Alexander Valley v. Salazar*, 534 F. App'x 665, 667 (9th Cir. 2013) .............13

16

*NAACP v. Alabama*, 377 U.S. 288, 84 S. Ct. 1302, 12 L. Ed. 2d 325 (1964) .........................16

17

*Ponsford v. U.S.*, 771 F.2d 1305, 1307 (9th Cir. 1985) ........................................................14

18

*Reid v. Covert*, 354 U.S. 1 (1957)........................................................................................14

19

*Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983).................................11

20

*Skellerup Indus. Ltd. v. City of Los Angeles*, 163 F.R.D. 598, 600 (C.D. Cal. 1995)...............................17

21

*Stewart v. United States*, 511 F.3d 1251, 1254 (9th Cir. 2008) ............................................14

22

*Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001)........................11

23

*Trbovich v. United Mine Workers,* 404 U.S. 528, 538 n.10 (1972)........................................12

24

*True the Vote, Inc. v. Internal Revenue Serv.*, 831 F.3d 551 (D.C. Cir. 2016)........................17

25

*U.S. v. Bisceglia*, 420 U.S. 141, 146 .......................................................................................14

26

*U.S. v. Clarke*, 134 S. Ct. 2361 (2014) ..................................................................................14

27

*U.S. v. Humble Oil & Refining Co.*, 518 F.2d 747 (5th Cir. 1975)...........................................14

28

1  *U.S. v. Powell*, 379 U.S. 48, 59.............................................................................................14

2  *U.S. v. Powell*, 379 U.S. at 58, 85 S. Ct. at 255.................................................................14

3  *U.S. ex rel. McGough v. Covington Techs. Co.*, 967 F.2d 1391, 1394 (9th Cir.1992) ...............9

4  *U.S. v. Church of Scientology of Cal.*, 520 F.2d 818, 824 (9th Cir. 1975) .................................17

5  *U.S. v. City of Detroit*, 712 F.3d 925, 930-31 (6th Cir. 2013) ....................................................10

6  *U.S. v. Humble Oil & Refining Company*, 518 F.2d 747 (5th Cir. 1975)....................................11

7  *U.S. v. Powell*, 379 U.S. 48, 58, 85 S. Ct. 248, 255, 13 L. Ed. 2d 112 (1964) ........................10

8  *U.S. v. Salter*, 432 F.2d 697, 700 (1st Cir. 1970).......................................................................18

9  **Statutes**

10  5 U.S.C. §702...............................................................................................................................13

11  **Other Authorities**

12  S. Rep. No. 938, 94th Cong., 2d Sess. 368 (1976) .......................................................................5

13  **Rules**

14  Fed. R. Civ. P. 24..........................................................................................................................4

15  Fed. R. Civ. P. 24(b) ...................................................................................................................12

16  Fed. R. Civ. P. 24(a)(2)..................................................................................................................9

17

18

19

20

21

22

23

24

25

26

27

28

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT, pursuant to Federal Rule of Civil Procedure 24 Proposed Intervenor John Doe 3 ("Movant")[1] will move to intervene in the above-referenced proceeding scheduled for June 22, 2017, at 9:00 a.m., in the United States District Court for the Northern District of California, Courtroom F, 15th Floor, located at 450 Golden Gate Avenue, San Francisco, California 94102, with the Honorable Jacqueline Scott Corley, presiding.

Through this motion, Movant moves the Court, (a) to quash the John Doe summons ordered to be served upon Coinbase, Inc. pursuant to this Court's order dated November 30, 2016 (the "IRS Summons"), or (b) for a protective order limiting the scope of the IRS Summons, or (c) for an order allowing Movant to schedule an evidentiary hearing and conduct limited discovery concerning the IRS Summons.

This Motion to Intervene is made on the grounds that Movant has an interest in this proceeding that will not be adequately and fully represented by the summoned party, Coinbase, Inc., or Proposed Intervenors John Doe 1 & 2, and that this interest is sufficient to warrant intervention as a matter of right under Rule 24(a), or alternatively, permissive intervention under Rule 24(b). The Motion to Quash, or otherwise, for a Protective Order Limiting the Scope of the IRS Summons is made on the grounds that: (1) the IRS Summons was issued for an illegitimate purpose; and (2) enforcement of the IRS Summons is an abuse of this Court's process.

These Motions will be presented based on this Notice of Motion, the Memorandum of Points and Authorities; the Declaration of John Doe 3 along with exhibits; pleadings, orders, transcripts, and other documents associated with this action and in the related action captioned *In the Matter of the Tax Liabilities of John Does, United States person who, at any time during the period January 1, 2013, through December 31, 2015, conducted transaction in a convertible virtual currency as defined in IRS Notice 2014-21*, Case No. 3:16-cv-06658-JSC (N.D. Cal.); and any further evidence and arguments that may arise at the hearing of this motion.

---

[1] Simultaneously herewith, Movant requests of the Court the ability to proceed in this matter anonymously.

NOTICE OF MOTION AND MOTION TO INTERVENE, TO QUASH SUMMONS, OR FOR PROTECTIVE ORDER, OR FOR AN ORDER SCHEDULING AN EVIDENTIARY HEARING AND PERMITTING LIMITED DISCOVERY - CASE NO. 3:17-CV-01431-JSC

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

When enacting laws in the realm of federal taxation, Congress has placed a great emphasis in guarding against the loss of privacy of the taxpayer, both individuals and businesses, while maintaining the efficiency of the IRS in curbing tax evasion. This is a delicate balancing process that Congress maintains and monitors but given the exponential advancement of technology these issues of loss of privacy must be further examined.

During congressional hearings pertaining to the 1976 Tax Reform Act, witnesses voiced concerns over how the IRS used jeopardy and termination assessments and the use of administrative summonses as harassment tactics against political activists. *See* Cecelia Kehoe Dempsey, *The Application of the John Doe Summons Procedure to the Dual-Purpose Investigatory Summons*, 52 Fordham L. Rev. 574 (1984) *citing* S. Rep. No. 938, 94th Cong., 2d Sess. 368 (1976). This testimony given to Congress revealed that the emergence of the John Doe summons was part of a growing trend of IRS surveillance of individuals, rather than an isolated instance of abuse of authority. *Id.* Congress specifically wanted to address these frequent instances of the IRS's aggressive use of third-party summons against taxpayers and the enactment of I.R.C. §7609 was a response to these issues of individual privacy raised by this shocking growth of administrative surveillance by the IRS. *Id.*

Movant, Proposed Intervenor John Doe 3, is filing this motion with the intent to enforce Movant's rights protected under the U.S. Constitution individually and on behalf of all Coinbase customers. This extensive and intrusive discovery request by IRS represents nothing more than an illegitimate fishing expedition. Movant recognizes that this is a case of first impression given that the John Doe summons involves the civil rights of users of convertible virtual currency. Movant also recognizes the motions made by proposed intervenors John Does 1 & 2 and that Coinbase, Inc. plans to oppose the IRS's motion for enforcement of the summons and fully supports both these efforts. However, Movant has additional arguments and authorities to present, both procedural and substantive, and respectfully wishes to be heard given that the arguments presented have not been made by any of the interested parties.

## II.  STATEMENT OF FACTS AND PROCEDURAL HISTORY

On March 18, 2013, the Financial Crimes Enforcement Network ("FinCEN") issued an interpretive guidance pertaining to virtual currencies, such as bitcoin, in order to clarify the applicability of Bank Secrecy Act ("BSA") regulations with virtual currencies. The guidance defined convertible virtual currency activity as "(1) that has no central repository and no single administrator, and (2) that persons may obtain by their own computing or manufacturing effort." *FinCEN:* 6 FIN-2013-G001.

On March 25, 2014 The Internal Revenue Service ("IRS") of the United States issued Notice 2014-21 ("IRS Notice") on the treatment of virtual currency for federal taxation purposes describing how existing general tax principles apply to transactions using virtual currency. The IRS Notice only applies to "convertible" virtual currency which is "virtual currency that has an equivalent value in real currency, or that acts as a substitute for real currency." (IRS Notice at Section 2 & 3). Furthermore, the IRS Notice states that, "[convertible] virtual currency is treated as property," and "[g]eneral tax principles applicable to property transactions apply to transactions using virtual currency." (IRS Notice at Section 4, A-1).

On November 17, 2016, the United States filed an ex parte petition pursuant to 26 U.S.C. § 7609(h)(2) ("Petition to Serve") for an order permitting the United States to serve a "John Doe" administrative summons ("IRS Summons") on Coinbase, Inc. ("Coinbase"). *See In the Matter of the Tax Liabilities of John Does, United States person who, at any time during the period January 1, 2013, through December 31, 2015, conducted transaction in a convertible virtual currency as defined in IRS Notice 2014-21*, ("Petition to Serve") Case No. 3:16-cv-06658-JSC (N.D. Cal. 2016). (Petition to Serve, Dkt. No. 1). Coinbase is an exchange that deals in convertible virtual currency, like bitcoin, based in San Francisco and is registered as a money services business with the United States Department of the Treasury, Financial Crimes Enforcement Network ("FinCEN") and is licensed in 34 states (plus the District of Columbia and Puerto Rico). (Petition to Serve, Dkt. No. 2)

The IRS Summons "seeks information regarding United States persons who, at any time during the period January 1, 2013, through December 31, 2015, conducted transactions in a convertible virtual currency as defined in IRS Notice 2014-21." (Petition to Serve, Dkt. No. 2).

The information the IRS is requesting from Coinbase includes:

1.  Account/wallet/vault registration records for each account/wallet/vault owned or controlled by the

3

user during the period stated above including, but not limited to, complete user profile, history of changes to user profile from account inception, complete user preferences, complete user security settings and history (including confirmed devices and account activity), complete user payment methods, and any other information related to the funding sources for the account/wallet/vault, regardless of date.

2.  Any other records of Know-Your-Customer due diligence performed with respect to the user not included in paragraph 1, above.

3.  For any account/wallet/vault with respect to which the registered user gave any third-party access, control, or transaction approval authority, all powers of attorney, letters of wishes, corporate minutes, or other agreements or instructions granting the third party such access, control, or approval authority.

4.  All records of account/wallet/vault activity including transaction logs or other records identifying the date, amount, and type of transaction (purchase/sale/exchange), the post transaction balance, the names or other identifiers of counterparties to the transaction; requests or instructions to send or receive bitcoin; and, where counterparties transact through their own Coinbase accounts/wallets/vaults, all available information identifying the users of such accounts and their contact information.

5.  For each merchant user for which you act as Payment Service Provider, records of all payments processed, including records identifying the user of the wallet charged, if a Coinbase user, or the address of the wallet charged, if not, the date and amount of the transaction, and any other information that will enable the merchant to identify the transaction.

6.  All correspondence between Coinbase and the user or any third party with access to the account/wallet/vault pertaining to the account/wallet/vault, including but not limited to letters, memoranda, telegrams, telexes, facsimiles, e-mail, letters of instruction, and memoranda of telephone or oral instructions received.

7.  All periodic statements of account or invoices (or the equivalent).

8.  All records of payments to or from the user by checks, wire or other electronic transfer, ACH transaction, PayPal transfer, credit or debit card transaction, money order, transfer to or from other digital currency wallet address, or any other method, including records reflecting the form, manner, nature, and purpose of such payment including, but not limited to, ABA routing numbers and other routing information, payment instructions, and any and all invoices, billing statements, receipts, or other documents memorializing and describing such transaction.

9.  All exception reports produced by your AML system, and all records of investigation of such exception.

On November 30, 2016 this Court issued an order granting the petition. (Petition to Serve, Dkt. No. 7). On December 12, 2016 a Coinbase Customer, Jeffrey K. Berns, filed a motion to intervene and quash the summons or for protective order or evidentiary hearing. (Petition to Serve, Dkt. No. 9). In an effort to moot Berns' motion the United States responded on December 27, 2016 by filing an opposition declaring that Coinbase would not have to provide documents as it pertains to Berns. (Petition to Serve, Dkt. No. 15, 16). On January 11, 2017, Coinbase filed a motion to intervene and quash the summons, or for a

NOTICE OF MOTION AND MOTION TO INTERVENE, TO QUASH SUMMONS, OR FOR PROTECTIVE ORDER, OR FOR AN ORDER SCHEDULING AN EVIDENTIARY HEARING AND PERMITTING LIMITED DISCOVERY - CASE NO. 3:17-CV-01431-JSC

protective order limiting its scope (Petition to Serve, Dkt. No. 20).

On March 16, 2017, seeking to enforce the IRS Summons the United States initiated this current action ("Petition to Enforce"). (Dkt. No. 1). Shortly thereafter, Berns and Coinbase withdrew their motions to quash in the Petition to Serve action (Petition to Serve, Dkt. No. 31, 34). The Court then related the Petition to Serve action in this Petition to Enforce action. (Dkt. No. 6).

On March 17, 2017, the Congress of the United States[2] sent a letter to IRS Commissioner John Koskinen raising concerns about the dangerous precedent the IRS is setting with this Petition to Enforce action.[3] The letter called into question the IRS's basis for this investigation by stating:

> **"…we strongly question whether the IRS has actually established a reasonable basis to support the mass production of records for half of a million people, the vast majority of whom appear to not be conducting the volume of transactions needed to report them to the IRS. Based on the information before us, this summons seems overly broad, extremely burdensome, and highly intrusive to a large population of individuals."**

On May 4, 2017, this Court issued an order allowing the United States to serve Coinbase with the Petition to Serve. (Dkt. No. 9). On May 15, 2017 proposed intervenor John Doe 1 & 2 filed a motion to intervene and quash the IRS Summons and to proceed in this action anonymously. (Dkt. No. 10).

Movant's personal information is subject to IRS Summons because Movant falls within the class of persons described given that Movant is (1) a U.S. Citizen; (2) a registered user of Coinbase and (3) conducted a transaction in a convertible virtual currency using Coinbase during the period January 1, 2013, through December 31, 2015. (Doe 3 Decl.)

### III.   ARGUMENT

**A.  Movant is Entitled to Intervene in This Proceeding as of Right Pursuant to Fed. R. Civ. P. 24(a)**

"On timely motion, the court must permit anyone to intervene who claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may

---

[2] Letter issued by Orrin G. Hatch, Chairman of the Senate Committee on Finance, Kevin Brady, Chairman of the House Committee on Ways and Means, and Vern Buchanan, Chairman of the House Committee on Ways and Means Oversight Subcommittee.

[3] *See*, https://waysandmeans.house.gov/wp-content/uploads/2017/05/2017.05.17-Coinbase-Letter-Hatch-Brady-Buchanan.pdf.

as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2).

One who seeks to intervene as of right in a pending lawsuit must satisfy four elements where the applicant must show: (1) the application is timely; (2) it has a significant protectable interest relating to the property or transaction that is the subject of the action; (3) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the existing parties may not adequately represent the applicant's interest. *Donnelly v. Glickman*, 159 F.3d at 409 (internal quotation marks omitted). Further, courts generally "construe [Rule 24] broadly in favor of proposed intervenors." *United States ex rel. McGough v. Covington Techs. Co.*, 967 F.2d 1391, 1394 (9th Cir. 1992). "A liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts. By allowing parties with a practical interest in the outcome of a particular case to intervene, we often prevent or simplify future litigation involving related issues; at the same time, we allow an additional interested party to express its views before the court.'" *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1496 n. 8 (9th Cir.1995) (quoting *Greene v. United States*, 996 F.2d 973, 980 (9th Cir. 1993) (Reinhardt, J., dissenting)). Movant can satisfy these elements.

### 1.   This Application is Timely

The timeliness of an application for intervention is evaluated "in the context of all relevant circumstances," including:

> (1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case; (4) the prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have known of their interest in the case; and (5) the existence of unusual circumstances militating against or in favor of intervention.

*Jansen v. City of Cincinnati*, 904 F.2d 336, 340 (6th Cir. 1990); *See United States v. City of Detroit*, 712 F.3d 925, 930-31 (6th Cir. 2013) (same).

Here, Movant's application is timely because the case is still at its earliest stages and no legal issues

have been litigated. Movant is requesting intervention to protect her constitutional rights. The parties will not be prejudiced here because Movant has not failed to promptly intervene given that this motion was filed May 24, 2017, the 20th day since this Court entered its Order, issued May 04, 2017, on the merits, of the Government's Petition for Enforcement. Further, Movant should be granted intervention because this issue involves a case of first impression given that the privacy interests of U.S. citizens transacting in convertible virtual currency are at stake. This constitutes an unusual circumstance that militates in favor of intervention. Therefore, Movant's application for intervention is timely.

### 2.   Movant has a Significant Protectable Interest in the Subject Matter of This Case

"The Supreme Court has recognized two legally protectable interests that may provide a basis for a taxpayer to intervene under Rule 24(a)(2) in an IRS summons enforcement proceeding: a privilege or a claim of abuse of process." *Donaldson v. United States*, 400 U.S. 517, 531 (1971). "Such an abuse would take place if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation." *United States v. Powell*, 379 U.S. 48, 58, 85 S. Ct. 248, 255, 13 L. Ed. 2d 112 (1964); *2121 Arlington Heights Corp. v. I.R.S.*, 109 F.3d 1221, 1224 (7th Cir. 1997) (abuse of process by the IRS can be demonstrated "either by disproving the existence of one of the Powell factors or pointing to specific facts suggesting that the IRS issued the summons in bad faith"). "The statutory codification of the John Doe summons procedure did not authorize the IRS to force private citizens to do its research." *See, United States v. Humble Oil & Refining Company*, 518 F.2d 747 (5th Cir. 1975); *In re Oil & Gas Producers*, 500 F. Supp. 440 (W.D. Okla. 1980).

Movant claims a protectable interest because the IRS has not shown that the ordinary business transactions of Coinbase customers it seeks to discover suggests any grounds to believe that taxes have been avoided and not paid. Although the information acquired through the IRS Summons will likely expedite an investigation of those persons whose records are obtained, there is absolutely no reason to believe that those persons who do business in convertible virtual currency are engaging in tax avoidance schemes. Therefore, Movant has demonstrated that the IRS Summons is excessive and represents an abuse of process.

**3. The Disposition of This Action Will Impede Movant's Ability to Protect Interests**

"[A] party has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation." *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006); *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001).

If the United States is successful in this action the identity and transaction records of Coinbase customers will be disclosed which will impede Movant's ability to protect her interests resulting in a violation of her constitutional rights. Bitcoin has political bias embedded into it, as explained below, and disclosure of the identities and transaction records through this IRS Summons can be used for mass surveillance purposes ultimately targeting political associations in violation of the U.S. Constitution. Large institutions, like the IRS, utilize artificial intelligence algorithms, or machine learning, to crawl through massive data silos, similar to what is being requested from Coinbase, with the objective to find patterns and make predictions on that data. Once the data silo is fed into the algorithm it can acquire information on its own without the assistance of its developer thereby learning on its own. The Treasury Inspector General for Tax Administration ("TIGTA") has issued reports in the past showing that the IRS budget has been cut consistently since 2010 so the thought of replacing human work with a machine or program is not farfetched.[4] Hospitals, banks and governments' use of A.I. is not uncommon.[5]

The IRS has every right to make inquiries into the tax liability of every person who may be liable to pay an internal revenue tax, however it is an abuse of process for the IRS to use this data to find patterns and predictions on who to audit for tax evasion because this algorithm will ultimately allow the IRS to target political groups resulting in an insidious and unconstitutional surveillance device.

**4. Existing Parties Cannot Adequately Represent Movant's Interests**

"[T]he requirement of inadequacy of representation is satisfied if the applicant shows that representation of its interests 'may be' inadequate and that the burden of making this showing is minimal." *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983) (citing *Trbovich v.*

---

[4] *See*, TIGTA, 2016-30-083, https://www.treasury.gov/tigta/auditreports/2016reports/201630083fr.pdf.
[5] *See* FTC, *FinTech Forum: Artificial Intelligence and Blockchain*, March 9, 2017, https://www.ftc.gov/news-events/events-calendar/2017/03/fintech-forum-blockchain-artificial-intelligence.

*United Mine Workers,* 404 U.S. 528, 538 n.10 (1972)). Courts consider three factors: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary input to the proceedings that other parties would neglect." *Hazel Green Ranch, LLC v. U.S. Dep't of Interior*, No. 1:07-CV-00414OWW-SMS, 2007 WL 2580570, at *11 (E.D. Cal. Sept. 5, 2007). "The court also may find that a proposed intervenor's interests are not adequately represented where the intervenor would bring a perspective none of the other parties to the litigation have." *Defs. of Wildlife v. Johanns*, No. C 04-4512 PJH, 2005 WL 3260986, at *8 (N.D. Cal. Dec. 1, 2005).

Here, none of the existing parties to this action have made the same arguments as Movant and as a result are not cable or willing to make these arguments. Movant is offering a different perspective to this action combining principles of computer science, economics and the law. Convertible virtual currencies are a relatively new phenomenon and Movant is capable of providing the necessary input for the proceedings. Therefore, Movant respectfully requests this intervention as of right be granted.

**B. Movant Meets the Standards for Permissive Intervention Pursuant to Fed. R. Civ. P. 24(b)**

    **1. This Court has Federal Subject Matter Jurisdiction Over Movant's Challenge to the IRS Summons**

"A party seeking permissive intervention under Fed. R. Civ. P. 24(b) must establish a basis for federal subject matter jurisdiction independent of the court's jurisdiction over the underlying action." *E.E.O.C. v. Nevada Resort Ass'n*, 792 F.2d 882, 886 (9th Cir. 1986). "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party." 5 U.S.C. §702.

Here, the United States cannot assert sovereign immunity because Movant is seeking relief other than

money damages. Therefore, this Court has federal subject matter jurisdiction in this proceeding and can grant Movant permissive intervention.

### 2.   This Court has Broad Discretion to Allow Movant to Intervene in This Proceeding

This Court may permit intervention by anyone who has "a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). The same substantial interests that give Movant a right to intervene in this case under Rule 24(a) support permissive intervention under Rule 24(b). "Permissive intervention requires: '(1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action.'" *Mishewal Wappo Tribe of Alexander Valley v. Salazar*, 534 F. App'x 665, 667 (9th Cir. 2013) (citations omitted). Courts must also "consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). "A district court's exercise of discretion involves a determination of questions to which no strict rule of law is applicable, but which, by the nature of the case and the issues in it, must be controlled by the personal judgment of the court." *U.S. v. Wright Motor Co., Inc,* 536 F.2D 1090 (5th Cir. 1976)*; Lines v. Falstaff Brewing Co.*, 233 F.2d 927, 932 (9th Cir. 1956).

Here, Movant should be granted leave to intervene because (1) this Court has independent ground for jurisdiction since the United States cannot claim sovereign immunity; (2) this motion is timely since it was filed within 20 days of the Order to serve Coinbase with Petition to Enforce; and (3) the Movant's claims and assertions against the United States require the Court to resolve questions of fact and law that are common to and in some instances, identical to, questions raised by the existing parties.

### C.   The Court Should Quash Because IRS Summons Constitutes an Impermissible Fishing Expedition and Enforcement of Summons Will Result in Abuse of Court Process

The issue presented here is whether the IRS is seeking to utilize the John Doe summons procedure to conduct an illegitimate fishing expedition by intruding excessively into the private affairs of potentially millions of taxpayers.

"The United States is entirely a creature of the Constitution. Its power and authority have no other source. It can only act in accordance with all the limitation imposed by the Constitution." *Reid v. Covert*,

354 U.S. 1 (1957). The statutory codification of the John Doe summons procedure did not authorize the IRS to force private citizens to do its research. *U.S. v. Humble Oil & Refining Co.*, 518 F2d 747 (5th Cir. 1975). "The purpose of the [IRS John Doe summons] is "not to accuse, but to inquire." *U.S. v. Bisceglia*, 420 U.S. 141, 146.

"It is the court's process which is invoked to enforce the administrative summons and a court may not permit its process to be abused. Such an abuse would take place if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation…" *U.S. v. Powell*, 379 U.S. 48, 59. "The burden of showing an abuse of the court's process is on the taxpayer." *Id.* "When a party petitions to quash an IRS summons, the IRS must make a prima facie showing that the summons was issued in good faith." *Stewart v. United States*, 511 F.3d 1251, 1254 (9th Cir. 2008). "Specifically, the IRS must establish that the summons (1) was issued pursuant to a 'legitimate purpose'; (2) seeks information 'relevant' to that purpose; (3) seeks information that is 'not  already within the Commissioner's possession'; and (4) satisfies all "administrative steps required by the Code." *Id.*  Once the government has established a prima facie case, the burden then shifts to the petitioner to either disprove one of the four elements or demonstrate that judicial enforcement of the summons would otherwise constitute an abuse of process. *U.S. v. Powell*, 379 U.S. at 58, 85 S. Ct. at 255. Inquiry under *Powell* is predominately factual and therefore is reviewed under the "clearly erroneous" standard. *Ponsford v. U.S.*, 771 F.2d 1305, 1307 (9th Cir. 1985).

A taxpayer can prove bad faith or improper motive with facts and circumstances that can plausibly infer bad faith. *U.S. v. Clarke*, 134 S. Ct. 2361 (2014). "The balance struck in this Court's prior cases supports a requirement that a summons objector offer not just naked allegations, but some credible evidence to support his claim of improper motive. Circumstantial evidence can suffice to meet that burden, and a fleshed out case is not demanded. The tax-payer need only present a plausible basis for his charge." *Id.* "As a result of *Humble Oil*, it is unlikely that the IRS will ever again admit to the issuance of a John Doe summons purely for research purposes." *Senate Hearings* at 90, (statement of Robert S. Fink, Esq.).

The IRS Summons was not issued for a legitimate purpose because it is being used for research purposes. This IRS Summons is not centered upon a reasonable belief that U.S. citizens who transact in convertible virtual currency are failing to comply with any provision of the internal revenue laws. Rather, the United States is seeking to use the IRS summons as a discovery device, as explained above in section (A)(3), for determining whether there is a reasonable basis for believing that some of those U.S. citizens who transact in virtual currency are failing to comply. The United States has thus put the cart before the horse and, consequently, this IRS Summons is fatally illegitimate.

### 1. Enforcement of John Doe Summons Will Result in Extensive Intrusion Into the Private Affairs of Coinbase Customers

Although Congress mandated that the IRS may make inquiries into the tax liability of every person who may be liable to pay an internal revenue tax, Congress did not mandate that the IRS conduct illegitimate fishing expeditions. The majority of the information that the IRS Summons is seeking is irrelevant to the investigation to tax avoidance because much of the information is personal and private. Once the IRS obtains the identities and transaction logs of the virtual currency users, the IRS will then have access to the metadata that is associated with each citizen. Metadata is simply "the information we create, store, and share to describe things..."[6] This metadata is not listed in the IRS Summons but consequentially through the enforcement of this summons, the United States will have not only access but also ownership to it. The risk in this is that the metadata will give additional details about the person that otherwise would not be available due to the decentralized nature of Bitcoin. The Congressional intent of 7609(f) is in line with protecting this metadata, even though the hearings on 7609(f) took place well before the dawn of the internet.

Therefore, the information the United States is seeking is not relevant to the purpose of its investigation for tax avoidance and this IRS Summons is disastrously overbroad.

### 2. Political Bias is Embedded Into Bitcoin

"In the domain of indispensable liberties, whether of speech, press, or association, abridgments of

[6] National Information Standards Organization "NISO", *Understanding Metadata*, http://www.niso.org/apps/group_public/download.php/17446/Understanding%20Metadata.pdf.

NOTICE OF MOTION AND MOTION TO INTERVENE, TO QUASH SUMMONS, OR FOR PROTECTIVE ORDER, OR FOR AN ORDER SCHEDULING AN EVIDENTIARY HEARING AND PERMITTING LIMITED DISCOVERY - CASE NO. 3:17-CV-01431-JSC

1   such rights, even though unintended, may inevitably follow from varied forms of governmental action.

2   Compelled disclosure of affiliation with groups engaged in advocacy may constitute an effective restraint

3   on freedom of association." *NAACP v. Alabama*, 377 U.S. 288, 84 S. Ct. 1302, 12 L. Ed. 2d 325 (1964).

4       Movant expresses concerns over the use of this data acquired by the IRS Summons because the

5   convertible virtual currency at issue in this proceeding is unprecedented because Bitcoin is the world's

6   first decentralized virtual currency and that its creation is rooted in political bias. The developer or group

7   behind the creation of Bitcoin, Satoshi Nakamoto, stated in 2008, "[Bitcoin] is very attractive to the

8   libertarian viewpoint if we can explain it properly. I'm better with code than with words though."[7] The

9   timing of Bitcoin's creation is indicative of its political bias as well because it was created as a response

10  to the banking bailouts following the 07-08' Global Financial Crisis. On January 3, 2009, Nakamoto

11  mined the first block in the Bitcoin Blockchain, the Genesis Block, and inscribed into it: *"The Times*

12  *03/Jan/2009 Chancellor on brink of second bailout for banks."*[8] Moreover, Bitcoin is designed like a

13  precious metal and this characteristic appeals to those who believe that the gold standard should be

14  reinstated with fiat currency.

15      Lastly, politicians have been hesitant to associate with Bitcoin due to this political bias. John Podesta,

16  former White House Chief of Staff and Counselor to the President, refused to accept donations in bitcoin

17  for the 2016 Presidential campaign of Hillary Clinton stating: *"I don't send all the crazy ideas I hear*

18  *about at fundraisers your way, but this seems interesting and legit. Essentially digital currency with a*

19  *green angle as opposed to bitcoin's libertarian Ayn Rand schtick."*[9]

20      The IRS has abused it power in the past in order to target political groups. In 2013, the IRS admitted

21  and apologized for targeting groups with "tea party" or "patriot" in their names, confirming long-

22  standing accusations by some conservative groups. *See True the Vote, Inc. v. Internal Revenue Serv.*, 831

23  F.3d 551 (D.C. Cir. 2016). The "tea party" group is known to be largely of libertarian political

24

25  ───────────────────
    [7] The Mail Archive, *Satoshi Nakamoto: Re: Bitcoin P2P E-Cash Paper*, http://www.mail-
26  archive.com/cryptography@metzdowd.com/msg10001.html.
    [8] Motherboad, *What Satoshi Said: Understanding Bitcoin Through the Lens of Its Enigmatic Creator*,
27  https://motherboard.vice.com/en_us/article/quotes-from-satoshi-understanding-bitcoin-through-the-lens-
    of-its-enigmatic-creator.
28  [9] Wikileaks, *Re: Digital Currency for Hillary*, https://wikileaks.org/podesta-emails/emailid/15589.

NOTICE OF MOTION AND MOTION TO INTERVENE, TO QUASH SUMMONS, OR FOR
PROTECTIVE ORDER, OR FOR AN ORDER SCHEDULING AN EVIDENTIARY HEARING AND
PERMITTING LIMITED DISCOVERY - CASE NO. 3:17-CV-01431-JSC

1    association. A lawsuit against the IRS has commenced and is pending court review. *Id.*

2        Therefore, the Court should quash the IRS Summons because it is an abuse of this Court's process

3    and less restrictive means are available in obtaining this information.

4        **D.  If the Court Does Not Quash the IRS Summons, It Should Issue an Appropriate Protective**

5            **Order to Limit the Scope of the Summons**

6        A party seeking a protective order bears the burden of proving "good cause," which requires a

7    showing "that specific prejudice or harm will result" if the protective order is not granted. *In re Roman*

8    *Catholic Archbishop of Portland in Oregon*, 661 F.3d 417, 424 (9th Cir. 2011); *Rivera v. NIBCO, Inc.*,

9    364 F.3d 1057, 1063 (9th Cir. 2004). *See also Skellerup Indus. Ltd. v. City of Los Angeles*, 163 F.R.D.

10    598, 600 (C.D. Cal. 1995) (confirming that a court should grant a protective order "when the moving

11    party establishes 'good cause' for the order" and justice requires it).

12        As discussed above, Movant has provided facts to show that specific prejudice or harm will result if a

13    protective order limiting the scope of this IRS Summons is not granted. The IRS Summons cannot be

14    used to infringe on the rights of taxpayers and should be limited to include only relevant information

15    based on an investigation of tax avoidance. Therefore, the Court should narrow the scope of the IRS

16    Summons.

17        **E.  If the Court Does Not Quash the Subpoena or Issue a Protective Order, Movant Is Entitled**

18            **to Conduct Limited Discovery and Then an Evidentiary Hearing Concerning the IRS's Bad**

19            **Faith**

20        The decision whether to hold an evidentiary hearing in a given case generally rests within the sound

21    discretion of the trial court and this discretion remains fully intact when the business of the day is the

22    enforcement of an IRS summons. *Fortney v. United States*, 59 F.3d 117, 121 (9th Cir.1995). To make a

23    showing of bad faith, the taxpayer must introduce "some evidence" to support his allegations. *United*

24    *States v. Church of Scientology of Cal.*, 520 F.2d 818, 824 (9th Cir. 1975) (quoting *United States v.*

25    *Salter*, 432 F.2d 697, 700 (1st Cir. 1970)).

26        In *United States v. Salter*, a discovery request was granted when, after questioning the agent, a

27    substantial question exists regarding the legitimacy of the government's purpose. *United States v Salter*,

28

14

NOTICE OF MOTION AND MOTION TO INTERVENE, TO QUASH SUMMONS, OR FOR
PROTECTIVE ORDER, OR FOR AN ORDER SCHEDULING AN EVIDENTIARY HEARING AND
PERMITTING LIMITED DISCOVERY - CASE NO. 3:17-CV-01431-JSC

432 F.2d 697, 700 (1st Cir. 1970). Movant would like to conduct limited discovery and requests an evidentiary hearing so that in the event that an A.I. is being used, Movant will have the opportunity to review its source code. There has been no testimony of this type of technology being utilized so a substantial question exists regarding the legitimacy of the government's purpose. Therefore, the Court should grant Movant's request for limited discovery and an evidentiary hearing.

## IV.   CONCLUSION

For the preceding reasons, the Movant John Doe 3's Motion to Intervene, to Quash Summons, or for Protective Order, or for an Order Scheduling an Evidentiary Hearing and Permitting Limited Discovery should be granted.

Dated:  May 24, 2017                                      **Rayes Law**

                                                         /ER/_____
                                                         EMMANUEL RAYES (SBN 304,934)
                                                         Attorney for Proposed Intervenor John Doe 3