DAVID A. HUBBERT
Acting Assistant Attorney General

JEREMY N. HENDON (ORBN 982490)
AMY MATCHISON (CABN 217022)
Trial Attorneys
United States Department of Justice, Tax Division
P.O. Box 683, Ben Franklin Station
Washington, D.C. 20044
Telephone:     (202) 353-2466
               (202) 307-6422
Fax:           (202) 307-0054
E-mail: Jeremy.Hendon@usdoj.gov
        Amy.T.Matchison@usdoj.gov
        Western.Taxcivil@usdoj.gov

BRIAN J. STRETCH (CABN 163973)
United States Attorney
THOMAS MOORE (ALBN 4305-O78T)
Chief, Tax Division
COLIN C. SAMPSON (CABN 249784)
Assistant United States Attorney
450 Golden Gate Avenue, 11th Floor
San Francisco, California 94102
Telephone: (415) 436-7020
Email:  Colin.Sampson@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 3:17-cv-01431-JSC |
| | ) | |
| Petitioner, | ) | **UNITED STATES' OPPOSITION TO** |
| | ) | **JOHN DOE 1, 2, AND 3'S MOTIONS** |
| v. | ) | **TO INTERVENE** |
| | ) | |
| COINBASE, INC., | ) | DATE:        June 29, 2017 |
| | ) | TIME:        9:00 a.m. |
| Respondent. | ) | LOCATION:    Courtroom F, 15th Floor |
| | ) | 450 Golden Gate Avenue |

TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................................1

II.     BACKGROUND ...................................................................................................2

III.    ARGUMENT .........................................................................................................5

        A.      John Does 1, 2 and 3 Do Not Have a Right to Intervene in this Enforcement
                Proceeding ..............................................................................................5

                1.      John Does 1, 2 and 3 Do Not Have a Significant Protectable Interest in
                        this Proceeding ...........................................................................6

                2.      John Does 1, 2 and 3 Will Not be Impaired by the Disposition of this
                        Action ........................................................................................9

                3.      John Does 1, 2 and 3 Do Not Have a Unique Perspective ...................10

        B.      John Does 1, 2 and 3 Should Not be Permitted to Permissively Intervene in
                this Enforcement Proceeding ....................................................................11

                1.      John Doe 1 and John Doe 2 Have Failed to Identify Any Applicable
                        Waiver of Sovereign Immunity. .........................................................12

                2.      The intervention of John Does 1, 2 and 3 Will Unduly Delay and
                        Prejudice the Adjudication of the Parties' Rights .................................14

IV.     CONCLUSION ...................................................................................................16

TABLE OF AUTHORITIES

Page

*Cases*

*Alvarado v. Table Mountain Rancheria*, 509 F.3d 1008 (9th Cir. 2007) ............................ 12
*Donaldson v. United States*, 400 U.S. 517 (1971) ............................................. 3, 6, 10
*Dunn & Black P.S. v. U.S.*, 492 F.3d 1084 (9th Cir. 2007) ..................................... 12
*Freedom From Religion Found., Inc. v. Geithner*, 644 F.3d 836 (9th Cir. 2011) ............. 11
*Gilbert v. DaGrossa*, 756 F.2d 1455 (9th Cir. 1985) ........................................... 12
*In re Grand Jury Proceedings*, 40 F.3d 959 (9th Cir. 1994) ................................... 11
*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .......................................... 13
*Mangum v. Action Collection Serv., Inc.*, 575 F.3d 935 (9th Cir. 2009) ..................... 11
*Perry v. Schwarzenegger*, 630 F.3d 898 (9th Cir. 2011) ....................................... 13
*Reiserer v. United States*, 479 F.3d 1160 (9th Cir. 2007) ...................................... 9
*Reisman v. Caplin*, 375 U.S. 440 (1964) ...................................................... 3, 5
*Smith v. Maryland*, 442 U.S. 735 (1979) ...................................................... 10
*Strong v. United States*, 57 F. Supp. 2d 908 (N.D. Ca. June 22, 1999) ....................... 4
*Tiffany Fine Arts, Inc. v. United States*, 469 U.S. 310 (1985) ........................... passim
*Town of Chester, New York v. Laroe Estates, Inc.*, ___ S.Ct. __, 2017 WL 2407473 (2017) ............... 14
*United States v. Arthur Young & Co.*, 465 U.S. 805 (1984) ................................... 2, 7
*United States v. BDO Seidman*, 337 F.3d 802 (7th Cir. 2003) .................................. 9
*United States v. Bisceglia*, 420 U.S. 141 (1975)............................................ 2, 3, 9
*United States v. Clarke*, ___ U.S. ___, 134 S.Ct. 2361 (2014)................................ 2, 3
*United States v. Dalm*, 494 U.S. 596 (1990) .................................................. 12
*United States v. Euge*, 444 U.S. 707 (1980) .................................................... 2
*United States v. First Family Mtge. Corp.*, 739 F.2d 1275 (7th Cir. 1984).................... 5
*United States v. Gilleran*, 992 F.2d 232 (9th Cir. 1993)....................................... 3
*United States v. Golden Valley Elec. Ass'n*, 689 F.3d 1108 (9th Cir. 2012) .................. 11
*United States v. Kersting*, 891 F.2d 1407 (9th Cir. 1989) ...................................... 9
*United States v. Miller*, 425 U.S. 435 (1976)................................................. 10
*United States v. Morton Salt*, 338 U.S. 632 (1950) ............................................ 7
*United States v. Nordic Village, Inc.*, 503 U.S. 30 (1992) .................................... 12
*United States v. Powell*, 379 U.S. 48 (1964) ............................................. 6, 7, 8, 10
*United States v. Ritchie*, 15 F.3d 592 (6th Cir. 1994)................................... 4, 5, 9, 13
*United States v. Samuels, Kramer & Co.*, 712 F.2d 1342 (9th Cir. 1983)....................... 8
*United States v. Sherwood*, 312 U.S. 584 (1941)............................................. 12
*United States v. Sidley Austin Brown & Wood LLP*, No. 03 C 9355, 2004 WL 816448 (N.D. Ill. Apr. 15, 2004)........................................................................... 6, 9, 14
*United States v. Sidley Austin Brown & Wood LLP*, No. 03 C 9355, 2004 WL 905930 (N.D. Ill. Apr. 28, 2004)............................................................................... 11
*Vermont Agency of Natural Resources v. United States*, 529 U.S. 765 (2000)................... 13

*Statutes*

26 U.S.C. § § 7402(a) ......................................................................... 12
I.R.C. § 7602(a) ............................................................................... 3
I.R.C. § 7609(a)(1)......................................................................... 3, 4, 13
I.R.C. § 7609(b)(1).......................................................................... 3, 5
I.R.C. § 7609(b)(2)(A) ......................................................................... 3
I.R.C. § 7609(c)(2) ............................................................................ 3
I.R.C. § 7609(c)(3) ..................................................................... 3, 4, 5, 13
I.R.C. § 7609(f)........................................................................... passim

I.R.C. § 7609(h)(2)...........................................................................................4
I.R.C. §§ 6201(a) ...........................................................................................2
I.R.C. §§ 7402(b) ...........................................................................................3

**Rules**

Fed. R. Civ. P. 24(a) ......................................................................................7
Fed. R. Civ. P. 24(a)(2)................................................................................19
Fed. R. Civ. P. 24(b)(3)................................................................................15

1    The United States of America submits this Opposition to the Motions to Intervene filed by John

2    Doe 1 and John Doe 2 (Docket No. 10) and John Doe 3 (Docket No. 19).[1]

3                                      **I.      INTRODUCTION**

4    The IRS is conducting an investigation to determine the identity and correct federal income tax

5    liabilities of United States persons who conducted transactions in convertible virtual currency during

6    2013-2015.  In order to determine the identity of such U.S persons, who have transacted in a medium of

7    exchange that touts as one of its primary benefits the anonymity of the users, the IRS sought and

8    received permission from the Court to serve a summons on Coinbase, which operates a bitcoin wallet

9    and exchange business.

10    After discussions with Coinbase failed to result in Coinbase's production of the books, records,

11    papers, and other data demanded in the summons, the United States brings this action seeking an order

12    enforcing the summons and requiring Coinbase to comply.  Despite any legal basis to do so, John Does

13    1, 2 and 3 now seek the right to intervene in this action and assert their own claim to quash the

14    summons, for a protective order, or for an evidentiary hearing and limited discovery.  Because the IRS

15    has the Congressional mandate to make inquiries into the tax liability of every person who may be liable

16    to pay an internal revenue tax, and such mandate is not limited to instances where there is an indicia of

17    tax avoidance, John Does 1, 2 and 3 do not have a significant protectable interest mandating their

18    intervention in this action of right.  Additionally, the Does cannot show that they will impaired by a

19    disposition of this action because the law is clear that taxpayers have no legal protection to shield their

20    identities or account information from the IRS.

21    Further, the Does are not entitled to permissively intervene in this action because the United

22    States has not waived its sovereign immunity for claims brought by a John Doe seeking to quash a

23    summons and thus they cannot establish an independent ground for jurisdiction.  Even if John Does 1, 2

24

25    ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

[1] Per the Stipulation and Order entered by the Court (Docket No. 22), this opposition is limited to

26    the arguments made by John Does 1, 2 and 3 in support of their procedural request to intervene in this
summons enforcement proceeding.  The United States will respond to the substantive arguments

27    challenging the summons as advanced by the Does, as necessary and as delineated by the Stipulated
Order.  The United States does not waive any objections or surrender its opposition to the Does'

28    Motions to Quash Summons, or for Protective Order, or for an Order Scheduling an Evidentiary Hearing
and Permitting Limited Discovery by not responding here.

1  and 3 could establish an independent ground for jurisdiction, they still would not be entitled to

2  permissively intervene in this action.  They cannot establish that they have Article III standing to pursue

3  their cause of action against the government and their intervention would necessarily unduly delay and

4  prejudice the adjudication of the parties' rights due to the sweeping relief they seek.

5        Because John Does 1, 2 and 3 cannot meet their burden to establish that they are entitled to

6  intervention of right, or even be allowed to permissively intervene, the Court should deny their motions.

7  **II.**        **BACKGROUND**

8        Intervention under Rule 24 is not automatic in all summons proceedings because Congress has

9  created a comprehensive scheme governing the issuance and enforcement of IRS summonses.  That

10 scheme, in particular as it applies to John Doe summonses as discussed below, precludes the

11 intervention of John Does 1, 2 and 3 in this enforcement proceeding.

12       The United States has a system of taxation that relies on the good faith and integrity of each

13 taxpayer to disclose completely and honestly all information relevant to his or her tax liability.  *See*

14 *United States v. Clarke*, ___ U.S. ___, 134 S.Ct. 2361, 2365 (2014); *United States v. Arthur Young &*

15 *Co.*, 465 U.S. 805, 815-16 (1984).  "Nonetheless, it would be naive to ignore the reality that some

16 persons attempt to outwit the system."  *United States v. Bisceglia*, 420 U.S. 141, 145 (1975).

17 Accordingly, Congress has conferred upon the IRS the duty to make inquiries, determinations, and

18 assessments of all taxes, and has correspondingly given it expansive information gathering authority,

19 including the power to compel disclosure, for that purpose.  I.R.C. §§ 6201(a), 7601(a), 7602; *see Arthur*

20 *Young & Co.*, 465 U.S. at 816.

21       The summons power granted to the IRS under Section 7602 is the centerpiece of that authority.

22 That power is broad, and is designed to enable the IRS to conduct effective tax investigations.  *See*

23 *Arthur Young & Co.*, 465 U.S. at 816.  That statute authorizes the IRS to examine records, issue

24 summonses, and take testimony for the purpose of "ascertaining the correctness of any return," "making

25 a return where none has been made," "determining the liability of any person for any internal revenue

26 tax," or "inquiring into any offense connected with the administration or enforcement of the internal

27 revenue laws."  I.R.C. § 7602(a), (b); *see United States v. Euge*, 444 U.S. 707, 710-11 (1980).

28

1    An IRS summons is not self-enforcing, however.  *See Clarke*, 134 S.Ct. at 2367; *Donaldson v.*

2  *United States*, 400 U.S. 517, 524 (1971); *United States v. Gilleran*, 992 F.2d 232, 233 (9th Cir. 1993).  If

3  a party refuses to comply with a summons, the Government may enforce the summons only after filing a

4  petition in a district court and obtaining an order compelling the production of the requested materials or

5  testimony.  *See* I.R.C. §§ 7402(b), 7604; *Clarke,* 134 S.Ct. at 2367; *Gilleran*, 992 F.2d at 233.  This

6  judicial involvement provides the appropriate check on the executive branch in its exercise of the

7  summons power and serves to safeguard the taxpayer's procedural rights.  *See Reisman v. Caplin*, 375

8  U.S. 440, 449 50 (1964); *Bisceglia*, 420 U.S. at 146.

9    Congress has specified certain additional procedures that the IRS must follow in issuing a

10  summons directed to a third party concerning the tax liability of another person.  Generally, if the IRS

11  serves a summons on a third party that requests the production of records pertaining to the tax liability of

12  an identified person other than the third party itself, then that other person must be served with timely

13  notice of the summons.  I.R.C. § 7609(a)(1).  That "noticee" acquires certain procedural rights,

14  including the right to file a petition in the district court to quash the summons, *see* I.R.C. §

15  7609(b)(2)(A), and – if the Government brings an enforcement action under Section 7604 against the

16  summoned party – the right to intervene in that proceeding, *see* I.R.C. § 7609(b)(1).  The notice

17  requirement and noticee procedural rights do not apply in all circumstances, however.  For example,

18  notice is not required to be given, and thus no noticee procedural rights to quash are authorized, if the

19  summons was issued in aid of collection of a tax liability or issued by an IRS criminal investigator in

20  connection with a criminal investigation (I.R.C. § 7609(c)(2)), or if the summons is a "John Doe"

21  summons (I.R.C. § 7609(c)(3)).

22    The investigative power of the IRS also includes the power to issue "John Doe" summonses, that

23  is, summonses that do not identify the person or persons with respect to whose tax liabilities information

24  is sought.  *See Bisceglia*, 420 U.S. at 148-49.  In such a case, "where the IRS does not know the identity

25  of the taxpayer under investigation, advance notice to that taxpayer is, of course, not possible." *Tiffany*

26  *Fine Arts, Inc. v. United States*, 469 U.S. 310, 316-17 (1985) (emphasis in original).  As a substitute for

27  that notice, the Code requires the IRS first to obtain leave from a district court before it may serve a

28  "John Doe" summons on a third party.  *See* I.R.C. § 7609(f); *Tiffany Fine Arts*, 469 U.S. at 317.

In order to obtain such leave, the IRS must demonstrate to the district court that: (1) "the summons relates to the investigation of a particular person or ascertainable group or class of persons;" (2) "there is a reasonable basis for believing that such person or group or class of persons may fail or may have failed to comply with any provision of any internal revenue law;" and (3) the information sought to be obtained from the summons, and the identity of the person or persons with respect to whose liability the summons will be issued, are "not readily available from other sources." I.R.C. § 7609(f). The proceeding before the district court is *ex parte*, and the district court makes its determination whether the statutory requirements have been satisfied solely on the basis of the Government's petition and its supporting affidavits. I.R.C. § 7609(h)(2); *see Tiffany Fine Arts*, 469 U.S. at 317.

The district court's review of a John Doe summons under Section 7609(f) prior to its issuance operates as a substitute for the review that would take place if a noticee were to file a motion to quash a summons under Section 7609(b). "In effect, in the John Doe context, the court takes the place of the affected taxpayer under §§ 7609(a) and (b) and exerts a restraining influence on the IRS." *Tiffany Fine Arts*, 469 U.S. at 320. Because the district court acts in this capacity in a Section 7609(f) proceeding, Congress did not see fit to duplicate that proceeding by extending the right to bring a motion to quash to a John Doe; instead, the statute authorizes such a motion to be brought only by a person who is identified in the summons. I.R.C. § 7609(a)(1), (b)(2)(A); *see also* I.R.C. § 7609(c)(3) (excluding John Doe summonses from petitions to quash). Similarly, Congress extended an automatic right of intervention in an enforcement proceeding against a summoned party only to a noticee. I.R.C. § 7609(a)(1), (b)(1), (c)(3).

In summary, "[t]he mechanism for a taxpayer's challenge to a summons differs according to the statutory provision under which the summons is issued." *United States v. Ritchie*, 15 F.3d 592, 597 (6th Cir. 1994). The proper procedure for a taxpayer who receives an IRS summons but does not wish to comply is to wait for the IRS to bring an enforcement proceeding in district court and challenge the summons in that proceeding. *See Strong v. United States*, 57 F. Supp. 2d 908, 915 (N.D. Ca. June 22, 1999). If the summons is issued to a third party and it concerns an identified taxpayer, that taxpayer may move to quash the summons, or he may intervene in an enforcement action brought by the IRS against the third party. *See* I.R.C. § 7609(b)(1), (b)(2)(A); *Ritchie*, 15 F.3d at 597. If the summons is

1   issued to a third party and it concerns an unidentified taxpayer, a district court must first grant the IRS

2   leave to serve the summons under Section 7609(f).  The taxpayer may not intervene in the Section

3   7609(f) proceeding and may not move to quash the summons after its issuance.  *See* I.R.C. § 7609(f),

4   (h)(2), (c)(3).

5         This Court's review of the John Doe summons to Coinbase prior to its issuance under Section

6   7609(f) served as a substitute for the review that a named taxpayer could seek through a motion to

7   quash.  *See Tiffany Fine Arts*, 469 U.S. at 320.  The statute accordingly precludes any party from

8   duplicating this review by filing a motion to quash a John Doe summons.  *See* I.R.C. § 7609(c)(3);

9   *Ritchie*, 15 F.3d at 397.

10        Taxpayers do not have a general right, apart from the statutory grant of jurisdiction in Section

11  7609, to move to quash an IRS summons.  *See Reisman*, 375 U.S. at 450.  Because John Does 1, 2 and 3

12  do not fall within the class of taxpayers who are authorized under Section 7609 to file a motion to quash,

13  they are foreclosed from seeking judicial review of the summons issued to Coinbase.  This is as

14  Congress intended:

15          Congress, however, did not seek to ensure that the IRS have an adversary
    in all summons proceedings.  All that it did was require that a party with a
16  real interest in the investigation – or the district court in the John Doe
    context – have standing to challenge the IRS's exercise of its summons
17  authority.  It is not up to us, in construing the scope of this authority, to
    identify a problem that did not trouble Congress, or to attempt to correct it.
18

19  *Tiffany Fine Arts*, 469 U.S. at 322; *see also United States v. First Family Mtge. Corp.*, 739 F.2d 1275,

20  1278-79 (7th Cir. 1984) (attempt by taxpayer, outside of waiver of immunity in Section 7609, to restrain

21  IRS from investigation of tax liability is barred by Anti-Injunction Act).

22                      **III.      ARGUMENT**

23  **A.      John Does 1, 2 and 3 Do Not Have a Right to Intervene in this Enforcement
    Proceeding.**
24
25        Only under certain circumstances may a taxpayer have a right to intervene in a summons

    enforcement action under Fed. R. Civ. P. 24(a).  Rule 24(a)(2) provides in pertinent part:
26
27          (a) Intervention of Right.  Upon timely application anyone shall be
    permitted to intervene in an action . . . (2) when the applicant claims an
    interest relating to the property or transaction which is the subject of the
28  action and the applicant is so situated that the disposition of the action
    may as a practical matter impair or impede the applicant's ability to

1      protect that interest, unless the applicant's interest is adequately
    represented by existing parties.

2

3  John Does 1, 2 and 3 must prove that "(1) their application is timely; (2) they have an interest relating to

the subject matter of the action; (3) there is a risk that their interest will be impaired by the action's

4  disposition; and (4) their interests are not represented by the Government or [the summoned party]."

5  *United States v. Sidley Austin Brown & Wood LLP*, No. 03 C 9355, 2004 WL 816448, at *3 (N.D. Ill.

6  Apr. 15, 2004) (citation and internal quotations omitted).  Moreover, intervention is a matter of right

7  only where a taxpayer has a "significantly protectable interest" in the property that is the subject of the

8  summons enforcement proceeding, that is, a claim of privilege or a claim that it would be an abuse of

9  process if the court were to enforce the summons.  *Donaldson*, 400 U.S. at 531.  The failure to establish

10  even just one of the four elements requires that the motion to intervene be denied.  *Id.*; *Sidley*, 2004 WL

11  816448, at *3.

12      The United States does not dispute that John Does 1, 2 and 3 have timely applied to intervene in

13  this proceeding.  However, that is the only required element of intervention that they can establish and

14  so their motions to intervene should be denied.

15          **1.    John Does 1, 2 and 3 Do Not Have a Significant Protectable Interest in this

16                 Proceeding.**

17      John Doe 1 and John Doe 2 allege that their significant protectable interest here is based on an

18  abuse of process claim rooted in the following:  1) that the IRS is not able and does not intend to review

19  the tax returns of the Coinbase customers for which it seeks identities, and 2) that the summons has not

20  been tailored to "indicia of tax-avoidance conduct."[2]  Docket No. 10 at 11:9-13.  Neither of these two, or

21  the combination of both, constitutes an abuse of process.  An abuse of process in the summons context,

22  as defined by the Supreme Court (and acknowledged by John Does 1, 2 and 3), "would take place if the

23  summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on

24  him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular

25  investigation."  *United States v. Powell*, 379 U.S. 48, 58 (1964).

26

27

28        [2] Similarly, John Doe 3 contends that because the summons is not limited to persons engaged in
tax avoidance schemes that it is excessive and therefore an abuse of process.  Docket No. 19 at 7:23-27.

1   That the IRS might make inquiries into the tax liability of every person who may be liable to pay

2   an internal revenue tax, as is its Congressional mandate, is not an abuse of process.  Section 7602

3   authorizes the IRS to examine "any books, papers, records, or other data which *may* be relevant or

4   material."  (Emphasis added.)  In *United States v. Arthur Young & Co.*, 465 U.S. 805, 814 (1984), the

5   Court stated that the language "may be" reflects Congress's express intention to allow the IRS to obtain

6   "items of even *potential* relevance to an ongoing investigation, without reference to its admissibility."

7   (Emphasis in original.)   The IRS need not show that the "documents it seeks are actually relevant in any

8   technical, evidentiary sense."  *Arthur Young*, 465 U.S. at 814.  In *Powell*, the Supreme Court noted that

9   the IRS can issue a summons to investigate "'merely on suspicion that the law is being violated, or even

10  just because it wants assurance that it is not.'" 379 U.S. at 57 (quoting *United States v. Morton Salt*, 338

11  U.S. 632, 642-43 (1950)).  Thus, in applying the *Powell* test, the question is not whether the records

12  sought, when disclosed, will contradict a taxpayer's return, but whether the records "might" throw light

13  upon the correctness of a return.  *Arthur Young*, 465 U.S. at 814-15 & n.11.  The IRS need not accept

14  the word of the summoned party that records are not relevant.  It is entitled to determine that fact for

15  itself.  *See Tiffany Fine Arts*, 469 U.S. at 323.

16  John Doe 1 and John Doe 2 speculate that the IRS is not able and does not intend to examine the

17  tax returns of Coinbase users.  Docket No. 10 at 11:9-10.  This wholly unsupported theory is

18  contradicted by the evidence in the record.  As Senior Revenue Agent Utzke has testified, the IRS is

19  conducting an investigation to determine the identity and correct federal income tax liabilities of United

20  States persons who conducted transactions in a virtual currency during 2013-2015.  Docket No. 3 at 2:

21  ¶ 2.  Whether the IRS actually examines the tax returns of every single person identified in their

22  investigation is not relevant to the ultimate inquiry before this Court which is whether the summons: (1)

23  was issued for a legitimate purpose; (2) seeks information relevant to that purpose; (3) seeks information

24  that is not already within the IRS's possession; and (4) satisfies all administrative steps required by the

25  Internal Revenue Code.  *Powell*, 379 U.S. at 57-58.   The fulfillment of the IRS's mandate from

26  Congress, to make inquiries into the liability of every person who may be liable to pay, to include U.S.

27  persons who have transacted in a virtual currency, is a legitimate purpose in issuing a summons.

28  Further, enforcement of a summons, issued for that very legitimate purpose, cannot be an abuse of this

1   Court's process.  Indeed, the Does have failed to cite, and the United States is not aware that, any

2   authority exists for their proposition that the IRS is required to use every piece of information that is

3   returned by a summons in order for it to have been considered properly issued and enforceable.  The

4   request of John Doe 1 and John Doe 2 that this Court find such a requirement is absurd.

5        Furthermore, the argument of John Does 1, 2 and 3 that the summons should have been tailored

6   to return the identities of only U.S. persons who demonstrate "indicia of tax-avoidance" or have engaged

7   in tax avoidance schemes is not only irrelevant but is also vague.  The Does do not explain what they

8   mean by "tax-avoidance" nor do they offer what that these indicia might be.  If what the Does are

9   suggesting is that a criminal standard for tax avoidance is used, any such standard need not be satisfied

10  for an IRS examination.  Again, the IRS can issue a summons to investigate just because it wants

11  assurance that the law is not being violated.  *Powell*, 379 U.S. at 57.  To the extent the Does raise their

12  "indicia of tax-avoidance" argument to assert that the IRS has improperly issued a John Doe summons,

13  that matter was already decided when this Court granted the Petition for Leave to Serve "John Doe"

14  Summons, Case No. 3:16-cv-6658-JSC, November 30, 2016, Docket No. 7.  The Does cannot use this

15  enforcement proceeding as a mechanism to challenge the factors under I.R.C. § 7609(f) for issuing a

16  "John Doe" summons.  *United States v. Samuels, Kramer & Co.*, 712 F.2d 1342, 1346 (9th Cir. 1983)

17  (stating that "the three factual determinations that a district court must make under section 7609(f)

18  before issuing its ex parte authorization of a John Doe summons may not be challenged" in an

19  enforcement proceeding).

20        To the extent the Does' tax-avoidance argument pertains to simply not reporting all income on

21  a tax return, that is part of the reason the IRS has launched this investigation.  The IRS is aware that U.S.

22  persons are transacting in virtual currency.  As explained in IRS Notice 2014-21, 2014-1 C.B. 938, tax

23  consequences exist as a result of those transactions.  And the IRS is aware, based upon the data it

24  possesses that reflects taxpayers' self-reporting, that there seems to be a substantial gap between the

25  number of people transacting in virtual currency (for which tax consequences might attach) and those

26  that are reporting such transactions.  Docket No. 3 at 4: ¶ 13.  There are many reasons why these U.S.

27  persons are failing to properly report the tax consequences of their virtual currency transactions and one

28  of which may be tax avoidance.  It does not make any sense (nor is it possible) for the IRS to limit its

1    investigation into ferreting out only those unknown U.S. persons who have some sort of specific intent.

2    And, again, the Does have failed to cite, and the United States is not aware of, any authority that

3    supports their proposition that a summons is only enforceable if the scope is limited to revealing the

4    identities of U.S. persons who demonstrate indicia of tax-avoidance conduct as the Does might define it.

5    The request that this Court find such is also absurd.

6          The IRS's investigation into the identities of U.S. persons who may be failing to properly report

7    their tax liabilities is a legitimate purpose for which the IRS is pursuing the summons at issue here.  This

8    Court's enforcement of such would not constitute an abuse of its process and the baseless speculation of

9    John Does 1, 2 and 3 about what the IRS may do with the information returned by the summons or how

10   it may have narrowed its investigation does not amount to a protectable interest sufficient to justify

11   intervention as a matter of right.

12               **2.       John Does 1, 2 and 3 Will Not be Impaired by the Disposition of this Action.**

13         John Does 1, 2 and 3 have articulated that their significant protectable interest in this proceeding

14   is that it would be an abuse of this Court's process to enforce the IRS summons because the IRS is not

15   able to examine every Coinbase customer and the summons was not limited to U.S. persons engaged in

16   tax avoidance.  Despite that, they argue that their interests will be impaired by disposition of this action

17   because their identities and transaction information will become known to the IRS even though they are

18   not the subject of an IRS investigation, there is no basis for such an investigation, the IRS has not

19   identified any basis for the disclosure of identification and transaction information, and that the IRS will

20   use the summoned information to find patterns and make predictions.  Docket No. 10 at 11:22-28;

21   Docket No. 19 at 8:1-20.  Setting aside that the protectable interest they have identified does not match

22   the impairment they claim to be at risk of suffering, it is clear that what John Does 1, 2 and 3 really

23   object to in this proceeding is their identities becoming known to the IRS.  But, case law is clear that

24   there is no legal protection afforded taxpayers to shield their identities from the IRS.  *See Bisceglia,* 420

25   U.S. at 150-51; *United States v. BDO Seidman,* 337 F.3d 802, 812-13 (7th Cir. 2003); *Ritchie,* 15 F.3d at

26   601; *United States v. Kersting,* 891 F.2d 1407, 1409 (9th Cir. 1989); *Sidley*, 2004 WL 816448.

27         Moreover, as with bank, credit card, or brokerage accounts, the IRS has the authority to obtain

28   financial records, including transactional records, when it is examining a tax return.  *See Reiserer v.*

1   *United States*, 479 F.3d 1160, 1165 (9th Cir. 2007) ("there is no confidentiality where a third party such

2   as a bank either receives or generates the documents sought by the IRS").  The result here should be no

3   different – there is no significant protectable interest being impaired – simply because John Does 1, 2,

4   and 3 utilized virtual currency.  Also, the law does not recognize a desire to not have one's tax returns

5   examined as worthy of legal protections.  *Donaldson*, 400 U.S. at 530.  Further, it is well established that

6   the IRS need not have probable cause to examine the correctness of returns or the correct liabilities of

7   any taxpayer.  *Powell*, 379 U.S. at 48.  Although John Does 1, 2 and 3 may be affected by the

8   disposition of this case because the IRS may learn their identities, that does not constitute an impairment

9   of a protectable interest.  Accordingly, their motions should be denied.

10   **3.      John Does 1, 2 and 3 Do Not Have a Unique Perspective.**

11   John Doe 1 and John Doe 2 argue that neither the government, nor Coinbase, can fully represent

12   their unique interests in this proceeding.[3]  However, in so arguing, John Doe 1 and John Doe 2 again

13   diverge from their previously expressed interest in arguing about an abuse of this Court's process to

14   instead admitting that their "primary interest is protecting the privacy of Coinbase's users' information."

15   Docket No. 10 at 12:15-21.  But Coinbase's users have no expectation of privacy in their account

16   information that will be damaged by disclosure of that information to the IRS.  In *United States v.*

17   *Miller*, 425 U.S. 435 (1976) the Supreme Court expressly held that there is no "legitimate expectation of

18   privacy" in information kept in bank records" for Fourth Amendment purposes.  *Id.* at 442.  The

19   reasoning behind that holding is straightforward.  The Supreme Court held that documents containing

20   account information are "business records of" banks, not "private papers" of the account holder, who

21   "voluntarily conveyed" the account information to the bank and bank employees.  *Id.* at 441-442.

22   Moreover, the account holder "takes the risk" that "the information will be conveyed" by the bank "to

23   the Government."  *Id.* at 443.  As a result, there can be no legitimate expectation that the information

24   will not be disclosed to the government.  *See also Smith v. Maryland*, 442 U.S. 735, 743-44 (1979)

25   (finding "no legitimate expectation of privacy in information" voluntarily turned over "to third parties").

26

27   ───────────────

28   [3] Likewise, but without elaboration, John Doe 3 contends she offers a unique perspective on this case "combining principles of computer science, economics, and the law" that no other party can or will make.  Docket No. 19 at 9:10-14.

And the Ninth Circuit has repeatedly recognized, and applied, this holding in *Miller*.  *See, e.g., United States v. Golden Valley Elec. Ass'n*, 689 F.3d 1108, 1116 (9th Cir. 2012); *Mangum v. Action Collection Serv., Inc.*, 575 F.3d 935, 942-43 (9th Cir. 2009); *In re Grand Jury Proceedings*, 40 F.3d 959, 962 (9th Cir. 1994).

*Miller* applies here.  Coinbase users, including John Does 1, 2 and 3, voluntarily allowed Coinbase to know the information at issue – including their identities and transaction information – in the course of opening accounts and conducting transactions using their accounts.  Coinbase users accordingly have no expectation of privacy in the information and no legally protected right to prevent its transmission to the IRS.  John Does 1, 2 and 3 do not have a unique perspective to offer this Court.  Their motions to intervene should therefore be denied.

### B.    John Does 1, 2 and 3 Should Not be Permitted to Permissively Intervene in this Enforcement Proceeding.

Rule 24(b) allows for permissive intervention; however, John Does 1, 2 and 3 fail here too.  As they acknowledge, in order to be permitted to intervene here they must by timely motion, establish an independent ground for jurisdiction and a common question of law and fact between their claims and the main action.  *See Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 841 (9th Cir. 2011)[4]; Docket No. 10 at 11:26-13:3; Docket No. 19 at 10:4-15.  In addition, Fed. R. Civ. P. 24(b)(3) requires that the Court "consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Again, the United States does not dispute that John Does 1, 2 and 3 have timely

---

[4] Although the Ninth Circuit ultimately concluded in *Freedom from Religion Found.* that "the independent jurisdictional grounds requirement does not apply to proposed intervenors in federal-question cases when the proposed intervenor is not raising new claims," that is not the case here.  644 F.3d at 844.  John Does 1, 2, and 3 are asserting a new claim against the United States– a new cause of action to quash an IRS summons– that requires that they establish an independent jurisdictional ground in order to be permitted to intervene.  Further, unlike the proposed intervenor in *Freedom from Religion Found.* who sought intervention in order to oppose a claim asserted against the government, John Does 1, 2, and 3 are attempting to assert a claim against the government where sovereign immunity issues arise.

Because this Circuit requires that the Does establish an independent jurisdictional ground in order to proceed, the limited intervention permitted in *Sidley* is distinguishable.  There, even though the district court for the Northern District of Illinois permitted intervention, it did so without addressing the requirement for an independent jurisdictional ground (which includes a waiver of sovereign immunity). *See United States v. Sidley Austin Brown & Wood LLP*, No. 03 C 9355, 2004 WL 905930, at *1 (N.D. Ill. Apr. 28, 2004).

1    applied to intervene in this proceeding.  However, the United States has not waived its sovereign

2    immunity for a motion to quash a John Doe summons brought by a member of the John Doe class and

3    therefore John Does 1, 2 and 3 cannot establish the necessary subject matter jurisdiction to permit their

4    intervention.

5           **1.**      **John Doe 1 and John Doe 2 Have Failed to Identify Any Applicable Waiver of Sovereign Immunity.**

6          John Doe 1 and John Doe 2 simply assert "there is no question that this Court has subject matter

7    jurisdiction as Movants are challenging the IRS Summons issued pursuant to this Court's November 30,

8    2016 Order granting the federal government's Petition filed pursuant to 26 U.S.C. § § 7402(a), 7609(f),

9    and 7609(h)."  Docket No. 10 at 13:8-11.  John Doe 3 is similarly conclusory in her inexplicable

10    assertion that subject matter jurisdiction exists because the United States cannot assert sovereign

11    immunity because she is seeking relief other than money damages.  Docket No. 19 at 9:27-10:1.

12    However, to establish subject matter jurisdiction in an action against the United States there must be (1)

13    "statutory authority granting subject matter jurisdiction," and (2) "a waiver of sovereign immunity."

14    *Alvarado v. Table Mountain Rancheria*, 509 F.3d 1008, 1016 (9th Cir. 2007).  As a sovereign, the

15    United States may not be sued except in strict accordance with the terms of a specific and explicit

16    waiver of sovereign immunity granted by Congress, and the terms of the waiver define the court's

17    jurisdiction.  *See United States v. Nordic Village, Inc.*, 503 U.S. 30, 33 (1992); *United States v. Dalm*,

18    494 U.S. 596, 608 (1990); *United States v. Sherwood*, 312 U.S. 584, 586-587 (1941); *Gilbert v.

19    DaGrossa*, 756 F.2d 1455, 1458 (9th Cir. 1985).  Waivers of sovereign immunity "cannot be implied,

20    but must be unequivocally expressed," and are strictly construed in favor of the sovereign.  *Dunn &

21    Black P.S. v. U.S.*, 492 F.3d 1084, 1088 (9th Cir. 2007).  Where the United States has not consented to

22    suit, the court lacks jurisdiction over the subject matter of the action and dismissal is required.  *See*, *e.g.*,

23    *id*.

24          The district court's review of a John Doe summons under Section 7609(f) prior to its issuance

25    operates as a substitute for the review that would take place if a noticee were to file a motion to quash a

26    summons under Section 7609(b).  "In effect, in the John Doe context, the court takes the place of the

27    affected taxpayer under §§ 7609(a) and (b) and exerts a restraining influence on the IRS."  *Tiffany Fine*

28

1    *Arts*, 469 U.S. at 320.  Because the district court acts in this capacity in a Section 7609(f) proceeding,

2    Congress did not see fit to duplicate that proceeding by extending the right to bring a motion to quash to

3    a John Doe; instead, the statute authorizes such a motion to be brought only by a person who is

4    identified in the summons.  I.R.C. § 7609(a)(1), (b)(2)(A); *see also* I.R.C. § 7609(c)(3) (excluding John

5    Doe summonses from petitions to quash).  Similarly, Congress extended an automatic right of

6    intervention in an enforcement proceeding against a summoned party only to a noticee.  I.R.C. §

7    7609(a)(1), (b)(1), (c)(3).  John Does 1, 2 and 3 are not noticees under the statute.

8         In summary, "[t]he mechanism for a taxpayer's challenge to a summons differs according to the

9    statutory provision under which the summons is issued."  *Ritchie*, 15 F.3d at 597 (6th Cir. 1994).  In the

10   case of a John Doe summons, Congress has decided that the mechanism for challenge is the review of

11   the district court prior to the issuance of the summons.  I.R.C. § 7609(f).  If this Court were to allow the

12   Does' intervention here, it would effectively circumvent Congress' decision that the proper authority to

13   review and restrict the IRS's ability to investigate by John Doe summons is vested in the courts alone.

14        Separately, John Does 1, 2 and 3 need to establish Article III standing in order to pursue their

15   cause of action against the government.  *See Perry v. Schwarzenegger*, 630 F.3d 898, 905-06 (9th Cir.

16   2011) (holding that when exercising its "broad discretion" to allow permissive intervention, a court may

17   consider the proposed intervenor's "standing to raise relevant legal issues").  This they cannot do

18   because absent a protectable interest as previously discussed, the Does do not have a legally redressable

19   injury.  And, absent a legally redressable injury, the Court lacks jurisdiction to entertain their arguments.

20   As the Supreme Court explained in *Vermont Agency of Natural Resources v. United States*, 529 U.S.

21   765, 771 (2000), in order to have Article III standing to bring suit in a federal court, a party must

22   demonstrate three things:  (1) "injury in fact," meaning "a harm that is both 'concrete' and 'actual or

23   imminent, not conjectural or hypothetical,'"; (2) "causation - - a 'fairly . . . trace[able] connection

24   between the alleged injury in fact and the alleged conduct"; and (3) "redressability."  "These

25   requirements together constitute the 'irreducible constitutional minimum' of standing."  *Id.*  The burden

26   to prove each element of standing is on the person asserting standing.  *Lujan v. Defenders of Wildlife*,

27   504 U.S. 555, 561 (1992).

28

1    John Does 1, 2 and 3 do not have an injury the law will recognize if their identities and account

2    records are given to the IRS.  The law does not recognize an IRS examination as an injury, nor does it

3    recognize having to pay additional taxes due as an injury.  Since John Does 1, 2 and 3 cannot establish

4    an injury that the law will recognize, they cannot establish Article III standing.[5]

5              **2.    The intervention of John Does 1, 2 and 3 Will Unduly Delay and Prejudice the Adjudication of the Parties' Rights.**

6           John Doe 1 and John Doe 2 assert, without much elaboration, that because they seek to quash the

7    summons they should be permitted to intervene, under a heading that their defenses are relevant to the

8    validity of the Petition.  Docket No. 10 at 13:12-18.  In claimed support for this assertion, they cite to

9    *United States v. Sidley Austin Brown & Wood LLP*, No. 03 C 9355, 2004 WL 816448 (N.D. Ill. April

10   15, 2004), in which a court granted permission for a limited intervention in a John Doe summons

11   "reasoning that 'a dispute regarding the sufficiency of the description of the material to be produced is

12   an appropriate basis for a challenge to a summons in an enforcement proceeding.'"  Docket No. 10 at

13   13:14-18.  John Doe 1 and John Doe 2 also assert that the IRS will suffer no prejudice and there will no

14   undue delay if they are permitted to intervene.  Docket No. 10 at 13-14.  *Sidley* is instructive on both of

15   these arguments.

16          In *Sidley*, the government sought enforcement of a John Doe summons served upon Sidley

17   Austin Brown & Wood to obtain the names of former clients of the firm.  2004 WL 816448 at *1.  A

18   group of former clients moved to intervene, arguing that their identities were protected from disclosure

19   by the attorney-client privilege and therefore they were entitled to intervene as a matter of right.  The

20   court held that the Does did not have a right to intervene under Fed. R. Civ. P. 24(a)(2), finding that the

21   Does identities were not privileged and therefore they did not have a protectable interest at stake in the

22   enforcement action.  2004 WL 816448 at *8.  The court did, however, permit the Does to intervene on

23   one limited area for inquiry – the sufficiency of the description of the material to be produced–

24   reasoning it would not be challenged by the summoned party, would not require discovery or an

25

26

27   _____

[5] The Supreme Court very recently clarified that a party intervening as a matter of right must

28   establish it has Article III standing if the relief the litigant seeks differs from that raised by the parties in the action.  *See Town of Chester, New York v. Laroe Estates, Inc.*, __ S.Ct. __, 2017 WL 2407473 (slip opinion) (2017).  As explained above, John Does 1, 2, and 3 cannot establish Article III standing.

1   evidentiary hearing, would not require that any factual determinations be made, and it could be

2   accomplished without undue delay.  2004 WL 816448 at *10.

3          None of the same can be said for the sweeping relief sought by John Does 1, 2 and 3 if permitted

4   to intervene here.  The Does have made plain their demand for an evidentiary hearing and discovery into

5   the good faith of the IRS.  Docket No. 10 at 24-25; Docket No. 19 at 14-15.  Although the Does title the

6   discovery they seek as "limited," John Doe 1 and John Doe 2 identify seven topics upon which they

7   would conduct discovery and have an evidentiary hearing.  The seven topics include what they charge is

8   the IRS's failure to clarify its virtual currency guidance, the IRS's factual showing and basis for the John

9   Doe summons,[6] IRS resources that may be used to analyze the summoned data, IRS research programs,

10  and other unidentified IRS improper uses of power.  Docket No. 10 at 24-25.  For her part, John Doe 3

11  would like an opportunity to review the IRS's use of artificial intelligence and the related "source code."

12  Docket No. 19 at 15:1-5.  Discovery into this range of topics hardly qualifies as limited, would require

13  multiple witnesses, potentially voluminous document production, and would certainly unduly delay

14  what are supposed to be summary proceedings.

15

16

17

18

19

20

21

22

23

24

25

26

27  _____

[6] The Does would not be entitled to this relief anyway because, as discussed above, they cannot use this enforcement proceeding to challenge the factors under I.R.C. § 7609(f) for issuing a "John Doe" summons or otherwise revisit this Court's prior ruling authorizing service of the John Doe summons.

28

1

**IV.      CONCLUSION**

2      For the foregoing reasons, the Motions to Intervene filed by John Does 1 and 2, and John Doe 3,

3   should be denied.

4      Dated this 5th day of June, 2017.

5                                              DAVID A. HUBBERT
                                               Acting Assistant Attorney General
6

7                                              */s/ Jeremy N. Hendon*
                                               */s/ Amy Matchison*
8                                              JEREMY N. HENDON
                                               AMY MATCHISON
9                                              Trial Attorneys, Tax Division
                                               U.S. Department of Justice
10

11                                             BRIAN J. STRETCH
                                               United States Attorney
12                                             Northern District of California

13                                             */s/ Colin C. Sampson*
                                               COLIN C. SAMPSON
14                                             Assistant United States Attorney, Tax Division

15                                             *Attorneys for United States of America*

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**<u>CERTIFICATE OF SERVICE</u>**

2

IT IS HEREBY CERTIFIED that service of the foregoing has been made this 5th day of June,

3

2017, via the Court's ECF system to all users.

4

5

*/s/ Amy Matchison*
AMY MATCHISON

6

Trial Attorney, Tax Division
U.S. Department of Justice

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28