1  DAVID A. HUBBERT
   Acting Assistant Attorney General
2
   JEREMY N. HENDON (ORBN 982490)
3  AMY MATCHISON (CABN 217022)
   LANDON M. YOST (CABN 267847)
4  Trial Attorneys
   United States Department of Justice, Tax Division
5  P.O. Box 683, Ben Franklin Station
   Washington, D.C. 20044
6  Telephone:     (202) 353-2466
                  (202) 307-6422
7  Fax:           (202) 307-0054
   E-mail: Jeremy.Hendon@usdoj.gov
8          Amy.T.Matchison@usdoj.gov
           Landon.M.Yost@usdoj.gov
9          Western.Taxcivil@usdoj.gov

10 BRIAN J. STRETCH (CABN 163973)
   United States Attorney
11 THOMAS MOORE (ALBN 4305-O78T)
   Chief, Tax Division
12 COLIN C. SAMPSON (CABN 249784)
   Assistant United States Attorney
13 450 Golden Gate Avenue, 11th Floor
   San Francisco, California 94102
14 Telephone: (415) 436-7020
   Email:  Colin.Sampson@usdoj.gov
15
   Attorneys for United States of America

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 3:17-cv-01431-JSC |
| | ) | |
| Petitioner, | ) | **UNITED STATES' RESPONSE TO** |
| | ) | **COINBASE INC.'S OPPOSITION TO** |
| v. | ) | **PETITION TO ENFORCE** |
| | ) | **INTERNAL REVENUE SERVICE** |
| COINBASE, INC., | ) | **SUMMONS** |
| | ) | |
| Respondent. | ) | Courtroom: F (15th Floor) |
| | ) | Judge:     Hon. Jacqueline Scott Corley |

## TABLE OF CONTENTS

I.   Background ................................................................................................................. 1

  A.  The IRS's Investigation of Virtual Currency ..................................................... 1

  B.  The Summons Issued to Coinbase Reflected the IRS's Understanding of Coinbase's Business Based on its Public Representations ................................. 2

  C.  The Summons was Narrowed Based Upon Information Learned from Coinbase After the Summons was Issued ............................................................................ 3

II.  Coinbase Cannot Challenge the Court's Prior Determination ................................. 3

III. The Summons to Coinbase Was Issued for a Legitimate Purpose ........................... 5

  A.  Investigating Whether Coinbase's Users Have Complied with their Tax Obligations is a Legitimate Purpose for a Summons ........................................ 5

    1.  The IRS is conducting an investigation of John Doe taxpayers ................. 6

    2.  IRS evidence of underreporting .................................................................. 6

    3.  Coinbase demonstrates why the IRS investigation is needed .................... 7

  B.  The Summons to Coinbase Was Not Issued for Research or Public Relations Purposes ............... 8

IV.  The Summoned Information is Relevant to the IRS's Investigation ....................... 9

  A.  The Summons to Coinbase is Not Overbroad .................................................. 10

    1.  The summons to Coinbase is nothing like a summons to a bank for all customer records ...... 11

    2.  The IRS can review all the summoned information ................................. 12

    3.  This Court should not adopt a new, and incorrect, standard for the proper scope of a John Doe summons ............................................................................................. 12

  B.  The Summons to Coinbase is Not Unduly Burdensome ................................. 13

V.   Enforcement of the Summons Would Not Be An Abuse of Process ...................... 14

VI.  Coinbase Has Not Met Its Burden Establishing Entitlement to an Evidentiary Hearing ................. 15

VII. Conclusion .............................................................................................................. 15

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Agricultural Asset Management Co., Inc., v. United States*, 688 F.2d 144 (2d Cir. 1982) ........ 5

*David H. Tedder & Assocs. V. United States*, 77 F.3d 1166 (9th Cir. 1996) .......................... 13

*In re All Unknown Employees of Boundary Waters Res. v. United States*, 866 F.2d 1015 (8th Cir. 1989) 5

*In re Tax Liabs. of John Does v. United States*, 866 F.2d 1015 (8th Cir. 1989) ............... 11, 14

*Int'l Bhd of Teamsters v. United States*, 431 U.S. 324 (1977) ............................................ 4

*La Mura v. United States*, 765 F.2d 974 (11th Cir. 1985) ................................................. 5

*Liberty Financial Services v. United States*, 778 F.2d 1390 (9th Cir. 1985) ....................... 14

*Schrader v. Idaho Dep't of Health Welfare*, 768 F.2d 1107 (9th Cir. 1985) ......................... 5

*Slaven v. BP America, Inc.*, 973 F.2d 1468 (9th Cir. 1992) .............................................. 4

*Spell v. United States,* 907 F.2d 36 (4th Cir. 1990) ....................................................... 14

*Sterling Trading, LLC v. United States*, 553 F. Supp.2d 1152 (C.D. Cal. 2008) .................... 8

*Sugarloaf Funding, LLC v. U.S. Dep't of the Treasury*, 584 F.3d 340 (1st Cir. 2009) ........... 11

*Tiffany Fine Arts, Inc. v. United States*, 469 U.S. 310 (1985) .......................................... 9

*United States v. Abrahams*, 905 F.2d 1276, 1282 (9th Cir. 1990) ................................ 11, 14

*United States v. Arthur Young & Co.*, 465 U.S. 805 (1984) ........................................... 5, 9

*United States v. Berney,* 713 F.2d 568 (10th Cir. 1983) ................................................. 14

*United States v. Bisceglia*, 420 U.S. 141 (1975) ............................................................. 5

*United States v. Clarke*, ___ U.S. ___, 134 S.Ct. 2361 (2014) ..................................... 5, 15

*United States v. Cmty. Fed. Sav. & Loan Ass'n*, 661 F.2d 694 (8th Cir. 1981) ................... 11

*United States v. Euge*, 444 U.S. 707 (1980) ................................................................... 6

*United States v. Gilleran*, 992 F.2d 232 (9th Cir. 1993) ................................................... 5

*United States v. Goldman,* 637 F.2d 664 (9th Cir. 1980 ................................................. 13

*United States v. Humble, Oil & Refining Co.*, 488 F.2d 953 (5th Cir. 1974) ........................ 8

*United States v. Judicial Watch*, 371 F.3d 824 (D.C. Cir. 2004) ...................................... 14

*United States v. Linsteadt*, 724 F.2d 480 (5th Cir. 1984) ............................................... 11

| | | |
|---|---|---|
| 1 | *United States v. Luther*, 481 F.2d 429 (9th Cir. 1973) | 14 |
| 2 | *United States v. Morton Salt*, 338 U.S. 632 (1950) | 9 |
| 3 | *United States v. Nat'l Bank of S. D.*, 622 F.2d 365 (8th Cir. 1980) | 11 |
| 4 | *United States v. Powell*, 379 U.S. 48 (1964) | passim |
| 5 | *United States v. Reis,* 765 F.2d 1094 (11th Cir. 1985) | 11 |
| 6 | *United States v. Reprints, Inc.*, No. 78-1537A, 1978 WL 1238 (N.D. Ga. Nov. 18, 1978) | 9 |
| 7 | *United States v. Ruggeiro*, 425 F.2d 1069 (9th Cir. 1973) | 14 |
| 8 | *United States v. Samuels, Kramer and Co.*, 712 F.2d 1342 (9th Cir. 1983) | 5 |
| 9 | *United States v. Southwestern Bank and Trust Co.*, 693 F.2d 994 (10th Cir. 1982) | 14 |
| 10 | *United States v. Stuart*, 489 U.S. 353 (1989) | 15 |
| 11 | *United States v. Stuckey*, 646 F.2d 1369 (9th Cir. 1981) | 8 |
| 12 | *United States, v. First Nat. Bank in Dallas*, 635 F.2d 391 (5th Cir. 1981) | 9 |
| 13 | *Wooden Horse Inv., Inc. v. United States*, 806 F. Supp. 1487 (E.D. Wash. 1992) | 8 |

**FEDERAL STATUTES**

| | | |
|---|---|---|
| 15 | 26 U.S.C. § 6201 | 5, 7, 9 |
| 16 | 26 U.S.C. § 7601 | 5, 7, 8 |
| 17 | 26 U.S.C. § 7602 | 5, 6, 7 |
| 18 | 26 U.S.C. § 7609 | 4, 13 |
| 19 | 26 U.S.C. § 7610 | 14 |

**FEDERAL REGULATIONS**

| | | |
|---|---|---|
| 21 | 26 C.F.R. 301.7610-1 | 14 |
| 22 | 31 C.F.R. § 1010.410 | 13 |
| 23 | 31 C.F.R. § 1022.400 | 13 |

**STATE REGULATIONS**

| | | |
|---|---|---|
| 25 | 23 CRR-NY § 200.12 | 14 |

**OTHER AUTHORITIES**

| | | |
|---|---|---|
| 27 | H.R. Rep. 94-658 | 4 |

The IRS is conducting an investigation to identify U.S. taxpayers who have used virtual currency to determine if they have complied with the internal revenue laws. In furtherance of that investigation, this Court approved the service of a summons to Coinbase. Coinbase has refused to comply with that summons and now opposes enforcement. The United States, however, has established all of the elements required for enforcement of a summons: (1) the summons was issued for the legitimate purpose of conducting an investigation to determine the identity and correct federal income tax liabilities of United States persons who conducted transactions in a convertible virtual currency as that term is defined in IRS Notice 2014-21, for tax years 2013-2015; (2) the information requested may be relevant to the IRS's investigation; (3) the information sought is not within the possession of the IRS; and (4) the IRS followed all administrative steps required by the Internal Revenue Code. Accordingly, the summons directed to Coinbase, as narrowed, should be enforced.

I. **Background**

   A. **The IRS's Investigation of Virtual Currency**

In January 2009, the first bitcoins were mined. Less than four years later, in May 2013, the Government Accountability Office issued a report regarding tax compliance issues relating to virtual currencies. *See* U.S. Gov't Accountability Office Report GAO-13-516, *Virtual Economies and Currencies: Additional IRS Guidance Could Reduce Tax Compliance Risk*. The GAO report found that "some taxpayers may use virtual economies and currencies as a way to evade taxes. Because transactions can be difficult to trace and many virtual economies and currencies offer some level of anonymity, taxpayers may use them to hide taxable income." In March 2014, the IRS released Notice 2014-21, describing that virtual currencies that can be converted into traditional currency are property for tax purposes, and a taxpayer can have a gain or loss on the sale or exchange of a virtual currency, depending on the taxpayer's cost to purchase the virtual currency (that is, the taxpayer's tax basis).

In September 2013 the IRS expanded the scope of the Offshore Compliance Initiatives'(OCI) Electronic Payment Systems Initiative (EPSI) to include convertible virtual currencies. Declaration of Cheryl Kiger (Kiger Decl.), ¶ 4. EPSI was established in 2005 to develop projects, methodologies, and techniques for identifying U.S. taxpayers who use electronic funds transfer and payment systems for tax

avoidance purposes. *Id.* That same month, Senior Revenue Agent David Utzke was hired in OCI. *Id.* In December 2013, the IRS created a Virtual Currency Issue Team and Utzke was assigned to it. *Id.* ¶ 5. In June 2014, the IRS internally approved Coinbase as a potential recipient of a John Doe summons. *Id.* ¶ 8. It was not until a year later, in June 2015, that the Treasury Inspector General for Tax Administration (TIGTA) contacted the IRS. *Id.* ¶ 9. In December 2015, the IRS advised TIGTA that OCI was working towards issuing John Doe summonses to further its virtual currency investigation. *Id.* In May 2016, the IRS referred its recommendation to the Department of Justice that it file *ex parte* petitions seeking court approval for the service of John Does summonses, one of which was for Coinbase. *Id.* ¶ 10.

In late September 2016, TIGTA issued its report on the increased use of virtual currencies and the associated risks of reporting non-compliance in taxable transactions. Treasury Inspector General for Tax Administration Reference Number: 2016-30-083, *As the Use of Virtual Currencies in Taxable Transactions Become More Common, Additional Actions Are Needed to Ensure Taxpayer Compliance* (September 21, 2016).

On November 17, 2016, the United States filed an *ex parte* petition in this Court seeking approval for a John Doe summons to Coinbase. On November 30, 2016, this Court found that the summons to Coinbase related to "the investigation of an ascertainable group or class of persons, that there is a reasonable basis for believing that such group or class of persons has failed or may have failed to comply with any provision of any internal revenue laws, and that the information sought to be obtained from the examination of the records or testimony (and identities of the person with respect to whose liability the summons is issued) are not readily available from other sources." Having received this Court's approval, the IRS issued and served the summons to Coinbase.

### B. The Summons Issued to Coinbase Reflected the IRS's Understanding of Coinbase's Business Based on its Public Representations

By the time the IRS began to investigate the use of virtual currency in September 2013, bitcoin had been on the market for a few years and was gaining mainstream attention. Coinbase emerged as a leading virtual currency exchanger and because of its early entry to the market (June 2012) and success the IRS began to consider it a possible recipient for a John Doe summons. The IRS reviewed Coinbase's

website and publicly available information to develop a greater sense of Coinbase's business. Based on Coinbase's public representations, the IRS believed that Coinbase was offering buy/sell trading functionality in 32 countries, maintaining over 4.9 million wallets with wallet services available in 190 countries, serving 3.2 million customers, with $2.5 billion exchanged in bitcoin. Declaration of David Utzke, Case No. 3:16-cv-06658-JSC, Dkt. 2-4 (First Utzke Decl.), ¶ 39.

By December 2015, Coinbase was the fourth largest exchanger globally of bitcoin and the largest exchanger in the United States. Based on everything the IRS had reviewed, it believed Coinbase had possibly millions of users, who were all heavily engaged in the virtual currency marketplace. With this in mind, the IRS drafted the summons to Coinbase that was approved by this Court.

### C. The Summons was Narrowed Based Upon Information Learned from Coinbase After the Summons was Issued

After the United States filed its *ex parte* petition for approval of the John Doe summons, it contacted Coinbase to notify it of the action taken and to inform it, that although it may be the recipient of a summons, it was not because there was any indication that it had engaged in any wrongdoing. Shortly thereafter, the United States and Coinbase began discussions that continued until recently about resolution of its compliance with the summons absent an enforcement proceeding. It was through these discussions that the United States discovered that the activity levels of Coinbase's users was less vigorous than anticipated. Declaration of David Utzke (Third Utzke Decl.), ¶ 14. Based solely on the discussions the United States had with Coinbase, it decided to narrow the scope of the requests for which it now seeks enforcement. *Id.* ¶ 13

### II. Coinbase Cannot Challenge the Court's Prior Determination

The United States has shown, and this Court properly recognized, that the summons to Coinbase relates to an IRS investigation of U.S. taxpayers who transacted in virtual currency between 2013 through 2015−an ascertainable group of persons. The United States has also shown that the IRS has a reasonable basis to believe that this group of people failed or may have failed to comply with provisions of the internal revenue laws. In meeting the "reasonable basis" prong, the United States explained how transactions in virtual currency can be "of such a nature as to be reasonably suggestive of the possibility that the correct tax liability with respect to that transaction may not have been reported." H.R. Rep. 94-

U.S. RESPONSE TO COINBASE INC.'S OPPOSITION TO PETITION TO ENFORCE
3:17-cv-01431-JSC          3

658.

As described by Utzke, U.S. taxpayers, including Coinbase users, have made use of virtual currencies to avoid the reporting and payment of taxes. *See* First Utzke Decl., ¶¶ 30, 34. Also, based on the IRS's experience, additional factors indicate the likelihood of tax non-compliance involving virtual currency, including a lack of third-party information reporting; relative anonymity of the transactions; a public perception that tax evasion is possible with virtual currency; and a failure among virtual currency users to give their virtual currency transactions the proper tax treatment, including the proper valuation of such transactions. *Id.* ¶ 29. Finally, there is no dispute that the only entities possessing information relating to virtual currency transactions that identify the persons involved in the transactions, and hold material relating to the transactions, are the exchangers and any intermediaries. Therefore, the IRS can only summon a party known to have some role in the transactions, here Coinbase.

The IRS could only serve a John Doe summons on Coinbase after an *ex parte* proceeding in which it demonstrated to this Court that the three requirements of § 7909(f) were met. 26 U.S.C. § 7609(h). The United States made the requisite showing and this Court properly found that the summons to Coinbase relates to the investigation of an ascertainable group or class, that there is a reasonable basis for believing that U.S. persons who conducted such transactions failed or may have failed to report income to the IRS, and that the information sought is not readily available to the IRS from other sources. Now confronted with Coinbase's refusal to comply with the summons, the United States has instituted this enforcement proceeding to compel the records it seeks. But, the showing the United States made to gain approval to serve the summons is wholly different from the showing it must make for enforcement of the summons. Furthermore, Coinbase cannot challenge any of the determinations this Court made in approving service of the summons.[1] *United States v. Samuels,*

---

[1] Coinbase relies on a letter from Senator Orrin Hatch and Representatives Kevin Brady and Vern Buchanan (CB Brief at 6) that calls into question this Court's finding that there is a reasonable basis for believing that the Coinbase John Does have failed or may have failed to comply with any provision of any internal revenue laws. The Congressmen also offer that, based on undisclosed information from undisclosed sources, they find the summons directed to Coinbase to be overly broad. These views are not authority. *E.g., Int'l Bhd of Teamsters v. United States*, 431 U.S. 324, 354 & n.39 (1977) ("[t]he views of a later Congress . . . are entitled to little if any weight. It is the intent of the Congress that enacted [the statute at issue] that controls."); *Slaven v. BP America, Inc.*, 973 F.2d 1468, 1475 (9th Cir. 1992) ("It is well settled that the views of a later Congress regarding the legislative intent of a previous Congress do not deserve much weight.") (quoting *Schrader v. Idaho Dep't of Health*

*Kramer and Co.*, 712 F.2d 1342, 1346 (9th Cir. 1983) ("the three factual determinations that a district court must make under section 7609(f) before issuing its ex parte authorization of a John Doe summons may not be challenged."); *In re All Unknown Employees of Boundary Waters Res. v. United States*, 866 F.2d 1015, 1018 (8th Cir. 1989); *Agricultural Asset Management Co., Inc., v. United States*, 688 F.2d 144, 148-49 (2d Cir. 1982). Even so, this is exactly what Coinbase is doing in opposition to enforcement of the summons. Coinbase has intertwined its objections relating to this Court's approval of the service of the summons with the legal test for enforcement. This it cannot do.

### III. The Summons to Coinbase Was Issued for a Legitimate Purpose

In order to show that a summons is valid and proper, the United States must establish that the summons: (1) was issued for a legitimate purpose; (2) seeks information relevant to that purpose; (3) seeks information that is not already within the IRS's possession; and (4) satisfies all administrative steps required by the United States Code. *See United States v. Powell*, 379 U.S. 48, 57-58 (1964). Courts have held that the government's burden of satisfying the *Powell* requirements is a "slight one" that can be met "merely by presenting the sworn affidavit of the agent who issued the summons attesting to these facts." *La Mura v. United States*, 765 F.2d 974, 979 (11th Cir. 1985); *see also United States v. Gilleran*, 992 F.2d 232, 233 (9th Cir. 1993).

#### A. Investigating Whether Coinbase's Users Have Complied with their Tax Obligations is a Legitimate Purpose for a Summons

The United States has a system of taxation that relies on the good faith and integrity of each taxpayer to disclose completely and honestly all information relevant to their tax liability. *See United States v. Clarke*, ___ U.S. ___, 134 S.Ct. 2361, 2365 (2014); *United States v. Arthur Young & Co.*, 465 U.S. 805, 815-16 (1984). "Nonetheless, it would be naive to ignore the reality that some persons attempt to outwit the system." *United States v. Bisceglia*, 420 U.S. 141, 145 (1975). Accordingly, Congress has conferred upon the IRS the duty to make inquiries, determinations, and assessments of all taxes, and has correspondingly given it expansive information gathering authority, including the power to compel disclosure, for that purpose. 26 U.S.C. §§ 6201(a), 7601(a), 7602. The summons power granted to the

---

*Welfare*, 768 F.2d 1107, 1114 (9th Cir. 1985)). This letter is evidence only of a successful lobbying campaign and not of legislative history or intent. It is not relevant and it should be disregarded in its entirety.

IRS under § 7602 is the centerpiece of that authority. That power is broad, and is designed to enable the IRS to conduct effective tax investigations. *See Arthur Young & Co.*, 465 U.S. at 816. That statute authorizes the IRS to examine records, issue summonses, and take testimony for the purpose of "ascertaining the correctness of any return," "making a return where none has been made," "determining the liability of any person for any internal revenue tax," or "inquiring into any offense connected with the administration or enforcement of the internal revenue laws." 26 U.S.C. § 7602(a), (b); *see United States v. Euge*, 444 U.S. 707, 710-11 (1980).

### 1. The IRS is conducting an investigation of John Doe taxpayers

Coinbase acknowledges the IRS's statutory duties but nonetheless questions whether the summons directed to it serves a "legitimate investigative purpose." CB Brief at 10:15-24. At base, its question seems to be whether the IRS is even conducting an investigation at all, despite this Court's determination and the sworn testimony of Utzke. Indeed, Coinbase questions the competency of Utzke's testimony based on the IRS group he is assigned to, the "conclusory nature" of his statement that the IRS is conducting an investigation (to which he is assigned), and the IRS search of the Modernized Tax Return Data Base (MTRDB). CB Brief at 4-5. The IRS expanded the responsibilities of OCI to virtual currency. Kiger Decl., ¶ 4. There is no negative inference to be drawn from Utzke's assignment to OCI. Coinbase's suggestion otherwise is attributable to its ignorance of IRS structure and an emphasis on form over substance. As for the reality of the investigation, again, Utzke has offered testimony under oath that there is in fact an IRS investigation to which he is assigned. Declaration of David Utzke, Dkt. 3 (Second Utzke Decl.), ¶ 2. To the contrary, Coinbase has only offered self-serving speculation and argument.

### 2. IRS evidence of underreporting

Coinbase attacks the IRS's search of the MTRDB and criticizes Utzke for both offering no analysis of the MTRDB data and at the same time for offering analysis that is "fundamentally flawed." CB Brief at 13: 1-3. Specifically Coinbase complains that the MTRDB data is limited to electronic returns and that Utzke did not reveal the IRS's search terms. As to its first complaint, Coinbase is correct; the searchable data available to the IRS in the MTRDB is derived from only electronically filed

returns. However, electronically filed returns represent 83-84% of the returns filed during the summoned years. This is not an insignificant sample size.

The United States has offered evidence that, based upon the information available to the IRS there appears to be a reporting gap between the number of virtual currency users Coinbase claims to have had during the summons period (500,000) and U.S. bitcoin users reporting gains or losses to the IRS during the summoned years (807, 893, and 802). Second Utzke Decl., ¶¶ 11-13. Both the information known to the IRS about electronic filers and the claim made by Coinbase about the potentially different behavior of paper filers (CB Brief at 13: 17-19) demonstrates the legitimacy of the IRS's investigation. The IRS must ascertain if U.S. taxpayers are correctly filing returns, filing returns at all, or self-reporting their proper tax liability. This is why the IRS is investigating virtual currency users. This is why the IRS issued the summons to Coinbase. This is why the IRS is seeking to compel Coinbase to comply with its summons. The IRS is fulfilling its statutory mandate. *See* 26 U.S.C. §§ 6201(a), 7601(a), 7602.

As to Coinbase's second complaint, it is also correct that the IRS did not reveal the terms used to search the MTRDB. Where Coinbase is wrong is in casting this omission as some statement on the integrity of the IRS's search. The IRS searched the MTRDB database using variants of bitcoin, bit coin, btc, and xbt. Third Utzke Decl. ¶ 7. The IRS selected these terms because they are the most likely to identify reporting of bitcoin related transactions and Coinbase did not execute transactions in any other virtual currencies during the summons period. *Id.*

### 3. Coinbase demonstrates why the IRS investigation is needed

Coinbase also criticizes Utzke's testimony as inaccurate because he states that "[c]apital gain or loss for property transactions (which gains and losses from virtual currency are considered) are reported on Form 8949, which is attached to Schedule D of a Form 1040." Second Utzke Decl., ¶ 11. Coinbase counters with several examples[2] of other ways that a taxpayer may report their virtual currency

---

[2] Coinbase posits as an example a taxpayer who receives wages in bitcoin or an independent contractor who received bitcoin as payment and reports these amounts on lines 7 and 12 of their Form 1040. CB Brief at 13: 5-8. However, taxpayers receiving virtual currency as wages or other income would need to sell or exchange the bitcoin to pay for goods and services. Therefore, a corresponding tax return entry should reflect such sale or exchange, which would be reported on Form 8949.

transactions. CB Brief at 13. But the fact that taxpayers may be failing to *properly* report and fully account for their virtual currency transactions does not make Utzke's testimony not credible; rather, it demonstrates the legitimacy of the IRS's investigation. Again, the IRS is charged with "ascertaining the correctness of any return." 26 U.S.C. § 7601. If, as Coinbase asserts, taxpayers are wrongly reporting their virtual currency transactions, it is the IRS's duty to discover those errors and correct them.[3]

### B. The Summons to Coinbase Was Not Issued for Research or Public Relations Purposes

Coinbase chastises the United States for its press release wherein it acknowledged that a John Doe summons serves an educational purpose as well as being an important enforcement tool. CB Brief at 11: 6-11. Coinbase ties this alleged impropriety with an admonition that the IRS cannot use its summons power for research purposes.[4] CB Brief at 10:24-11: 5. However, the IRS sought and issued the summons to Coinbase because it suspects there is a tax compliance problem with U.S. taxpayers using virtual currency and it is duty-bound to investigate issues of tax non-compliance−not for research or any public relations purpose. Nevertheless, the summons is not made unenforceable because the IRS will benefit from the additional educational aspect of the summons and any research it may yield. *See United States v. Stuckey*, 646 F.2d 1369, 1375 (9th Cir. 1981); *see also Sterling Trading, LLC v. United States*, 553 F. Supp.2d 1152, 1158 (C.D. Cal. 2008) (taxpayer must show "no legitimate purpose"); *Wooden Horse Inv., Inc. v. United States*, 806 F. Supp. 1487, 1491-92 (E.D. Wash. 1992).

Coinbase's cites to *United States v. Humble, Oil & Refining Co.*, 488 F.2d 953, 962-63 (5th Cir. 1974), but *Humble* is distinguishable. In that case, which was decided prior to the enactment of § 7609(f), the court denied enforcement of a summons that the IRS admitted was issued *solely* for the collection of data for research purposes and not part of any particular investigation. *Humble,* 488 F.2d at

---

[3] Coinbase also points out that the relative low volume of reporting may be caused by a lack of gain on the part of virtual currency users. CB Brief at 14. There is no *de minimus* exception for virtual currency transactions; thus even such transactions with small gains must be reported. In addition, Coinbase's theory on the low volume of reporting is based on an assumption that the bitcoins sold during the summons period were also bought during the summons period, a time of general decline in value in the market. Moreover, because the price fluctuated over the summons period, it cannot be fairly assumed that only losses were likely.

[4] Coinbase has also alleged that the IRS issued the summons to deflect criticism or solve policy failings. As the relevant timeline makes clear, the summons was not issued in response to the TIGTA report or Congressional criticism.

956.[5] That is not the case here, as all the evidence in the record is consistent with the determination already made by this Court that the IRS is conducting an investigation into U.S. taxpayers who may have failed to report their income to the IRS. The IRS is not seeking enforcement of the summons solely to further a research project or any public relations purpose. Rather, the IRS seeks the summoned information to do exactly what Congress authorized and charged it to do: make an accurate determination of tax liability for U.S. persons who transact in virtual currency. *See* 26 U.S.C. § 6201(a).

**IV.     The Summoned Information is Relevant to the IRS's Investigation**

The United States must establish that the information it seeks is relevant to the IRS's investigation of U.S. taxpayers who transacted in virtual currency between 2013 through 2015. Section 7602 authorizes the IRS to examine "any books, papers, records, or other data which may be relevant or material." In *Arthur Young & Co.*, 465 U.S. at 814, the Court stated that the language "may be" reflects Congress's express intention to allow the IRS to obtain "items of even *potential* relevance to an ongoing investigation, without reference to its admissibility." The IRS need not show that the "documents it seeks are actually relevant in any technical, evidentiary sense." *Id.* In *Powell*, the Supreme Court noted that the IRS can issue a summons to investigate "'merely on suspicion that the law is being violated, or even just because it wants assurance that it is not.'" 379 U.S. at 57 (quoting *United States v. Morton Salt*, 338 U.S. 632, 642-43 (1950)). Thus, in applying the *Powell* test, the question is not whether the records sought, when disclosed, will contradict a taxpayer's return, but whether the records "might" throw light upon the correctness of a return. *Arthur Young*, 465 U.S. at 814-15 & n.11. The IRS need not accept the word of the summoned party that records are not relevant.[6] It is entitled to determine that fact for itself. *See Tiffany Fine Arts, Inc. v. United States*, 469 U.S. 310, 323 (1985).

---

[5] Further, as later explained by the Fifth Circuit, the decision in *Humble* should be read to mean that the IRS can summon information that may be used for research purposes if it would also aid in the investigation of unknown taxpayers where there is an ongoing investigation. *United States, v. First Nat. Bank in Dallas*, 635 F.2d 391, 395-96 (5th Cir. 1981). *Accord United States v. Reprints, Inc.*, No. 78-1537A, 1978 WL 1238, at *2 (N.D. Ga. Nov. 18, 1978).

[6] Coinbase offers that all the IRS needs for its investigation is a "spreadsheet identifying each account holder (by name, address, and social security number) and the dollar value of transactions in each account (broken down by year, and perhaps further broken down by the value of sales, purchases, send transactions, and receive transactions in each year)." CB Brief at 19: 1-5. Coinbase's suggested spreadsheet lacks additional information the IRS needs to further its investigation. Further, contrary to Coinbase's apparent working assumption, the IRS is not limited to seeking just names and basic identifying information when it issues a John Doe summons.

Coinbase challenges whether the summoned information is relevant to the IRS's investigation. It doubts that the IRS has a realistic expectation that anything will be discovered if it is ordered to produce the information sought. CB Brief at 15. Indeed, the IRS does not have some idle hope that the revelation of the identities and transaction activity of 14,355 Coinbase users will lead to information that may throw light on the correctness of filed returns. It is sure of it. Armed with the identity of a Coinbase user and their transaction activity the IRS can determine if that user filed a tax return that correctly reflected any bitcoin related gain or loss during the summoned period.[7] Second Utzke at 7-9. Once the IRS is in possession of the "know your customer" information, it will be able to confirm the identity of any Coinbase user. *Id.* Third-party access documents allow the IRS to know if individuals other than the named user of the account were able to transact using that account, possibly revealing taxable events attributable to different taxpayers. *Id.* Transaction logs and counter-party information will reveal to the IRS the actual account activity for each user under investigation and can be used to calculate gain or loss. *Id.* The communications between Coinbase and its users regarding account openings, closings, and transaction activity may reveal information related to how many bitcoin an account was opened or closed with, which may also assist in determining value, and other circumstances surrounding account creation or termination. *Id.* Likewise, any communication about transaction activity may reveal further information about the value of the transactions and the parties thereto. *Id.* All of this information is plainly relevant to the IRS's investigation of U.S. taxpayers who transacted in virtual currency.

### A. The Summons to Coinbase is Not Overbroad

Coinbase argues that, because the summons would call for the production of more than 8.9 million transaction records and other information from 14,355 accounts, it is overbroad and therefore unenforceable.[8] CB Brief at 15. However, in testing for overbreadth, the question is not whether the

---

[7] Coinbase contends that the IRS does not need both a user's wallet addresses and public keys because "generally" Coinbase uses addresses and not public keys. CB Brief at 19: 7-18. For those transactions in which the user did not have access to the public key, but only the address, Coinbase need not produce the public keys associated with such activity.

[8] Without citation, Coinbase states that the United States conceded that its original summons was overbroad. CB Brief at 14:21-22. The United States has never made any such concession. The United States has narrowed the requests for which it seeks enforcement (which is not unusual in a summons case) based on what it has learned from Coinbase about its users. If Coinbase's user's activity had been as robust as the IRS believed it to be when it issued the summons, the United States would not have narrowed its enforcement request.

summons calls for the production of a large volume of records. Instead, the questions are rather, first did the summons describe the requested documents in enough detail to inform the summoned party of exactly what is to be produced, *United States v. Abrahams*, 905 F.2d 1276, 1282, 1285 (9th Cir. 1990) (*overruled on other grounds by United States v. Jose*, 131 F.3d 1325, 1329 (9th Cir. 1997), and, second, may the summoned records be relevant to the inquiry. *In re Tax Liabs. of John Does v. United States*, 866 F.2d 1015, 1021 (8th Cir. 1989). Summonses that are definite in nature and finite in scope, and that request only information that may be relevant to the IRS's inquiry, consistently have been enforced against challenges for overbreadth. *See, e.g., Sugarloaf Funding, LLC v. U.S. Dep't of the Treasury*, 584 F.3d 340, 348 (1st Cir. 2009); *United States v. Reis,* 765 F.2d 1094, 1096 n.2 (11th Cir. 1985); *United States v. Linsteadt*, 724 F.2d 480, 483 n.1 (5th Cir. 1984); *United States v. Cmty. Fed. Sav. & Loan Ass'n*, 661 F.2d 694 (8th Cir. 1981); *United States v. Nat'l Bank of S. D.*, 622 F.2d 365 (8th Cir. 1980). Here, there is no dispute that the summoned documents have been identified sufficiently for Coinbase's production. Further, the documents sought are all relevant to the IRS's investigation. Accordingly, the summons is not overbroad and should be enforced.

### 1. The summons to Coinbase is nothing like a summons to a bank for all customer records

At the core of Coinbase's arguments in opposition to enforcement is the question of whether the IRS could use its statutory John Doe summons power to issue a summons to a bank for every single customer account record. The implication being that the IRS summons is similarly broad and unprecedented. Coinbase goes so far as to posit that enforcement of the summons here will lead to future overreach by the IRS, including "a John Doe summons seeking all bank records for three years for any U.S. person who used an ATM during that period." CB Brief at 12:8-10. This horribilizing fails to recognize that there is no taxable event when cash is withdrawn from an ATM. There is no taxable event when that cash is used later to buy something. However, if these types of transactions occur using bitcoin instead of cash, they are taxable events. Bitcoin is property. So, if an ATM dispenses cash for bitcoin, the user has a taxable event at the withdrawal of the cash from the ATM based upon the value of the bitcoin when acquired compared to when the cash is withdrawn. And, if instead of exchanging bitcoin for cash at an ATM, the user simply purchases something with bitcoin, the completion of the sale

is also a taxable event. By law, there is no third party reporting of those events to the IRS, but these taxable events should be self-reported.[9] Whether or not the taxpayer intends to evade the payment of tax is beside the point; all U.S. persons must comply with internal revenue laws. This is why the United States is seeking enforcement of the summons to Coinbase.

### 2. The IRS can review all the summoned information

Coinbase also argues that, because the IRS cannot audit all 14,355 of its users, the summons is overbroad; urging this Court to find that if the IRS cannot examine all 14,355 users then it should not be permitted to examine even one. CB Brief at 18: 7-14. Missing from Coinbase's argument is any authority that supports its novel proposition that a John Doe summons is unenforceable unless it results in an examination of every single person identified. Indeed, the United States is not aware of any such authority. Additionally, even if the IRS does not initiate an examination for each of the 14,355 Coinbase users, it does intend to review and use the summoned information in a very specific ways. To evaluate tax compliance the IRS intends to conduct risk assessments for each of the 14,355 users based on the information received from Coinbase coupled with the filing information in its possession. Kiger Decl., ¶ 14. The assessment of potential tax non-compliance will determine the appropriate compliance response, which could include an examination of the taxpayer, issuance of a letter to the taxpayer requesting corrected returns, issuance of an education letter outlining reporting requirements, or no action if the transactions were properly reported. *Id.*

### 3. This Court should not adopt a new, and incorrect, standard for the proper scope of a John Doe summons

Coinbase argues that the summons is overbroad and unenforceable because it has not been narrowed to capture only those U.S. taxpayers "with some indicia of wrongdoing." CB Brief at 18: 21. This argument suggests that specific intent is required before the IRS can investigate taxpayers for non-

---

[9]In this context, there is no equivalency between a bank account and a Coinbase account. For example, banks are required to provide the IRS with third party reporting of interest income. Moreover, to the extent U.S. persons use their bank accounts for the deposit of their paychecks, the IRS will also receive that information (Form W-2). If a taxpayer had an investment account at a financial institution, the gains on that account are subject to IRS reporting requirements. On the other hand, Coinbase is not required to report anything similar to the IRS.

compliance. CB Brief at 16-17. Coinbase cites not authority for that proposition.[10] The internal revenue laws do not require any showing of *mens rea* before the IRS can properly investigate by summons. Instead, § 7609(f) requires only that there be a reasonable basis for believing that the John Does "may have failed to comply with any provision of any internal revenue law." A failure to properly report gain on a transaction conducted with virtual currency would be a failure to comply with an internal revenue law, regardless of whether that failure was due to a lack of knowledge or motivated by some wrongdoing. It is well established that the IRS need not have probable cause to examine the correctness of returns or the correct liabilities of any taxpayer. *Powell*, 379 U.S. at 48. The law does not restrict the IRS to investigating wrongdoing. This Court should refuse Coinbase's call to invent such a requirement.

### B. The Summons to Coinbase is Not Unduly Burdensome

Coinbase objects to enforcement of the summons based on the volume of material it would have to produce−that is, compliance with the summons is allegedly too costly and difficult.[11] However, it is well established that enforcement of a summons seeking relevant records will not be denied merely

---

[10] Coinbase cites to *United States v. Goldman,* 637 F.2d 664 (9th Cir. 1980) and *David H. Tedder & Assocs. V. United States*, 77 F.3d 1166 (9th Cir. 1996)*,* suggesting a John Doe summons for customer names is only properly used in investigations of large cash deposits, abusive tax shelters, or when offshore banking/credit cards are involved. CB Brief at 22:8-12. First, neither case involved a John Doe summons. Accordingly, nothing in either case limits the IRS use of a John Doe summons to these categories of cases. Further, nothing in § 7609(f) limits the IRS use of a John Doe summons to these categories of cases. Indeed, the IRS has properly issued, served, and received material from summonses related to a much wider swath of subject matters than Coinbase contemplates. Furthermore, the question in *Goldman* was about the relevance of tax year information beyond the scope of the years under exam and the question in *Tedder* was whether an attorney's client names were relevant to the examination of the attorney's own tax liabilities. Here, the IRS seeks records only for the years under investigation and for users' names only in order to determine their own individual liabilities.

[11] Coinbase describes the difficulty of compliance with the summons given how it has set up its systems for recordkeeping. CB Brief at 19-20. However, under the FinCEN regulations, Coinbase is required to obtain and retain many of the summoned records. *See* 31 C.F.R. § 1010.410(e)(1)(i) and § 1022.400. Additionally, under the FinCEN regulations, Coinbase must be able to retrieve the records it is required to keep ("have the information readily available"). FIN-2016-G001 (Mar. 11, 2016). Failure by Coinbase to obtain, retain, and retrieve required records could subject it and its employees to civil and criminal penalties. Furthermore, many of the states in which Coinbase operates have their own regulations that require it to keep and produce many of the summoned records. For example, in New York, Coinbase is required to make and maintain (for seven years) books and records that reflect for each transaction: the amount, dates, time, names, account numbers and physical address of the parties. 23 CRR-NY § 200.12. It must also create and maintain general ledgers, statements, and records demonstrating compliance with applicable state and federal anti-money laundering laws (including customers identification and verification documents, records linking customers to their respective accounts and balances), and communications. *Id.* All of these records must be kept in a manner that allows New York authorities to determine compliance with the law. *Id.*

because the summons seeks production of (or a search through) a great many records or will result in significant expenditure of the recordkeeper's time and money. *See, e.g.*, *United States v. Abrahams*, 905 F.2d at 1285-86; *United States v. Luther*, 481 F.2d 429, 432-33 (9th Cir. 1973) (the fact that the summoned records were extensive was not material to whether or not the summons should be enforced); *United States v. Ruggeiro*, 425 F.2d 1069, 1070-71 (9th Cir. 1973) (summons for "voluminous" records enforced over objections of breadth and oppression); *United States v. Judicial Watch*, 371 F.3d 824, 832 (D.C. Cir. 2004); *Spell v. United States,* 907 F.2d 36, 39 (4th Cir. 1990); *In re Tax Liabs. of John Does*, 866 F.2d at 1021 (rejecting employer's claim that the cost of compliance with summons seeking payroll records was out of proportion to any revenue the IRS might obtain); *United States v. Berney,* 713 F.2d 568, 571-72 (10th Cir. 1983); *United States v. Southwestern Bank & Trust Co.*, 693 F.2d 994, 996 (10th Cir. 1982) (reversing district court's refusal to enforce fully a summons requiring review of 10 million documents). Moreover, there is a general duty on the part of third party record keepers to respond to an IRS summons and to bear some of the burden of doing so. *See In re Tax Liabs. of John Does*, 866 F.2d at 1022; *United States v. Southwestern Bank and Trust Co.*, 693 F.2d 994, 996 (10th Cir. 1982).

The production of 8.9 million transaction records is not out of line with what the IRS receives, or expects to receive, when it issues a John Doe summons. The same can be said for the production of 14,355 accounts. Kiger Decl., ¶¶ 38-39. Moreover, Coinbase's cost estimate can be offset by reimbursement or other IRS assistance. *See* 26 U.S.C. § 7610; 26 C.F.R. 301.7610-1.

**V.    Enforcement of the Summons Would Not Be An Abuse of Process**

An abuse of process occurs "if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation." *Powell,* 379 U.S. at 58. To meet this burden, the "taxpayer must allege specific facts and evidence to support his allegations." *Liberty Financial Services v. United States*, 778 F.2d 1390, 1392 (9th Cir. 1985). For the foregoing reasons and as discussed in the Response to Intervenor John Doe 4, enforcement of the summons to Coinbase would not be an abuse of process.

## VI. Coinbase Has Not Met Its Burden Establishing Entitlement to an Evidentiary Hearing

"[S]ummons enforcement proceedings are to be 'summary in nature.'" *Clarke*, 134 S. Ct. at 2367 (*quoting United States v. Stuart*, 489 U.S. 353, 369 (1989)). "[C]ourts may ask only whether the IRS issued a summons in good faith, and must eschew any broader role of 'oversee[ing] the [IRS's] determinations to investigate." *Id*. (*quoting Powell*, 379 U.S. at 56). Accordingly, an evidentiary hearing is not automatically or normally held. For the foregoing reasons, and as discussed in the Response to Intervenor John Doe 4, Coinbase is not entitled to an evidentiary hearing in this matter.

## VII. Conclusion

For the foregoing reasons, the United States' Petition to Enforce Internal Revenue Service Summons should be granted and the summons requests, as narrowed, should be enforced.

Dated this 1st day of September, 2017.

        DAVID A. HUBBERT
        Acting Assistant Attorney General

        */s/ Jeremy N. Hendon*
        */s/ Amy Matchison*
        */s/ Landon M. Yost*
        JEREMY N. HENDON
        AMY MATCHISON
        LANDON M. YOST
        Trial Attorneys, Tax Division
        U.S. Department of Justice

        BRIAN J. STRETCH
        United States Attorney
        Northern District of California

        */s/ Colin C. Sampson*
        COLIN C. SAMPSON
        Assistant United States Attorney, Tax Division

        *Attorneys for United States of America*

# CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that service of the foregoing has been made this 1st day of September, 2017, via the Court's ECF system to all users.

*/s/ Amy Matchison*
AMY MATCHISON
Trial Attorney, Tax Division
U.S. Department of Justice