UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO

HONORABLE JACQUELINE SCOTT CORLEY, U.S. MAGISTRATE JUDGE

– – –

UNITED STATES OF AMERICA,                    )
                                             )
                        PETITIONER,          )    Case No.
                                             )
            vs.                              ) 3:17–cv–01431–JSC
                                             )
COINBASE, INC.,                              )
                                             )
                        RESPONDENT.          )
_____ )

*TRANSCRIPT OF THE OFFICIAL*
*ELECTRONIC SOUND RECORDING 2:18 P.M. – 3:22 P.M.*
*MOTION TO ENFORCE IRS SUMMONS*
*NOVEMBER 9, 2017*
*SAN FRANCISCO, CALIFORNIA*

*APPEARANCES:*

*FOR THE PETITIONER:*     DEPARTMENT OF JUSTICE – TAX DIVISION
                          BY:  Amy T. Matchison, Trial Attorney
                          Ben Franklin Station
                          Washington, DC 20044
                          202.307.6422   Fax:  202.307.0054

                          U.S. DEPARTMENT OF JUSTICE
                          United States Attorney's
                          Northern District of California
                          Tax Division
                          BY:  Colin C. Sampson, AUSA
                          450 Golden Gate Avenue
                          San Francisco, California 94102
                          415.436.7020   Fax:  415.436.7009

            (APPEARANCES CONTINUED ON PAGE 2)

TRANSCRIBED BY:        VICTORIA L. VALINE, CSR 3036, RMR, CRR
                       VictoriaValineCSR@gmail.com

UNITED STATES DISTRICT COURT

APPEARANCES:   (CONTINUED)


FOR THE PETITIONER
(Continued):              Department of Justice Tax Division
                          Civil Western
                          BY:  Landon M. Yost, Esq.
                          555 4th Street NW
                          Washington, DC 20001
                          202.307.2144

FOR THE INTERVENORS
JOHN DOE 1 AND
JOHN DOE 2:               BERNS WEISS, LLP
                          Attorneys at Law
                          BY:  Lee A. Weiss, Esq.
                          585 Stewart Avenue, Suite L-20
                          Garden City, New York 11530
                          516.222.2900   Fax:  818.999.1500


FOR THE INTERVENOR
JOHN DOE 4:               BERNS WEISS, LLP
                          Attorneys at Law
                          BY:  Lee A. Weiss, Esq.
                          585 Stewart Avenue, Suite L-20
                          Garden City, New York 11530
                          516.222.2900   Fax:  818.999.1500

FOR THE RESPONDENT:       GOODWIN, PROCTER LLP
                          Attorneys at Law
                          BY:  Grant P. Fondo, Esq.
                          135 Commonwealth Drive
                          Menlo Park, California 94025-1105
                          650.752.3100   Fax:  650.853.1038

APPEARANCES:   (CONTINUED)


FOR THE RESPONDENT:      GOODWIN, PROCTER LLP
                         Attorneys at Law
                         BY:  Steven A. Ellis, Esq.
                         601 S Figueroa Street, 41st Floor
                         Los Angeles, California 90017-5704
                         213.426.2500


                         GOODWIN PROCTER LLP
                         Attorneys at Law
                         BY:  Juan A. Suarez, Esq.
                         601 S. Figueroa Street, Suite 4100
                         Los Angeles, California 90017
                         213.426.2500


                         LAW OFFICES OF MICHAEL T. LEMPRES
                         Attorney at Law
                         BY:  Michael T. Lempres, Esq.
                         71 Walnut Avenue
                         Atherton, California 94027
                         650.690.6661

SAN FRANCISCO, CALIFORNIA; NOVEMBER 9, 2017

3:22 P.M.

--o0o--

(TRANSCRIBER'S NOTE:  Due at times to counsels' failure to identify themselves when speaking, certain speaker attributions are based on educated guess.)

--o0o--

THE CLERK:  Calling civil action C-17-1431, United States versus Coinbase, Inc.

MR. FONDO:  Good afternoon, your Honor.  Grant Fondo for Coinbase.

THE COURT:  Good afternoon.

MR. LEMPRES:  And your Honor, Mike Lempres (inaudible) legal office of Coinbase.

THE COURT:  Good afternoon.

MR. ELLIS:  Good afternoon, your Honor.  Steven Ellis, Goodwin, Procter for Coinbase.

MR. SUAREZ:  Good afternoon, your Honor.  Juan Suarez VP of Legal for Coinbase.

MR. WEISS:  Good afternoon, your Honor.  Lee Weiss for Intervenor John Doe Number 4.

THE COURT:  Number 4.  Good afternoon.

MS. MATCHISON:  Good afternoon, your Honor.  Amy Matchison for the United States.

THE COURT:  Good afternoon.

           MS. MATCHISON:  And with me here is Collin Sampson and

Landon Yost as well.

           THE COURT:  Good afternoon.

      Okay.  So now we're here, all the intervenors have been

allowed and everything.  And so now we're here on the IRS's

enforcement petition.

           MS. MATCHISON:  Yes, your Honor.

           THE COURT:  And so let's start with the requirement

that it be for a legitimate purpose, which, as we know, the

Ninth Circuit has said is a minimal showing, right, here, and I

guess I don't understand why -- why wanting to figure out if

people who transact in bitcoin investments are paying their

taxes on their gains, why that's not a legitimate purpose of

the IRS.

           MR. FONDO:  Your Honor, a couple of points if I could,

your Honor.

      First of all, I think that it is not legitimate in the

scope and the manner in which this petition has been done.

           THE COURT:  Well, I think the breadth of it is a

different matter, and that probably goes more to relevance of

what's being sought, but I think the legitimate purpose is

really that, is it illegitimate?

      Is there an improper purpose?

           MR. FONDO:  Yes.

           THE COURT:  Is there bad faith?  Really --

1      MR. FONDO:  Yes.

2      THE COURT:  -- so to speak.  So --

3      MR. FONDO:  And your Honor, I wouldn't say there's bad

4  faith in the context that IRS is up to no good, essentially, or

5  lying, or cheating, or anything of that sense, but we do

6  think -- and this probably goes more to the relevancy issue and

7  also the abuse of process issue, which I'll get to, but we do

8  think in that context this Court's process has been abused, but

9  I'll table that for a second and direct it.

10     I think under this decision such as in the *Humble* and in

11  the matter regarding the tier oil leases -- the tier oil

12  leases, those cases kind of address what we have here, which we

13  have a situation where there is nothing that the declarations

14  and the evidence that's submitted has indicated that these

15  users that are being identified at Coinbase have done anything

16  wrong or otherwise not complying with their various

17  obligations.

18     THE COURT:  But there doesn't have to be probable

19  cause.

20     MR. FONDO:  Correct.

21     THE COURT:  Right?

22     MR. FONDO:  But there's got to be something.

23     THE COURT:  Well, there has to be relevant to

24  determine the correctness of any return, right?

25     And what they have said is, we know there's billions of

dollars of bitcoins that are being traded. We know they say that very few people -- very few are actually declaring any gains from bitcoin transactions. That seems to suggest that it's being underreported. Why isn't that a legitimate purpose?

MR. FONDO: Well, then I think they could target anybody. They could target every single -- any single owner of bitcoin at any place, and I don't think it's --

THE COURT: Well, though, that might go to relevance and burden and how much, right? That's where we get -- they narrowed it.

So I wouldn't have enforced the earlier summons, I know -- and that's fine because the IRS says they think it is valid, but they did narrow it. But the question is -- well, let me ask you this. How should they determine if people are paying?

See, unlike banks and cash where the banks are required to notify the government of every transaction over $10,000 and report the interest, you don't have to do that with bitcoin at all.

MR. FONDO: But, your Honor, the IRS was instructed by -- there's a report, right, September 2016, and there are prior reports that say the IRS was essentially admonished by their inspector, the treasury inspector, in general, to do certain things.

To issue, for example, greater information relating to compliance to their rules. They were actually asked to do the

1   third-party reporting that you're referring to.

2      And instead of doing those measures -- in a declaration,

3   one of the declarations submitted by -- one of three submitted

4   by the lead agent actually references that we have third party

5   reporting that number goes up dramatically about compliance

6   with the law.

7      There -- instead what they chose to do was issue -- to

8   take this process.  They, in fact, responded to that report and

9   said we don't have enough resources to do what you want us to

10   do, and instead what they've chosen to do is essentially an

11   enforcement action.

12      And I think when the government uses a powerful tool like

13   this, I think they have to use it wisely.

14        THE COURT:  Is that -- is it more powerful than

15   actually requiring -- so really, because they're going to go

16   run to Congress if that's what you're saying.  You really would

17   rather than that all these bitcoin exchanges have to do the

18   same side of reporting and disclosing that the banks do?

19      Is that what you're saying?

20        MR. FONDO:  So, your Honor, one comment -- we're also

21   talking about the privacy of individuals, of U.S. citizens.

22      And so there is a concern here that this tool has been

23   used to essentially invade into that privacy.  It is a

24   limited -- I mean, it's a tool that Congress gave to the IRS

25   and there's a lot -- and that burden is quite low admittedly,

1    but, your Honor, there's still that burden, and there's still

2    that sense you have to have a legitimate purpose, and then in

3    the context -- we also cite the press release that the IRS had

4    issued, which basically said they're using this as essentially

5    an educational tool -- this action as an educational tool, and

6    that's not what these are supposed to be --

7          THE COURT:  No.  No.  No.  That's what the Humbolt --

8    the H case, the Fifth Circuit.

9          MS. MATCHISON:  *Humble*, yes.

10         THE COURT:  *Humble*, that's it.

11         MR. FONDO:  Yes.

12         THE COURT:  -- case said, but they're not doing that.

13    They're not education.  They want -- I'll go back to, how are

14    they supposed to figure out -- because you're not going to

15    argue to me that people make money off their bitcoin shouldn't

16    have to pay taxes on their gains, right?

17         MR. FONDO:  I'm not.

18         THE COURT:  Okay.  So how is the IRS supposed to

19    enforce that?

20         MR. FONDO:  Well, your Honor, I think that in this

21    context -- I think it goes back to those cases because in those

22    cases, too -- so remember, too, they're not targeting any

23    individuals.

24     The vast majority of these summons are used in the context

25    of, there's a couple of individuals out there that are doing

1    something wrong or something's going on where there's illegal

2    activity --

3             THE COURT:  Or they're trying to find out if they're

4    doing something wrong.  You don't have to have probable cause.

5             MR. FONDO:  No.  I understand.  Your Honor, I'm not

6    trying to use that standard.

7             THE COURT:  It's an investigation tool.

8             MR. FONDO:  It is.

9             THE COURT:  Yes.

10            MR. FONDO:  No, I recognize that.

11            THE COURT:  Okay.

12            MR. FONDO:  I just -- I just think that those cases

13   are applicable, because if you look at those cases, you look at

14   what the Court's decided, which was they said listen, there may

15   be that these people who were, for example, doing the leases

16   are not paying taxes that is appropriate, but there's no

17   evidence that this oil company has any more or higher degree of

18   these people that are failing to pay taxes than anybody else.

19        And there was other -- I mean, there were other aspects in

20   one of those cases too, which was education --

21            THE COURT:  But what do you mean, so they should do

22   the subpoena on every single bitcoin exchange, is that the

23   objection?

24            MR. FONDO:  No, your Honor.

25            THE COURT:  They need to start somewhere, right?

1        MR. FONDO:  Well, they do.  Yes.  But I think, your

2    Honor, at what point then -- as long as they think -- I mean,

3    we can also attack their premise.

4        Their premise was not originally filed with the petition,

5    the original ex parte application, and if you look at the

6    evidence that they submitted, they submitted three examples of

7    people committing supposedly crimes.

8        One of those people they say they were using virtual

9    currency, not bitcoin, and that was also someone that was

10   doing -- excuse me, had been doing abusive things for the

11   priors.

12       The other two sets of transactions that they point to --

13   this is an investigation -- an action that's been going on for

14   two and a half years.  They started this process in June of

15   2014, and the best they came up with, your Honor, is they came

16   up with the example that I gave you before, and then the two

17   other examples where there's two people using bitcoin to

18   basically use it in an improper way relating to deductions.

19       There's nothing indicating that the way they were using it

20   is going to be somehow picked up in Coinbase.

21       And, in fact, what's interesting in that declaration your

22   Honor is --

23       THE COURT:  Wait.  Wait.  Wait.  I don't understand

24   the pick -- what do you mean --

25       MR. FONDO:  Most of these transactions you see the

1   transaction action history, you see where did they buy it at

2   and what did they sell it.  So you can see whether someone is

3   making a profit or loss.

4        As I understand the statements of the declaration -- and I

5   may be misinterpreting it, but as I understand it, the way

6   they're explaining it is that these individuals were using the

7   bitcoin as some type of deduction, like that these were

8   expenses for business expenses when they, in fact, were not.

9        What's also of note there, your Honor, is they don't say

10  those bitcoins were going through Coinbase.  They put in the

11  last sentence they say, by the way these guys have wallets --

12  or these companies have coin-based wallets.

13       But there's no linking, that I'm aware of as I read that

14  declaration, that says, and those were the wallets that were

15  being used in this illegal activity.

16            THE COURT:  I guess I just read it as a little more

17  general from that, which is what I said at the beginning.  We

18  only have about 800 to 900 of the electronic files which are

19  the vast, vast majority of all returns that report any gain

20  that we can tell from bitcoin.  That seems a little low given

21  the amount of bitcoin that's out there these days.

22            MR. FONDO:  So if I can address that, that's based on

23  one survey that was done by the IRS.  It was not part of the

24  original petition, they added it on later.  It's also -- I'm

25  not sure if it was done by the lead agent or at his direction.

It's not clear to me.

      THE COURT:  What case requires that?

      MR. FONDO:  No.  I'm just saying --

      THE COURT:  That's going -- that's a minimal burden, right?  You're arguing something that's not even close to a minimal burden.

      MR. FONDO:  Well, your Honor, the other aspect of that, though, is they didn't use -- I mean listen, you're obviously persuaded by that, but let me just address it.

      THE COURT:  You should.

      MR. FONDO:  So -- but -- but when you look at what they did, they didn't use -- they used the term "bitcoin," but they didn't use a lot of other terms like cryptocurrency, digital currency.  It may be that people used other terms.

    It's hard -- they also, as we noted, they don't identify any of the paper returns.  So I recognize the numbers, your Honor, and I recognize -- but I just don't think that's necessarily enough to issue a summons of this magnitude to Coinbase.

      THE COURT:  You don't have any cases that support that at all.  I mean, that's not the minimal burden.

    I mean maybe if you came forward with evidence and could show no, all our account holders they all pay their taxes on that, here we actually do this, but you can't and you don't.

    That's okay.  I understand.  But you completely, I

1    think -- that's not a minimal burden.  I mean, we're on a

2    legitimate --

3          MR. FONDO:  I understand.

4          THE COURT:  -- it's legitimate -- you would agree it's

5    legitimate for them to investigate whether people making money

6    on their bitcoin transactions are paying the taxes that they

7    should.  That's a legitimate purpose, right?

8          MR. FONDO:  Generally, it is a legitimate purpose,

9    yes, your Honor.

10          THE COURT:  Okay.  So -- all right.  Is there anything

11    you'd like to add?

12          Ms MATCHISON:  The only thing, I think I --

13          MR. WEISS:  May I -- I'm sorry, just the Court -- or

14    the government, may I briefly be heard on behalf of the --

15          THE COURT:  No, you may be heard, but let's --

16          (Simultaneous talking.)

17          MS. MATCHISON:  Just the one thing I would like to

18    point out is a lot of what counsel is talking about seems to be

19    challenging the ex parte determination, your Court's order

20    approving the issuance of the summons.  Those ex parte factual

21    determinations actually cannot be challenged now.  Now we're

22    talking about enforcement within a separate test.  And so I

23    think it's just important to keep in mind that the factors and

24    the things that were already determined on the ex parte are

25    actually not part of the government's showing.

So when you mentioned that he -- the petition -- the ex parte petition didn't include certain information, there were two different petitions here. They're talking about two different standards that the government has to meet and has met.

THE COURT: Okay. But even the legitimate purpose it kind of overlaps with -- the first one is ex parte. I know that's what it says, but judges don't like being held to things that we've done that were ex parte. In any event, just to be candid. If I feel like I made a mistake when it was ex parte, I'll fix it.

MS. MATCHISON: All right.

THE COURT: All right. Let me hear from Mr. Weiss, right?

MR. WEISS: Weiss.

THE COURT: Weiss.

MR. WEISS: Thank you.

Just to sort of amplify a point that counsel for Coinbase made on the cases. The cases sort of fall into two categories. One are the sort of inherent tax avoidance activity, the offshore accounts, you know, the hundred dollar bill cases, the legal tax shelters, that's clearly not at issue here.

The other -- the other cases the IRS already has significant evidence of noncompliance with the tax code. In the barter cases, they've already audited the bartering firms,

1 and they have evidence that, you know, 103 of 107 taxpayers

2 didn't comply.

3     In the tipping cases they audited 27 Minnesota restaurants

4 and found that 19 were compliant, something like that.

5     Here all they have is a survey that I don't think really

6 proves that there's any significant noncompliance.  There's no

7 number as -- there's no sort of denominator of that.  All we

8 have is hey, these are only the people who reported, but

9 there's no indication of what was happening between 2013 and

10 2015 with bitcoin that there should be substantially more

11 people reporting gains.

12         THE COURT:  Than 800 to 900?

13         MR. WEISS:  Again, based on their searches.  I don't

14 know how that one affidavit is frankly persuasive that those

15 are the only people who reported, and there's certainly no

16 indication --

17         THE COURT:  Well, because that's what they said.  I

18 mean, that they did that search and that's what they came up

19 with.

20         MR. WEISS:  But there's no affidavit that says that

21 that search is -- was the correct search.  And the fact that

22 that search was performed after the summons was already issued,

23 I think is also troubling.

24     I don't know how you can make a -- you know, a prima

25 fascia case for a summons that you issued with evidence that

1  you created later --

2      THE COURT:  Now you're challenging the prima fascia

3  case.  But now we're here --

4      MR. WEISS:  The prima fascia case is their first

5  burden for the enforcement petition.

6      THE COURT:  Right.  But her point is that ship has

7  sailed.

8      MR. WEISS:  Not for the enforcement petition I'm

9  talking about.  They have to make a prima fascia case for the

10  enforcement petition.

11      THE COURT:  Okay.  But I guess I don't understand --

12  there's no -- Coinbase hasn't presented to me any evidence that

13  all their account holders pay their taxes.

14      They've come forward with some evidence that there's

15  reason to believe that a lot of people aren't paying taxes on

16  the bitcoin gain.  It could be for a lot of reasons.  It could

17  be totally innocent reasons, maybe they're not making gain as

18  you said.  Maybe they don't think they have to because the IRS

19  hasn't come out, as you've complained, with regulations that

20  would make it clear to a taxpayer as what they should do, and

21  there may be a lot of reasons, but again, why isn't that a

22  legitimate purpose?

23      MR. WEISS:  Well, I think under that theory looking at

24  any taxpayer to see if they've paid their taxes is a legitimate

25  purpose.  I don't think that's the rubber -- you know, I think

1  that would be a rubber stamp.

2     Obviously, the IRS looking at tax compliance is a

3  legitimate purpose, but there has to be some reasonable basis

4  for suggesting that there's not tax compliance --

5        THE COURT:  And what case says that, that there has to

6  be a reasonable basis for suggesting there's not tax

7  compliance?

8     Because what the statute says is, which may be relevant to

9  determine correctness of any return.

10        MR. WEISS:  But to have a legitimate investigative

11 purpose you have to have a reason for doing the investigation

12 in the first place.

13        THE COURT:  Okay.  What case says that?  That, to

14 issue a summons that's what needs to --

15        MR. WEISS:  I'm not talking about issuing --

16        THE COURT:  Okay.

17        MR. WEISS:  I'm talking about enforce -- I'm talking

18 about enforcing the summons.  But I think when the IRS has had

19 a supposed task force on this since 2013 and the only evidence

20 they bring forth is some computer searches they performed after

21 the summons was issued that this task force apparently never

22 engaged in, and there's no indication from any of the

23 investigators of any facts demonstrating noncompliance, I just

24 don't see how that -- how that indicates there's a reason --

25        (Simultaneous talking.)

1      THE COURT:  There's also no facts demonstrating

2  compliance.

3      MR. WEISS:  I don't think it's our burden to

4  demonstrate -- to demonstrate compliance any more than in the

5  example of the IRS should, you know, subpoena the banks for the

6  ATM records, it wouldn't be the taxpayers' burden to

7  demonstrate that they're complying with their --

8      THE COURT:  Well, someone pointed out the ATM records

9  don't really have anything to do with the correctness -- it's

10  not relevant to the correctness of a return, which is what

11  we're looking at here.

12      MR. WEISS:  But under the argument that reviewing tax

13  compliance is a -- that would -- your Honor's making a

14  relevance argument there, but to the extent --

15      THE COURT:  Well, because that's where I actually

16  think it comes down to as opposed to legitimate purpose.

17    I mean, I think what the Supreme Court was concerned with

18  is when the IRS abuses its power, at times it has done, right,

19  to put pressure on people or for whatever reason, because the

20  IRS is people, that they used it for some illegitimate purpose

21  they were using their summons, but it's within to investigate

22  compliance with the tax laws and that's what they're doing.

23      MR. WEISS:  But if they have been investigating for

24  almost four years and they've developed no real evidence, I

25  don't see the argument that this isn't a research project.

1          THE COURT:  And they're using the summons to try to

2    develop that evidence.

3          MR. WEISS:  But --

4          THE COURT:  How else would you develop it?

5          MR. WEISS:  The IRS has substantial powers besides the

6    John Doe -- besides the John Doe summons.  They could have

7    looked at the 900 people who reported and seen if they reported

8    correctly.  There's no indication that the IRS even reviewed

9    those returns for correctness.

10          THE COURT:  Okay.  All right.  Did you want to add

11    anything more on legitimate purpose?

12          MR. FONDO:  I mean, your Honor, so just -- so I just

13    want to clear what Coinbase actually wants to cooperate with

14    the government.  As the government has said, we appreciate it

15    very much.  They said that, you know, Coinbase is not at issue,

16    or no one is saying Coinbase is doing anything wrong.  We just

17    -- you know, Coinbase --

18          THE COURT:  To the contrary.  The reason they gave the

19    subpoena to you is because you're a very legitimate company and

20    they thought you would have the records.

21          MR. FONDO:  Yes, your Honor.  We appreciate that.

22    Thank you for saying that, your Honor.

23          But -- and so we just want to -- we are willing to

24    cooperate and that's why we think going to the legislative or

25    regulatory perspective approach as recommended by the inspector

1   general for the treasury is the appropriate approach for us.

2        THE COURT:  Well, it may be a better approach or

3   whatever, but it's certainly way above my pay grade to say I

4   can't enforce a summons, because I believe a better policy or

5   whatever approach, is to go this way, right?

6       Go do your lobbying and do whatever you want and come

7   in and, you know, that's fine.  But I can't say that, no.  No.

8   No.  No.

9       I have to give tremendous, the Court does, discretion to

10   the agency in terms of how they choose to investigate not just

11   here, whether it's criminal, other agencies all the time, they

12   do that, but I do think your real complaint is about the

13   relevance prong and the breadth, right?

14        MR. FONDO:  Mmmm-hmmm.

15        THE COURT:  In fact, there was a hope and an

16   attempt -- good faith attempt to see if you could resolve the

17   summons issue, and so I assume that's because you were willing

18   to produce some records, otherwise there wouldn't have been

19   any, you know, attempt.

20       So -- let's go to the relevance then, and let's go through

21   them.  And the first is, and maybe you can tell me why, what's

22   the magic number?  It's any account holder who in the

23   three-year period had a single transaction of $20,000 or more;

24   is that right?

25        MS. MATCHISON:  In the four categories if they had

1    over that amount, your Honor.  So excluding, though, people

2    that bought and held, they would do nothing, and people that

3    were identified by Coinbase on 1099s.

4            THE COURT:  Right.  So but what are the four

5    categories then?

6            MS. MATCHISON:  It's buy, send, sell, and receive,

7    your Honor.

8            THE COURT:  Buy -- so is it -- is it cumulatively, or

9    they had one transaction, they bought $20,000 in one day, or

10   they sold $20,000 in one day, or they received $20,000 in one

11   day, or they sent $20,000 in one day?

12           MS. MATCHISON:  Yes.  And cumulative, as well, in that

13   year.  So getting up to a threshold, your Honor, of certain

14   activities of users is what the government is trying to get at.

15           THE COURT:  Okay.  But I thought it was in any single

16   transaction, $20,000?

17           MS. MATCHISON:  Let me just double check that.

18           MR. FONDO:  Your Honor, if I may clarify that?

19           MS. MATCHISON:  Go ahead.

20           MR. FONDO:  My understanding is that the United States

21   keeps information from users with at least the equivalent of

22   $20,000 in any one transaction type, buy, sell, send, or

23   receive in any one year during the 2013 to 2015 --

24           THE COURT:  Oh, in any one transaction.

25           MR. FONDO:  Right.

```
 1              THE COURT:  So if over the course of the year you
 2    bought $20,000, you sold $20,000 --
 3              MS. MATCHISON:  Right.
 4              THE COURT:  -- you received $20,000, but if you
 5    received $5,000 and you bought $10,000, you wouldn't fall
 6    within the summons.
 7              MS. MATCHISON:  That is correct, your Honor.
 8              THE COURT:  Or if you -- oh, put it another way --
 9    yeah.  Okay.  Or if you bought 15,000 and you sold 5,000, you
10    would not be within the scope of the summons.
11              MR. FONDO:  I think -- I think you would.
12              THE COURT:  Well, you said --
13              (Simultaneous talking.)
14              MS. MATCHISON:  In any single transaction type.
15              THE COURT:  Any one transaction type.
16              MR. FONDO:  Right.
17              THE COURT:  So maybe your number's too high.
18              MR. FONDO:  No.  It's not too high, your Honor.
19              THE COURT:  What -- so is that how you calculated
20    it?
21              MR. FONDO:  We didn't calculate it, your Honor, they
22    did.
23              THE COURT:  The number of account holders then?
24              MR. FONDO:  Oh, oh the account holders, yes.  Yes.
25    Yes.
```

1    THE COURT:  Because what you did that is different --

2    UNIDENTIFIED SPEAKER:  We did.

3    THE COURT:  You did --

4    UNIDENTIFIED SPEAKER:  Yes, your Honor.

5    THE COURT:  You got it --

6    MR. FONDO:  Yeah.  Yeah.

7    THE COURT:  Okay.

8    MR. FONDO:  I misspoke, your Honor.

9    THE COURT:  They read it that way, so it has to be in

10   any single transaction type over the course of the year you did

11   at least $20,000.  Okay.  And why -- why did you choose that

12   threshold?

13   MS. MATCHISON:  Your Honor, in consultation with

14   Coinbase and getting a better understanding of the user

15   activity and in a desire to provide a bright line for Coinbase

16   to ease some of the burden, that seemed to be kind of a natural

17   breaking point of numbers.

18   THE COURT:  Okay.  So why isn't that relevant?

19   MR. FONDO:  So, your Honor, I think it's certainly a

20   heck of a lot better than where we were.  I'm not sure, quite

21   frankly, how they picked that number as far as why that number

22   versus 25 or 30, and so, your Honor, I don't -- I don't think

23   there's a real basis, necessarily, to select that number.

24   I also question about are they really going to be

25   examining 14,000 records?

THE COURT:  Well, you mean -- well, let me ask you --
well, I thought they said -- the agent said that it would be,
they would use --

MS. MATCHISON:  So the IRS intends to review all of
the information, but will they audit every single one of those
14,000 --

THE COURT:  No.  Audit is a completely different --

MS. MATCHISON:  Exactly.  The service uses audit and
examined somewhat the same, and so when you say "examined,"
they'll certainly look at the information that (indiscernible)
examination will be started for all of those 14,000, and it
likely wouldn't be appropriate, but they do intend to touch all
the information, review all the information, conduct risk
assessment, look to see if, you know, people filed tax returns
or not, and then determine what sort of action is appropriate
beyond that.

So that could be numbers of things.  It could be sending a
letter asking for corrective returns.  It could be sending a
letter educating taxpayers of their obligations, or starting an
audit.

THE COURT:  Or it could be, if you determined somebody
didn't have any gains, nothing, right?

MS. MATCHISON:  Yes.

THE COURT:  You would do nothing.

MS. MATCHISON:  Absolutely.

1      THE COURT:  But you do intend to look at all of the

2  accounts, that's the question.

3      MS. MATCHISON:  Yes, your Honor.

4      MR. FONDO:  So I mean --

5      THE COURT:  It's not -- it's not that many.  I mean,

6  you guys work at a big civil law firm and those numbers

7  actually pale compared to some cases we're aware of.

8      MR. FONDO:  Well -- no, it's true, your Honor, but it

9  is 14,000 U.S. citizens' records -- excuse me, users and

10  customers, and it's 8.9 million records, and we just have a

11  concern -- setting aside the records perspective, that's a

12  burden on our side, obviously, for Coinbase to produce it, but

13  that's a lot of people.  And we don't think -- we haven't

14  seen -- I mean we started at 500,000, right, your Honor, and

15  there really wasn't any basis for that number.

16      And I'm not sure what the articulated basis for this

17  number is other than it's a smaller number.  And so it goes to

18  sort of our concern here, your Honor, about that -- that

19  this -- I mean, I'm jumping ahead a little bit about the abuse

20  of process (indiscernible) I'll stop --

21      THE COURT:  No.  No.  Just go ahead.  I mean it all --

22  if it's all weaved together, then go ahead.

23      MR. FONDO:  Well, your Honor, the concern we have here

24  is that this is the government.  They came in.  They've used

25  this tool.  Congress has said you have this tool.  We've also

UNITED STATES DISTRICT COURT

created these restrictions on it coming through your Honor

because we're concerned about it being abused.

We think in this context it has been abused.  We think

both in the petition, the ex parte, and also with trying to

enforce it, and even through the narrowing of it.

What I mean by that, your Honor, is they came in -- the

government came in and submitted two declarations.  Both those

declarations were saying that we were looking for -- after two

and a half years of working this through the internal IRS

system what they came up with was a request that we want

basically every record from every U.S. citizen for the period

of three years.

And if Coinbase had not stood up and said we think this is

improper, and there's you know, when the IRS comes calling,

there's a pressure point, right?

Any time the government, particularly the IRS and if

you're a company, so if I -- if Coinbase had said, you know

what, for whatever reason we're afraid of them, we don't want

to spend the litigation costs, whatever reason said, we're not

going to fight it, we would have produced 484,000 customers'

records that the government has now said we don't need and we

don't want.  That's an extraordinary difference.

I recognize that when there's kind of discovery-type

requests, discovery requests get narrowed and that would be

fine, but not in this context when it's the government.  And

two, they've got two declarations saying that this information
is relevant, and I think it goes to the credibility of that
request.

     After two and a half years, how -- how could they not come
up with some type of number that says (indiscernible) this is
de minimis.  I don't think the IRS really needs someone who did
one transaction for a dollar, for example, but that would have
been included in the original request.

     They certainly could have figured out if somebody simply
buys bitcoin and holds it, which is a lot of -- what a lot of
people do because the price keeps going up, that they wouldn't
need that information --

          THE COURT:  Hence, people have gains.

          MR. FONDO:  Well, but they -- only when they sell it,
your Honor.

          THE COURT:  Exactly.

          MR. FONDO:  Only when they sell it.

          THE COURT:  Right.  No, I understand.

          MR. FONDO:  During this time period it was not going
up.  It's going up a lot now.

     So, your Honor, the concern we have here is that this
process has been abused.  That part of -- part of their
obligation is to come into this Court in submitting
declarations and making requests is to do an appropriately
focused request.  And they --

1          THE COURT:  Boy, it's a good thing that doesn't apply

2     to private civil litigators, right?

3          MR. FONDO:  Well, I don't think it does, your Honor.

4     I think the government has a different burden.

5          THE COURT:  What case says that?

6       What case says that I can actually not enforce the summons

7     because they asked for something that was too broad to begin

8     with?  That actually would be contrary, which the cases all say

9     I do have an obligation to narrow it --

10          MR. FONDO:  Yes.  And I --

11          THE COURT:  -- if I need to, but it doesn't say, and

12     if I need to narrow it, boy, I have to not enforce it because I

13     shouldn't have had to narrow it in the first place.

14          MR. FONDO:  No, but, your Honor, I think that when

15     they come in and make -- again, I'm not talking about going

16     from 20,000 to 14,000, what I'm saying is that the abuse of the

17     process is also abuse of this courtroom, right, to issue

18     certain things and to issue an order, and I think when they ask

19     you to issue an order that is wildly overbroad, and they have

20     declarations that say this is what we need, and this is what

21     we're seeking, I think that that is, through your inherent

22     ability as a judge, to say that's an abuse of this process, and

23     that's our concern here.

24       If Coinbase had not stood up and said we're not going to

25     do this, we think this is excessive, it would have been

1    produced.

2        I think what it's saying is, is part of this is saying

3    listen, you've got to get it right.  If you spend two and a

4    half years, you've got to try and focus and be more diligent,

5    quite frankly, about what type of request you're asking, and

6    simply asking for every single record of every single user for

7    a three-year period is clearly overbroad.

8            THE COURT:  Okay.

9            MS. MATCHISON:  But, your Honor, that's not what the

10   law says and that's not what we're here to talk about.

11       The requests have been narrowed, and the test for

12   enforcement is the factors that are articulated under *Powell*;

13   is the summons issued for a legitimate purpose, are the records

14   relevant to that purpose, that investigation, is the

15   information already in IRS's possession, and have the

16   administrative steps been followed?

17       That's the test for good faith for the government's

18   enforcement of a summons.  The government has satisfied those

19   requirements of *Powell*, and the burden is now upon Coinbase and

20   John Doe 4 to come forward with specific evidence to rebut the

21   government's good faith.

22       And we haven't seen -- I haven't seen specific evidence or

23   specific facts or circumstances, all we've seen is somewhat,

24   you know, naked allegations of improper purpose, and that's not

25   what the law requires.

```
 1        THE COURT:  They're not even claiming really improper
 2   purpose that it was too broad.  I mean, if anything, I should
 3   have not issued, if it was overbroad, the summons the first
 4   time.  It's done in ex parte, really, if you wanted to lay
 5   fault, it should be with the Court.
 6        MR. FONDO:  Well, no, your Honor, I think if they had
 7   submitted something in the declaration that said, we're asking
 8   for 500,000 records, but we really only need 14,000, you
 9   wouldn't have issued the order.
10        THE COURT:  Well, they're not saying they really only
11   need 14,000, but let's go through and -- I understand the
12   argument.  I'm not -- I'm not prepared to accept that.
13        I think that would be beyond what any court has said and
14   beyond how or what -- what the improper purpose or the bad
15   faith that the courts have talked about when they refused to
16   enforce, but I do think though when we're talking about
17   relevance, that it is, like discovery, it's an iterative
18   process.  And that while initially, you know -- if you had come
19   forward and you would say even with $20,000 of transactions a
20   year, there's no way there's going to be a gain, but you
21   haven't because you can't because now they've picked a number
22   that there's a good chance there will be some gain that should
23   have been reported.  It may be little or it may be big, you
24   know, I don't know that I looked into that at all, but a lot of
25   these other things though, go to, for example, the know your
```

customer due diligence.  How is that relevant for every single

one of these records?

         MS. MATCHISON:  First of all, I think that -- I think

what we've learned, and Coinbase can correct me, is they don't

actually collect know your customer data for every customer, so

it might only be at a certain threshold, like banks, if this

even applies to the --

         THE COURT:  Okay.

         MS. MATCHISON:  -- 14,000, so it may not be everyone.

    Additionally, the IRS has to verify identity, and

oftentimes in cases --

         THE COURT:  Why?

         MS. MATCHISON:  Why do we have to verify identity?

Because when they're looking at someone's taxable event and

something that would generate gain to a certain person, they

have to confirm that the person whose name on that account is

actually the person that transacted that before they go look at

that person's tax return.

    So the know your customer due diligence information is

important to the IRS to have --

         THE COURT:  Why don't -- if you have their name, their

address, and their tax I.D. number --

         MS. MATCHISON:  Yes.

         THE COURT:  -- why can't you confirm it with that?

Then you pull up their report -- their tax return --

1          MS. MATCHISON:  Right.

2          THE COURT:  -- and you see if they reported it.

3          MS. MATCHISON:  Yes, your Honor.

4      I think that -- so the IRS is gathering information for

5  its investigation and it's not just the kind of bare bones

6  information to just identify these people and look at their

7  returns, they're also gathering other information that might be

8  useful in examinations if it goes forward.

9          THE COURT:  Well --

10         MS. MATCHISON:  So rather than come back and issue

11 some --

12         THE COURT:  No.  No.  No.  Then you come back.  See,

13 then you come back, because it may turn out that of those

14 14,000 whatever account holders there's only 5,000, or 3,000,

15 or 2,000, or according to Coinbase, maybe only two, that you're

16 actually then going to do that, and then you do your subpoena

17 for that, because it's not relevant until you've sort of made

18 that determination.

19     What you're saying is it may become relevant, but -- but

20 why can't you do it in a two-step process?  You can't tell me

21 you're in a hurry, because you haven't been in a hurry.

22         MS. MATCHISON:  Well, I mean, your Honor, the IRS

23 could set a two-step process.  It would be wildly inefficient

24 for the IRS to have to do that.

25     Again the test for relevance is it may shed light on the

correctness of a return.  It's not that it has to shed light on the correctness of every single return to be relevant, and the IRS is not limited to just names and amounts when it issues a John Doe summons, it's a larger scale of relevance, it's not a strict --

THE COURT:  But let's say you get the account and it shows that the person had no gain, they actually lost, why then do you need any of that other stuff?

MS. MATCHISON:  Your Honor, at that point I don't -- I don't know that the IRS would.

THE COURT:  Then it's not relevant.

MS. MATCHISON:  Not relevant to that taxpayer, your Honor.

THE COURT:  Yes.

MS. MATCHISON:  But we're not talking about -- we're not able to parse because we don't have the information, we're not aware of which taxpayers have gain, and which taxpayers don't.

THE COURT:  But you will be.

MS. MATCHISON:  If we get that information, yes.

THE COURT:  You will be.

And then if there's additional information that you need, then you get it then, as opposed to getting it now for everyone, even though many of them you'll never need it.

In other words, why shouldn't that?  Why should the IRS be

1    able to get everything just because it wants to do it all at

2    once, when what you're saying is, admittedly a lot of it may

3    turn out to be completely irrelevant.

4    We put them to the burden of producing, you to the burden

5    of keeping it, organizing, whatever, why shouldn't it be like

6    we would do in a --

7    MS. MATCHISON: Well --

8    THE COURT: -- normal case?

9    MS. MATCHISON: Well, first of all, I'm not admitting

10   that largely most of it will be irrelevant. We don't know.

11   The IRS is not in a position of knowledge like Coinbase is.

12   We don't know who these people are. We don't know what

13   they've done. We don't -- we don't know.

14   The law does not limit the IRS to just giving names in a

15   John Doe summons. And the IRS, for efficiency reasons, wants

16   to get the most information it can up front rather than coming

17   back and issuing additional summons and having those enforced.

18   Could that be done? Yes.

19   But I do think that, again, the standards for relevance

20   for a summons enforcement, it's a very generous view of

21   relevance.

22   THE COURT: Except that you don't have any cases that

23   have enforced a summons this broadly for all this, right?

24   MS. MATCHISON: Well, you know, a lot of the offshore

25   credit card summonses were this broad, but they didn't go to

1    enforcement, a lot of the companies simply complied.

2          THE COURT:  That's what I'm saying, you don't have a

3    case.  Right, you don't have a case.

4          So maybe it's -- today's been first impression day, we

5    might as well get another one.

6          MS. MATCHISON:  But it's not unprecedented, your

7    Honor, is my point, for the IRS to ask this kind of

8    information.  It's just that other companies haven't fought it,

9    and so we haven't had to establish --

10         THE COURT:  I'm not --

11         MS. MATCHISON:  -- law.  It's not that the IRS is

12   somehow breaking ground here in these requests.

13         THE COURT:  I'm not faulting you for asking.  I'm just

14   saying, why can't we do it the way I'm suggesting?  What is

15   wrong with that?

16         What is wrong with saying, we're not going to require them

17   to produce driver's license, passport pictures, all these

18   things given to the IRS, when the IRS admittedly may have

19   absolutely zero need for it for many of these people.

20         And we're talking about thousands of -- potentially, you

21   don't know, some of the account holders could be one in the

22   same -- potentially thousands of people.  And you say well,

23   we've asked for it before and we've gotten it.

24         Okay.  But you haven't had a court say, hands off.  I

25   can't do anything about that.  You have -- you get everything

1    that you want.

2        MS. MATCHISON:  Well, again though, I think under

3    *Powell* the question is whether or not the summons was issued

4    for a legitimate purpose, and then are the records result

5    relevant to that investigation, to that purpose.  Those records

6    would be relevant to the IRS's investigation.

7        THE COURT:  Only if there is a gain.

8        MS. MATCHISON:  Yes, your Honor.

9        THE COURT:  Right?  So I've -- right?  Because you

10   wouldn't -- you wouldn't say to me, if you were actually

11   investigating a particular taxpayer and you knew that they

12   didn't have any a gain that it would be relevant, it wouldn't,

13   but that's essentially because you've decided to do -- which I

14   understand because you don't really have any other way of doing

15   it -- a broad swath, a large amount of account holders.

16     Well, that's okay -- I think it's okay.  They don't think

17   it's okay.  I think it's okay, but I think then you have to

18   take it in steps if you're going to do it that way.  I don't

19   know -- I don't know why we should have all these other

20   communications back and forth with Coinbase.

21        MS. MATCHISON:  Again, because your Honor, in the

22   IRS's institutional experience communications have been

23   valuable again to determining identity or to having some sort

24   of revelation of a transaction.  And again, we don't know what

25   are in those communications.  They could be very relevant to

what sort of trades people were doing, what sort of trades people might have been doing off of the Coinbase platform and other sorts of things.

If there were other users -- other third party using accounts or other people transacting on their account for which other taxable events might accrue at different taxpayers if the IRS wants to --

THE COURT: It could be. But first, why don't you look at the account records and see if there's anything at all to lead you to believe that maybe these other things would be relevant, because right now you don't know.

Just as you came and said, you don't know. I think you should take it -- when you're dealing with 14,000 account holders, why not just take it in a step?

MS. MATCHISON: Yes.

Or alternatively we could just get it all now and spare your Honor having to issue all these other summonses and come back separately for enforcement.

THE COURT: Need is one person versus 14,000 people and all their records, right?

There is, legitimately, a concern about the government simply going and gathering up all the information it wants and holding it when it has no reason to have it.

And I do think that that is a role for the courts to play, particularly when you're going to do a broad, right?

1          MS. MATCHISON:  Well, yes, your Honor.

2          THE COURT:  I'm not going to say oh, no I'll do that

3    because it's a burden to me.  I think that would -- that's not

4    the oath that I took.

5          MS. MATCHISON:  I understand, your Honor, but I'm also

6    not saying there's no reason to have this information.  There

7    is a reason in the course of the IRS's investigation of this to

8    have this information.

9          THE COURT:  There might be.  You can't tell me for any

10   particular one of those John Does that there is.  You can't.

11   You don't know.

12         And all I'm saying is, why don't you wait to see if there

13   is, because the first question -- and it was right in your

14   papers -- was that is what you want to find out is if they had

15   any gains and if they reported them.  Right?

16         That's the first step.  Why don't we just take that first

17   step?

18         No broader than necessary, right?  No broader than

19   necessary to achieve its purpose.

20         MS. MATCHISON:  I'm not sure those are our papers

21   you're looking at.  Are those ours?

22         THE COURT:  Oh, that's a draft order.

23         MS. MATCHISON:  Never mind.

24         MR. FONDO:  We like that, your Honor.

25         THE COURT:  But that's the *Bisceglia* -- Bisceglia

1    (pronunciation) -- Bis-ceg-lia -- that's not my words, the

2    Supreme Court's words -- I don't know who wrote that.

3        Okay.  So let's then go through -- so with respect to the

4    first categories, like what is the -- I don't even pretend to

5    understand what the wallet and the key is.

6            MS. MATCHISON:  Would you like to explain it, or --

7            MR. FONDO:  Your Honor, I think it does come down to

8    the core of what you're addressing.  All they really need to

9    achieve their goal is, they need to know who the individual is

10   through social security number, name, and then what were there

11   transactions.

12           THE COURT:  And address.

13           MR. FONDO:  And address.  That's all.

14       And that will tell them, did this person pay taxes or not?

15       And so all the other -- all the other issues, you know,

16   the bitcoin address, et cetera, and some of the KYC information

17   I think is -- I'm not going to say (indiscernible) you said it

18   better than I would, your Honor.  So -- so I think it really

19   just comes down to, as you've sort of indicated, which is name,

20   address, social security number, and then the transaction

21   number.

22           THE COURT:  Well, let's look at -- so let's look at

23   request number one.

24           MS. MATCHISON:  First of all, your Honor, we would

25   need the wallet address and/or the public key, depending upon

how the transactions were conducted on the exchange of bitcoins

so that we would be able to trace it --

THE COURT:  I think you said --

MS. MATCHISON:  -- so it's not enough to say just the

name and the address.

THE COURT:  You need one or the other, not both.

MS. MATCHISON:  Right.  I believe what Coinbase has

represented in their papers is that they generally only use

wallet addresses and not public keys.  Certainly to the extent

that a public key is used and not a wallet address, then we

would want that information.

THE COURT:  What is a wallet address?

MS. MATCHISON:  So a wallet address is -- and there

are probably people in this room smarter than me on this one,

but my understanding is that when you transact on an exchange

like bitcoin, you essentially keep in your wallet your bitcoins

to trade.

And so a wallet address is generated every time you have a

transaction with somebody, and then that -- it's like one of

those huge long alpha-numeric things that goes on the

blockchain, and then I think a wallet address and a public key

are related, but a private key is the thing that validates the

transaction that actually exchanges the bitcoin between

different parties.

But my understanding is the wallet address is essentially

1    an identifier of the user of the account.

2              THE COURT:  Like the account number?

3              MS. MATCHISON:  Yes, essentially.

4              THE COURT:  So the wallet address is like the account

5    number?

6              MS. MATCHISON:  It's like an identifier.  It's --

7              MR. FONDO:  It's more of an identifier, your Honor.

8              THE COURT:  Of the?

9              MR. FONDO:  Of the transaction.

10             THE COURT:  Okay.  And -- are the transactions,

11   though, that a particular account holder does, connected by the

12   wallet --

13             MR. FONDO:  I'm sorry.  Say that again, your Honor?

14             THE COURT:  -- address?

15        In other words the number, the wallet number -- I do one

16   trade on X day, another trade on Y day, are my wallet --

17             MS. MATCHISON:  There will be a different -- I believe

18   Coinbase has said there's a different wallet address for every

19   transaction.

20             THE COURT:  Okay.

21             MS. MATCHISON:  So I believe those would be kept in

22   your wallet.

23             THE COURT:  But wouldn't they -- on the account

24   statements or whatever you produce, it's going to have that

25   wallet number anyway.

**UNITED STATES DISTRICT COURT**

1          MR. FONDO:  So we don't have account statements, your

2     Honor, but your talking like create a spreadsheet?

3          UNIDENTIFIED SPEAKER:  Let me just address -- I

4     apologize --

5          THE COURT:  No, you can -- you can actually get up and

6     talk.

7          UNIDENTIFIED SPEAKER:  I apologize your Honor.  What's

8     the question?  Where are we?

9          THE COURT:  Well, I don't know what a wallet --

10         MS. MATCHISON:  I think she's trying to figure -- out

11    what is --

12         UNIDENTIFIED SPEAKER:  I understand.  So this is part

13    of the problem by the way, your Honor, we've got some very

14    broad requests from people who don't really know what they're

15    looking for.

16        And what they're submitting to us is putting Coinbase in a

17    very difficult position in terms of burden and everything else.

18        The wallet -- I'm sorry, public keys are essentially

19    irrelevant to our part of this process.

20         THE COURT:  Okay.

21         UNIDENTIFIED SPEAKER:  And those that do have a wallet

22    have a wallet that tend to be consistent with the individual,

23    it could open more than one, but it tends to be consistent

24    within that.

25        And then that wallet address is something that we will

often -- we do provide forward and it can be identified in the blockchain.

THE COURT: Okay. All right. It seems that would be relevant --

MS. MATCHISON: It's a --

THE COURT: -- with the way you're identifying transactions going to a particular account holder.

UNIDENTIFIED SPEAKER: The answer, I think is no. We can provide transaction records without that -- without that specific wallet address. I'm not sure why that would -- the reason it's relevant for us, just to let you know, your Honor, is we built our systems in a very careful way to try to protect PII at every level we possibly can.

THE COURT: PII?

UNIDENTIFIED SPEAKER: I'm sorry. Personal identifiable information.

THE COURT: Yes.

UNIDENTIFIED SPEAKER: Just to try to make sure that we're protecting a customer's privacy and to make sure that we're complying with the laws and everything else.

And this process is going to require quite a lot of work that we don't normally do. There will be system changes for us to try to break stuff out in a way we don't normally have.

THE COURT: Well, you better get used it because you're going to start getting more summons. You're going to

get them from, you know, grand jury summons and the like.  It's
ubiquitous, it's going to be treated just like any other bank
account out there that banks are required to turn over that
information every day.

UNIDENTIFIED SPEAKER:  No, understood your Honor.  We
actually do respond to the summonses all the time.

THE COURT:  Yes.

UNIDENTIFIED SPEAKER:  Or subpoenas rather, all the
time.  We have a team that does nothing but respond to valid
subpoenas.  They're actually much more specific than this, and
we're able to do it in a much more efficient way, and we have
systems set up to do that.

THE COURT:  So what would be your proposal as you
would give the government, at least at this first stab, all the
information that they need?

UNIDENTIFIED SPEAKER:  I think what your Honor's
described is something that seems fair to me, which would be
let's take this a step at a time, give them the information
that they need to identify --

THE COURT:  But what is that information?

UNIDENTIFIED SPEAKER:  Transaction history would
allow -- something to identify the individual and the
transaction history that connects to that so they can see what
happened in the course of the --

THE COURT:  But how is that produced?

1    MR. FONDO:  It's going to have to be created, your

2  Honor.

3    THE COURT:  It would have to be created.  See that --

4  that -- anytime you get to something that's being created, then

5  that's a problem, right?  Because now it's being filtered

6  through you.  I think they're entitled to see the summons of

7  the records that are maintained.

8    MR. FONDO:  I don't believe we can produce -- we don't

9  keep a list of wallet addresses that we can produce like this

10  in this way.

11    UNIDENTIFIED SPEAKER:  I don't think -- there's not a

12  button we can push to send stuff over to them in this form.

13    MS. MATCHISON:  Well -- and your Honor, I -- that is

14  somewhat surprising.  Again, I understand there's a burden here

15  to Coinbase, but it shouldn't be one that's unanticipated or

16  uncontemplated, certainly considering that a lot of their

17  obligations to FinCen or any of the 36 states in which they

18  operate as money transmitters, require them to maintain,

19  preserve, and produce upon demand a lot of this exact same

20  information.

21    THE COURT:  Well, maybe is that how it's couched then?

22  That you want what they are required to produce to X state?

23    MS. MATCHISON:  Well, they have different requirements

24  in every state.  Certainly, I think that the requirements of

25  like Connecticut and New York are the most robust.  And they do

capture most of the categories of information that we've asked

for here, including the know your customer due diligence

information.

MR. FONDO: But it's different, your Honor, when

you're producing for 14,000 people. So if you ask for a

request for a certain person, they can do that, that's what

they do.

But then you ask it for 14,000, and then it's do you

really want -- then do you have -- you make the decision about

do you have 25 people in a room pressing a button for each

client, or do you -- so, I mean, it's maintained and they're

compliant, but it's not as simple as maybe we all would like.

MS. MATCHISON: But, your Honor, just because they've

set up their systems in a manner that makes this information

difficult to produce, is not a reason to find the request

unenforceable.

THE COURT: No. I understand.

Why are like complete user preferences -- complete user

setting, security settings, and --

MS. MATCHISON: Your Honor, the IRS is no longer

seeking --

THE COURT: Oh, I'm looking at the old one --

MS. MATCHISON: So request number one is now limited

to name, address, tax I.D. number, date of birth, account

opening records, copies of passport or driver's license, all

wallet addresses and public keys for all the accounts, wallets, and vaults.

THE COURT:  Okay.

MS. MATCHISON:  And then that last part about the public keys was modified in our papers once we had the response from Coinbase essentially vetting that generally they only use wallet addresses and not public keys.

So we conceded that to the extent that a wallet address or a public key had been used, we just would like that information.

THE COURT:  Okay.  And what then would that request -- that narrowed request in particular?

UNIDENTIFIED SPEAKER:  Your Honor, the account opening records, I'm not sure why those are necessary.  They're going to get records that relate to who owns what account, but I think -- you know, it's not clear to me exactly what account opening records means, necessarily, either.  Maybe we can get clarification on that.

THE COURT:  Okay.  All right.  The know your customer due diligence, I don't -- I think that's something that can wait.  Number 3 --

MS. MATCHISON:  Number 3, your Honor, is another one that has been omitted by the IRS to just agreements or instructions granting a third party access, control, or approval --

1          THE COURT:  I understand (indiscernible) too, that's,

2     sort of, we don't know if that's relevant.

3          Four is the same, right, as before?

4          MS. MATCHISON:  Actually request number four --

5          THE COURT:  That's the actual transaction.

6          MS. MATCHISON:  Exactly.  And that -- and that request

7     we do want the transaction specific information.

8          THE COURT:  Okay.  Number 5, I think we knew that can

9     wait.

10         MS. MATCHISON:  And number 5, your Honor, the IRS is

11    no longer seeking enforcement on 5.

12         THE COURT:  Oh, at all?

13         MS. MATCHISON:  No.

14         THE COURT:  Okay.

15         MR. FONDO:  Your Honor, if I may?

16         THE COURT:  Yes.

17         MR. FONDO:  I just wanted to back up to number four.

18         THE COURT:  Yes.

19         MR. FONDO:  There's a -- at the end of that request it

20    says, all available information identifying the users of such

21    accounts and their contact information.  That seems pretty

22    broad to me, your Honor.

23         THE COURT:  Well, it seems redundant of number one,

24    Right?

25         MS. MATCHISON:  Your Honor, it's any counterparties.

So any counterparties that are identified in transactions, if
there is additional information that Coinbase has on those
contacts, the IRS on would like that.

MR. FONDO: So why would that be relevant unless there
was a transaction that was improper?

MS. MATCHISON: Because it also might lead to other --
other taxpayers who have taxable events that have failed to
comply with tax laws and have failed to report it.

MR. FONDO: This is now going back to that idle hope,
your Honor, which is beyond --

MS. MATCHISON: No, your Honor. This is very much a
part of the IRS's investigation --

THE COURT: Well, that's just an investigation, I
think.

MS. MATCHISON: -- which is into tax noncompliance.

THE COURT: They're just investigating the bitcoin.

All right. And six? I don't --

MS. MATCHISON: Six, your Honor, is limited to just
the correspondence between Coinbase and the user or any third
party about access to the account, about any kind of closing
the account or any sort of transaction activity.

THE COURT: Well, that can wait until you have a
reason to believe that there's a return to investigate or a
non-return, I guess.

And then the last one is all periodic statements of

account or invoices.  Do you have those?

        MR. FONDO:  We do not, your Honor.

        THE COURT:  Okay.  So they don't have those.

        MS. MATCHISON:  One thing I do believe they have a cost basis report that they can -- a cost basis for taxes report that they can run for customers upon request.  And to the extent they ran that for any of the customers that are covered by the summons, that would certainly be of interest to the IRS.

        THE COURT:  To the extent they ran it.  I don't think -- they're not required to create it.  So to the extent you ran it.

        UNIDENTIFIED SPEAKER:  There's not a lot based (indiscernible) --

        THE COURT:  There's not a lot.  It would suggest maybe there's something to investigate, but those people who actually had it ran are probably the -- you're least likely to investigate, right?

        MS. MATCHISON:  I would hope --

        UNIDENTIFIED SPEAKER:  I'm sorry, your Honor.  We make actually make that available -- that information available to the individuals themselves.

        THE COURT:  Oh, I see.

        UNIDENTIFIED SPEAKER:  So I don't mean to say there's not a lot of people that have done it.  I just mean --

1          (Simultaneous talking.)

2          THE COURT:  You mean you just go to the website and

3     you -- and you do what?

4          UNIDENTIFIED SPEAKER:  You can look up the history of

5     transactions, the number of transactions, and also if you don't

6     have that (indiscernible) you can also look up the historic

7     record of prices of different currencies over time.

8          THE COURT:  But is it matched for you or do you have

9     to match it yourself?  In other words, does your --

10          UNIDENTIFIED SPEAKER:  If we have the information, we

11     match it for you, if we don't, you have to match it yourself.

12          MS. MATCHISON:  That was our understanding your Honor,

13     that to the extent they have the basic information, they would

14     supply that to the users, and if they didn't, then they didn't.

15          MR. FONDO:  Well, but I think that's different, your

16     Honor.  What he's saying is you can visually see it, but they

17     didn't run the -- they would only occasionally run actual

18     reports.

19          THE COURT:  All right.  So the reports, I guess that

20     you ran you'd have to produce.  If you didn't run them, they

21     don't have to produce them.

22          MS. MATCHISON:  Right.  If they don't exist --

23          THE COURT:  Okay.

24          MS. MATCHISON:  Because my understanding is, if you

25     were to run that for every single user for every single

transaction, you may not even be able to do that; is that right, or do you have an ability to do that?

MR. FONDO: I don't know.

THE COURT: Well, I don't know that I would make them create reports, that's the thing. I don't think I have to -- can make them create a report, but if the report is there, it's there, but if it hasn't been created -- it should be in the transaction history, in any event.

All right. Well, that's sort of not ruling, that's my thinking. I mean, here, if Mr. Weiss wants to say anything, (indiscernible).

MR. WEISS: Well, your Honor, they're Coinbase's records so I'm not going to speak for them, and I --

THE COURT: I did allow you to intervene.

MR. WEISS: Yes, but they know their records better than I do.

THE COURT: Yes.

MR. WEISS: Certainly, I will say, and I'll defer to them. Them creating a spreadsheet with transaction activity does seem like a much more preferable way to do this.

I mean, I've traded on these platforms. You don't -- when you just trade on a platform, you don't know what your wallet address is. That's just a tool that Coinbase uses. So I'm not sure how that really helps the IRS.

I mean, I'll defer to Coinbase, but if you were to trade,

it looks -- it looks -- it's the same interface and it looks familiar for any sort of online service, it's -- you know, it's got your transaction history and it's all there, and I assume it would probably be easier for them to just import that into a spreadsheet than go through these wallet addresses.

I'm concerned as to why the IRS is so interested in the wallet addresses and doesn't want the spreadsheet. That seems troubling to me.

What they really want are the transactions. If this is all in good faith and they want -- they really just want buy, sell, transfer and Coinbase has the ability to provide that, I don't know why they need any information besides that.

THE COURT: Well, maybe they may be able to work something out now. I mean, until today, right, there's sort of been an argument that it shouldn't be enforced at all.

So there may be a way of working it out. Certainly, it's in the IRS's interest to get something in the most user friendly form possible and that may be the case. I don't -- I don't know.

I mean, if I order the summons enforced with certain of the requests, the parties are free to work it out however they want to work it out. And if something is impossible, then it's impossible then we can address that. I assume you would be able to work it out.

Sort of the bigger issues, though, I'm not -- I do think

1  it's a legitimate purpose and the abuse of process -- I

2  understand the argument.  I don't think -- again, I fault

3  myself on that one there, I should have taken a closer look at

4  it because I do think it was too broad, I agree.

5       This one is still broad, but I think if we take it in

6  steps, it allows the IRS to do their legitimate investigation

7  with -- whatever that quote was I read -- just what's

8  necessary.

9          UNIDENTIFIED SPEAKER:  And your Honor, just to clarify

10 on number one, are we limit -- I mean, obviously your Honor

11 hasn't issued a ruling, but are we still discussing things like

12 copies of driver's license and passports or --

13         THE COURT:  Well, so I don't know how that is

14 maintained.  Like I thought that would be in the know your

15 customer --

16         MR. FONDO:  It is, your Honor.

17         THE COURT:  It would come under the know your customer

18 realm.  I don't think so.

19      If you have the taxpayer I.D. number, you have the

20 address, you have the name, you may want a copy of whatever

21 they gave Coinbase at some point if you have reason to

22 investigate further and you can ask for it at that point.

23      But I think having another agency in the government have

24 all these driver's license and passports when you may have

25 absolutely no need for them is not a good idea.

MS. MATCHISON:  Okay.  Again, you know, the government would argue that this is relevant to the investigation, and that we're not limited to things that are immediately known to be necessary to complete an examination, and that kind of the larger standard for relevance that you look at a summons request for, that those items would be relevant to the IRS's investigation, but I understand.

THE COURT:  Not if you review the transaction records and there's no gain and you're done.  Why do you need to see their driver's license.

MS. MATCHISON:  Yes, your Honor, I agree, for those people we would not.

THE COURT:  Right.  So that's all I'm saying.  Let's just wait and narrow it so that you won't have this whole (indiscernible) of passports and driver's license and other information that you have no reason for.  I mean, I don't even know why you want it.  It just creates risks.  We all know about those.  Anyway, I mean, there's risks, if they have it, it's still risks there.

MS. MATCHISON:  Yes, your Honor.  Also on the risk point just because it's come up, the IRS does receive millions and millions and millions of transaction records every single year from different financial institutions and we have yet to have, in that system, any sort of a breach.

THE COURT:  We know that.  We all know that the IRS

1  keeps those returns very private.

2          MS. MATCHISON:  Yes.  Yes.  That's true we do.

3          MR. FONDO:  Your Honor, my government records were

4  leaked through a hack, so I think it is a real concern.  I

5  recognize that they've probably done better than other

6  agencies --

7          MS. MATCHISON:  Well, not the IRS records.  Other

8  parts of the government absolutely have been hacked, but the

9  IRS -- the IRS records -- same here.

10         THE COURT:  No.  No.  No.  But nonetheless, I do think

11  in 2017 one thing the Court should be sensitive to is that you

12  shouldn't just release lots of data that you may -- that the

13  agency may have no reason -- no need for.  That's just creating

14  unnecessary risk, and I don't think it's needed.

15      You come back at that point for those taxpayers who you'll

16  then being able to identify in person, by the way, and who will

17  then actually get notice, right, in person, which is always

18  preferable to do it that way as opposed to as a John Doe basis,

19  which is now yet another reason I think to do it.

20      Probably the John Doe should be used only to the minimal

21  extent necessary.  If you can then identify those people, then

22  you can go through -- maybe that's the real objection that is a

23  bigger administrative burden to the IRS, but it's completely

24  fair, I think, at that point.

25         MS. MATCHISON:  I understand, your Honor.

 1          THE COURT:  All right.  But -- I'll take the matter

 2    under submission, but you sort of see what my thinking is,

 3    anyway.

 4        Anything further, Mr. Fondo?

 5          MR. FONDO:  Yes, your Honor.  So I think two things.

 6        One is, we would ask for if your Honor ends up ordering

 7    this, the direction seems to be, we would ask for a 60-day stay

 8    so Coinbase can evaluate its options about --

 9          THE COURT:  Well, I don't -- the Supreme Court just

10    ruled one day this week that I can extend the time to appeal

11    and it's not jurisdictional, right?

12        But I don't know why you need to file -- to move for a

13    stay from the Ninth Circuit, right, is that what you're saying?

14          MR. FONDO:  No.  I'm asking for you to stay

15    requirements to turn over the records for 60 days.

16          THE COURT:  Oh.  Oh.  Oh.  For 60 days.

17          MS. MATCHISON:  Your Honor, when summons are enforced,

18    they're immediately enforceable.  And so unless a party does

19    move for a stay and your Honor grants that stay, your summons

20    is completely enforceable upon your order.

21          THE COURT:  Well, what if I were to do this though --

22    sixty days is too long.  What if I were to give you some time

23    to meet and confer with the IRS -- I mean, I guess I don't

24    understand --

25          MS. MATCHISON:  That was my question (indiscernible).

1        MR. FONDO:  So once we produce the records, your

2   Honor, they're out the door.

3        THE COURT:  Yes.

4        MR. FONDO:  So if we had to produce them tomorrow, for

5   example, if we decide to appeal and then your Honor is

6   reversed --

7        THE COURT:  Yes.

8        MR. FONDO:  -- it's sort of -- the records are already

9   gone.

10        THE COURT:  Of course.

11        MR. FONDO:  So that's our concern, your Honor.

12        THE COURT:  Well, you have 30 days.  Oh, I see.  I

13   see.  I can certainly --

14        MS. MATCHISON:  Well -- so, your Honor, they would

15   need to move for a stay, and the United States would like the

16   opportunity to brief whether or not, you know, they are

17   entitled to a stay of your Honor's order.

18      So the government would prefer that if you do enforce the

19   summons, then Coinbase can move for a stay and the parties can

20   brief that.

21        THE COURT:  Okay.  But in the meantime while it's

22   being briefed, they shouldn't have to comply because that would

23   sort of moot the whole request for the stay.

24        MS. MATCHISON:  It is difficult for us to force them

25   to comply with the summons if they're not intending to comply

1   so they can --

2           THE COURT:  It all makes sense.

3           MS. MATCHISON:  But my point is, a stay is not

4   automatic in the summons context.  Typically when a summons

5   becomes enforceable, it's automatically enforceable, it's

6   not -- again pending the parties move for a stay, it's not

7   stayed pending an appeal of the Ninth Circuit.

8           THE COURT:  Yes.

9           MR. FONDO:  And that's why I requested a stay.

10          THE COURT:  Oh, well, she's saying she wants to brief

11  it.

12          MR. FONDO:  Well, we can brief it.  We're fine with

13  that.

14          THE COURT:  Well, maybe you can work something out,

15  too, right?

16      I mean, the IRS has taken a long time with this, so it

17  would be hard to convince me that a 30-day or 60-day somehow

18  prejudices you in the event of time, right, that has been out

19  there.  So --

20          MS. MATCHISON:  I think ours is probably more a legal

21  point than a practical one with the timing, your Honor.

22          THE COURT:  Okay.  Well, I'll issue the order as soon

23  as I can, and then I think it is what it is, and I'm not going

24  to like -- what would happen?  You don't comply because you

25  want a stay -- hopefully, what you'll do is you'll talk to the

1  IRS and see if maybe this is something that you can work out on

2  that point or you'll decide to appeal, in which case then you

3  can move for a stay at that point, and I don't think you would

4  be found in contempt for not complying if you've moved for a

5  stay.

6          MR. FONDO:  Thank you, your Honor.  Okay.  Understood.

7          THE COURT:  Okay.  Great.  Thank you.

8          UNIDENTIFIED SPEAKER:  Your Honor, could we --

9          THE COURT:  Yes.

10         UNIDENTIFIED SPEAKER:  -- just one last -- one issue

11  is with the wallet addresses.  It's a pretty significant burden

12  to be producing it for 14,000 individuals, your Honor.  And

13  it's a --

14         THE COURT:  Why is that?  Like where is that in the

15  record?  Like why?

16     I mean, I guess I don't understand why it's not just there

17  with everything else.

18         UNIDENTIFIED SPEAKER:  Because one, it's also -- every

19  single transaction has a new wallet address, so you're not just

20  talking 14,000 people, you're talking 14,000 times however many

21  transactions they are, and we don't keep -- well, we don't

22  always use -- Coinbase doesn't always use wallet addresses for

23  these transactions.

24         THE COURT:  Okay.  Well, what if I were to say, to the

25  extent a wallet address is associated with the transaction in

1  the records that you produce -- in other words, don't extract

2  it.

3      You're going to be producing transactions -- you may be

4  producing transaction records, right?  And if the wallet

5  address is there, then you should produce it.

6      If what you're saying is I have to go somewhere else to

7  find it and match it, well that's a different matter.  I don't

8  know.  I don't have that here, but if it's there, it shouldn't

9  be redacted.

10          UNIDENTIFIED SPEAKER:  Understood, your Honor.

11          THE COURT:  Yes.

12          UNIDENTIFIED SPEAKER:  I mean, it's a significant

13  burden, but I understand, your Honor.

14          THE COURT:  Okay.  All right.  Thank you.

15          UNIDENTIFIED SPEAKER:  All right.  Thank you, your

16  Honor.

17          MR. FONDO:  Thank you, your Honor.

18          MS. MATCHISON:  Thank you, your Honor.

19          (Whereupon the matter concluded at 3:22 p.m.)

20                          --o0o--

21

22

23

24

25

CERTIFICATE OF TRANSCRIBER

I certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages of the official electronic sound recording provided to me by the U.S. District Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken; and, further, that I am not financially nor otherwise interested in the outcome of the action.

*/s/ VICTORIA L. VALINE*

Victoria L. Valine, CSR 3036, RMR, CRR
NOVEMBER 14, 2017

UNITED STATES DISTRICT COURT