1

2

3

4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

7   UNITED STATES,                          Case No.17-cv-01431-JSC

8              Petitioner,

9        v.                                 **ORDER RE PETITION TO ENFORCE**
                                            **IRS SUMMONS**
10   COINBASE, INC., et al.,
                                            Re: Dkt. Nos. 1, 37, 45
              Respondents.

11

12

13       The Internal Revenue Service ("IRS") served a summons on Coinbase, Inc., a virtual

14   currency exchange, seeking records regarding nearly all of Coinbase's customers for a several-

15   year period.  After Coinbase failed to comply with the summons, the United States of America

16   ("the Government") filed a petition to enforce the summons pursuant to 26 U.S.C. §§ 7402(b) and

17   7604(a).  After the Court heard oral argument on a motion to quash the summons and a motion to

18   intervene, the IRS narrowed the scope of its summons such that it applies to far fewer, but still

19   more than 10,000, Coinbase account holders.  The Court subsequently allowed Doe 4 to intervene,

20   and the parties stipulated to a briefing schedule on the Government's Petition.  Having now

21   reviewed the parties' briefing and having had the benefit of oral argument on November 9, 2017,

22   the Court GRANTS in part and DENIES in part the Petition to Enforce.  The summons as

23   narrowed by the Court serves the IRS's legitimate purpose of investigating Coinbase account

24   holders who may not have paid federal taxes on their virtual currency profits.

25                                        **BACKGROUND**

26   **A.    The Initial IRS Summons**

27       IRS Notice 2014-21 describes how the IRS applies U.S. tax principles to transactions

28   involving virtual currency such as bitcoin.  (Dkt. No. 3 ¶ 8.)  Pursuant to the Notice, virtual

United States District Court
Northern District of California

currencies that can be converted into traditional currency are property for tax purposes.  (*Id.*)

Thus, a taxpayer can have a gain or a loss on a sale or exchange of virtual currency.  (*Id.*)

Last year the Government filed an ex parte petition pursuant to 26 U.S.C. § 7609(h)(2) for an order permitting the IRS to serve a "John Doe" administrative summons on Coinbase ("the Initial Summons").  The Initial Summons sought "information regarding United States persons who at any time during the period January 1, 2013 through December 31, 2015 conducted transactions in a convertible virtual currency as defined in IRS Notice 2014-21."  (Case No. 16-cv-06658-JSC, Dkt. No. 2-4 at 13 ¶ 48.)  It requested nine categories of documents including: complete user profiles, know-your-customer due diligence, documents regarding third-party access, transaction logs, records of payments processed, correspondence between Coinbase and Coinbase users, account or invoice statements, records of payments, and exception records produced by Coinbase's AML system.  (Case No. 16-cv-06658-JSC, Dkt. No. 2 at 13-14.)  Based upon a review of the Petition to Serve and supporting documents, the Court granted permission to serve the Initial Summons upon Coinbase.  (Case No. 16-cv-06658-JSC, Dkt. No. 7.)

**B.      The Petition to Enforce**

The Government served the Initial Summons on Coinbase whose service was accepted by counsel for the company.  (Dkt. No. 3 ¶ 6.)  Coinbase refused to comply.  (*Id.* at ¶¶ 36, 37.)  The Government thereafter brought a petition to enforce the Initial Summons.  (Dkt. No. 1.)  In support of its Petition the Government submitted a declaration from IRS agent David Utzke.  (Dkt. No. 3.)  Mr. Utzke is a senior revenue agent in the IRS's offshore compliance initiatives program and is assigned to virtual currency matters.  (*Id.* ¶ 1.)  Mr. Utzke states that the IRS "is conducting an investigation to determine the identity and correct federal income tax liability of United States persons who conducted transactions in a convertible virtual currency ... for the years ended December 31, 2013, 2014, and 2015."  (*Id.* ¶ 2.)  The IRS believes that virtual currency gains are underreported.  In particular, approximately 83 to 84 percent of taxpayers file returns electronically which are maintained in various databases including the Modernized Tax Return Data Base ("MTRDB").   (*Id.* ¶¶ 11-12.)  Capital gain or loss for property transactions, including those from virtual currency, is reported on IRS Form 8949, which is attached to Schedule D of a

Form 1040.  (*Id*. ¶ 11.)  Form 8949 includes a space where the taxpayer is asked to report the type of property sold.  (*Id*.)  Based upon an IRS search, only 800 to 900 persons electronically filed a Form 8949 that included a property description that is "likely related to bitcoin" in each of the years 2013 through 2015.  (*Id*. ¶ 13.)

Mr. Utzke describes Coinbase's position in the bitcoin exchange business.  (*Id*. ¶ 20.)  By October 2012, the company launched the ability to sell and buy bitcoin through bank transfers.  (*Id*. ¶ 20.)  Coinbase offers buy/sell trading functionality in 33 countries, with (according to its website) 5.9 million customers served and $6 billion exchanged in bitcoin.  (*Id*.)  By the end of 2015, Coinbase was America's largest platform for exchanging bitcoin into U.S. dollars, and the fourth largest globally.  (*Id*.)

**C.     The Narrowed Summons**

Eight months after the Government served the Initial Summons, the IRS filed a "Notice of Narrowed Summons Request For Enforcement" ("Narrowed Summons").  (Dkt. No. 37.)  As modified, the IRS now seeks information regarding accounts "with at least the equivalent of $20,000 in any one transaction type (buy, sell, send, or receive) in any one year during the 2013-2015 period."  (*Id*. ¶ 2.)  The Narrowed Summons "do[es] not include users: (a) who only bought and held bitcoin during the 2013-15 period; or (b) for which Coinbase filed Forms 1099-K during the 2013-15 period."  (*Id*. ¶ 2.)  According to Coinbase, the Narrowed Summons requests information regarding 8.9 million transactions and 14,355 account holders.  (Dkt. No. 46-16 ¶¶ 4-6.)  For those accounts, the IRS seeks the following records:

- **Request 1**: Account/wallet/vault registration records for each account/wallet/vault owned or controlled by the user during the period stated above limited to name, address, tax identification number, date of birth, account opening records, copies of passport or driver's license, all wallet addresses, and all public keys for all accounts/wallets/vaults.

- **Request 2**: Records of Know-Your-Customer diligence.

- **Request 3**: Agreements or instructions granting a third-party access, control, or transaction approval authority.

- **Request 4**: All records of account/wallet/vault activity including transaction logs or other

3

records identifying the date, amount, and type of transaction (purchase/sale/exchange), the

post transaction balance, the names or other identifiers of counterparties to the transaction;

requests or instructions to send or receive bitcoin; and, where counterparties transact

through their own Coinbase accounts/wallets/vaults, all available information identifying

the users of such accounts and their contact information.

- **Request 5**: Correspondence between Coinbase and the user or any third party with access

  to the account/wallet/vault pertaining to the account/wallet/vault opening, closing, or

  transaction activity.

- **Request 6**: All periodic statements of account or invoices (or the equivalent).

(Dkt. No. 37 at 2.)  Coinbase refused to comply with the Narrowed Summons and it along with

John Doe 4 opposed the Government's Petition to Enforce.[1]  (Dkt. Nos. 44, 46.)  Three

organizations also filed amici briefs in opposition: (1) Competitive Enterprise Institute; (2) Coin

Center; and (3) Digital Currency and Ledger Defense Fund.  (Dkt. Nos. 50-2, 52-1, 54-1.)

Mr. Utzke submitted a further declaration in support of the Government's response to

Coinbase's opposition.  (Dkt. No. 65-3.)  Mr. Utzke states that a program analyst in the data

analytics unit of the IRS obtained the data on reported property transactions regarding virtual

currency.  (Dkt. No. 65-3 ¶ 5.)  This analyst ran a query of the data captured from electronically

filed Forms 8949 for years 2013, 2014, and 2015.  (*Id.*)  A list of 18 search terms was developed

using variations of the base query terms "Bitcoin," "Bit Coin," "BTC" and "XBT."  (*Id.*)  Mr.

Utzke is familiar with the methodology used to conduct the search and discussed the query with

the program analyst.  (*Id.*)

In March 2017, the parties began discussions to explore scenarios under which Coinbase

might agree to provide the IRS with user records.  (*Id.* ¶¶ 11, 12.)  The discussions came to an

---

[1] John Doe 4 also asks the Court take judicial notice of two exhibits: (1) a report by the Treasury Inspector General for Tax Administration titled "As the Use of Virtual Currencies in Taxable Transactions Becomes More Common, Additional Actions Are Needed to Ensure Taxpayer Compliance"; and (2) prepared remarks by IRS Commissioner John A. Koskinen before the Council for Electronic Revenue Communication Advancement dated October 23, 2015.  John Doe 4's request is granted.  *See* Fed. R. Evid. 201(b)(2).

United States District Court
Northern District of California

unsuccessful conclusion in July 2017.  (*Id*. ¶ 12.)  According to the Government, the information the IRS learned through these discussions was the "sole basis for its decision to narrow the summons request for which it now seeks enforcement."  (*Id*. ¶ 13.)  In particular, the IRS learned that most of Coinbase's users engage in low volume, low dollar transactions.  (*Id*. ¶ 14.)  The IRS also discovered "what information Coinbase collects and does not collect, and the degree of difficulty Coinbase would face in producing certain information and its possible corresponding investigative value."  (*Id*.)  Mr. Utzke clarifies that "[if ] the Coinbase user and account activity level had been what the IRS expected based on Coinbase's public information gathered prior to the issuance of the summons, the IRS would not have narrowed the requests it is now seeking for enforcement."  (*Id*.  ¶ 15.)

## LEGAL STANDARD

Under 26 U.S.C. § 7602(a), the IRS may issue a summons for "ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or ... collecting any such liability...."  26 U.S.C. § 7602(a); *see also Crystal v. United States*, 172 F.3d 1141, 1143 (9th Cir. 1999) (quoting 26 U.S.C. § 7602(a)).

To obtain a court order enforcing a summons, the IRS must first establish "good faith" by showing that the summons: (1) is issued for a legitimate purpose; (2) seeks information relevant to that purpose; (3) seeks information that is not already in the IRS's possession; and (4) satisfies all of the administrative steps set forth in the Internal Revenue Code.  *United States v. Powell*, 379 U.S. 48, 57-58 (1964).  "'The government's burden is a slight one, and may be satisfied by a declaration from the investigating agent that the *Powell* requirements have been met.'"  *Crystal*, 172 F.3d at 1144 (quoting *United States v. Dynavac, Inc.*, 6 F.3d 1407, 1414 (9th Cir. 1993)).  The showing need only be minimal "because the statute must be read broadly in order to ensure that the enforcement powers of the IRS are not unduly restricted."  *Liberty Fin. Servs. v. United States*, 778 F.2d 1390, 1392 (9th Cir. 1985).

"Enforcement of a summons is generally a summary proceeding to which a taxpayer has few defenses."  *Crystal*, 172 F.3d at 1144 (quoting *United States v. Derr*, 968 F.2d 943, 945 (9th Cir. 1992)).  Once the government has met its burden in establishing the *Powell* elements, if the

United States District Court
Northern District of California

1   respondent chooses to challenge the enforcement, he or she bears a "heavy" burden to show an

2   abuse of process or lack of good faith on the part of the IRS. *United States v. LaSalle Nat'l Bank*,

3   437 U.S. 298, 316 (1978). "'The taxpayer must allege specific facts and evidence to support his

4   allegations of bad faith or improper purpose.'" *Id.* (quoting *United States v. Jose*, 131 F.3d 1325,

5   1328 (9th Cir. 1997)).

6       Once a summons is challenged by a respondent, it must be "scrutinized by the court" to

7   determine whether it seeks information relevant to a legitimate investigative purpose, and the court

8   may choose either to refuse enforcement or narrow the scope of the summons. *Goldman*, 637

9   F.2d at 668.

**DISCUSSION**

10

11  **I.      The Government's Petition to Enforce**

12      There is no dispute that the third and fourth *Powell* factors are satisfied. The Court

13  therefore addresses whether the summons (1) serves a legitimate purpose and (3) seeks relevant

14  information. The answer to the first question is yes and to the second is also yes, albeit in part.

15      **A.      Legitimate Purpose**

16      The Narrowed Summons serves the legitimate purpose of investigating the "reporting gap

17  between the number of virtual currency users Coinbase claims to have had during the summons

18  period" and "U.S. bitcoin users reporting gains or losses to the IRS during the summoned years."

19  (Dkt. No. 65 at 11:4-6.) Coinbase is the largest U.S. exchange of bitcoin into dollars with at least

20  5.9 customers served and 6 billion in transactions while only 800 to 900 taxpayers a year have

21  electronically filed returns with a property description related to bitcoin from 2013 through 2015.

22  This discrepancy creates an inference that more Coinbase users are trading bitcoin than reporting

23  gains on their tax returns. The IRS submitted a declaration from Mr. Utzke attesting to these

24  numbers. This is all that is required to make a "minimal" showing that the Government has met

25  the good faith requirement. *See United States v. Samuels*, *Kramer and Co.*, 712 F.2d 1342, 1344-

26  1345 (9th Cir. 1983).

27      Moreover, Coinbase itself admits that the Narrowed Summons requests information

28  regarding 8.9 million Coinbase transactions and 14,355 Coinbase account holders. That only 800

United States District Court
Northern District of California

6

United States District Court
Northern District of California

1   to 900 taxpayers reported gains related to bitcoin in each of the relevant years and that more than

2   14,000 Coinbase users have either bought, sold, sent or received at least $20,000 worth of bitcoin

3   in a given year suggests that many Coinbase users may not be reporting their bitcoin gains.  The

4   IRS has a legitimate interest in investigating these taxpayers.  *See United States v. Bisceglia*, 420

5   U.S. 121, 149 (1975).  The Government has met its burden.

6       Coinbase argues: (1) it is not clear what portions of Mr. Utzke's declaration are competent

7   testimony supported by personal knowledge; (2) the investigatory purpose that Mr. Utzke offers in

8   his declaration is a mere conclusion not supported by a "proper enforcement purpose"; (3) Form

9   8949 is not the only place a taxpayer could possibly report bitcoin income; (4) taxpayers reporting

10  digital currency income may in fact disproportionately file paper returns; (5) the term "likely

11  related to bitcoin" is vague; (6) taxpayers who purchased at high prices in late 2013 and sold in

12  2014 and 2015 likely experienced losses due to a fall in the price of bitcoin over this period; and

13  (7) the narrowing of the subpoena is arbitrary.  Coinbase's arguments are unpersuasive.

14      First, Mr. Utzke has sufficient personal knowledge because he is a senior manager on the

15  virtual currency investigation team.  Mr. Utzke personally supervised the analyst who performed

16  the search that generated the data to support the Government's Petition.  Neither the statute nor the

17  caselaw requires more.

18      Second, the investigative purpose is not a bare conclusion: it is premised upon Mr. Utzke's

19  declaration that Coinbase is the largest bitcoin exchange company in the United States with 5.9

20  million users yet only 800 to 900 taxpayers have reported property transactions related to bitcoin

21  in each of the relevant years.

22      Third, it is reasonable for the IRS to premise an investigation based on the assumption that

23  taxpayers are reporting bitcoin gains on the correct form - Form 8949.  Respondents have not

24  identified anything that suggests this assumption is made in bad faith or that it is even incorrect.

25      Fourth, as the Government has offered evidence that 83 to 84 percent of taxpayers file

26  returns electronically, even if some Coinbase users file paper returns, it is more likely that the

27  majority of Coinbase users file electronically similar to the rest of the population.  Respondents'

28  lament that Coinbase users may disproportionately file paper tax returns is pure unsupported

speculation; indeed, it seems likely that users of virtual currency would be more likely than the average taxpayer to file electronic returns.

Fifth, to meet its burden of showing a legitimate purpose the Government is not required to define "likely related to bitcoin." It only needs to provide what is has already submitted: a declaration from an IRS agent making a minimal showing that there are a greater number of Coinbase users transacting in bitcoin than those filing electronic tax returns and thus the IRS's investigation is based on a legitimate purpose.

Sixth, that there was a fall in the price of bitcoin over 2014 and 2015 is unpersuasive because the Narrowed Summons seeks information regarding accounts "with at least the equivalent of $20,000 in any one transaction type (buy, sell, send, or receive) in any one year during the 2013-2015 period." Respondents have not submitted anything that suggests that bitcoin account holders are consistently losing money such that during the relevant years they never had any virtual currency profits to declare.

Last, the Court finds that the Government's narrowing of the Initial Summons is not arbitrary. The record reflects that it was based on information the IRS learned after discussions with Coinbase in an attempt to reach an agreement regarding the records Coinbase would produce in response to the Initial Summons. While the Initial Summons was broad, that does not convince the Court that it was issued for some unidentified improper purpose.

Coinbase's reliance on *United States v. Humble Oil & Refining Co.*, 488 F.2d 953, 962-63 (5th Cir. 1974), to argue the IRS may not use the summons power to conduct general research absent an investigation of taxpayers from whom the information is sought is misplaced. In *Humble*, the court denied enforcement of an IRS summons issued to Humble Oil Company because the responding entities and individuals were not the object of an investigation for noncompliance. *Id*. at 954, 962. Instead, the summons was used to obtain information merely as part of the IRS's "research concerning non-compliance with certain provisions of the Internal Revenue Code." *Id*. at 954. An IRS agent testified that "the summons was issued merely to expedite the research process" and "Humble's lessors were not reputed to be more likely to evade the restoration requirements than those of other oil companies." *Id*. at 955.

Here, in contrast, the IRS represents that the investigation's purpose is to examine a "reporting gap between the number of virtual currency users Coinbase claims to have had during the summons period" and "U.S. bitcoin users reporting gains or losses to the IRS during the summoned years." (Dkt. No. 65 at 11:4-7.)  The IRS is conducting the investigation to "ascertain if U.S. taxpayers are correctly filing returns, filing returns at all, or self-reporting their proper tax liability."  (*Id*. at 11:9-10.)  Therefore, the IRS's purpose is related to tax compliance, not research. Further, unlike *Humble*, the IRS provided a declaration describing how the disparity between the number of Coinbase users and the number of electronic returns creates an inference that many Coinbase users are not reporting their bitcoin property gains.  Finally, *Humble* was decided before 26 U.S.C. Section 7609(f)--which outlines the requirements the IRS must meet before a John Doe summons may be issued--was enacted.

Accordingly, the Government has met its minimal burden to show that the Narrowed Summons satisfies a legitimate investigative purpose.

### B.      Relevance

The Government asserts that the records it seeks are relevant because "[a]rmed with the identity of a Coinbase user and their transaction activity the IRS can determine if that user filed a tax return that correctly reflected any bitcoin related gain or loss during the summoned period." (Dkt. No. 65 at 14:5-7.)

> [A]n IRS summons is not to be judged by the relevance standards used in deciding whether to admit evidence in federal court. *Cf*. Fed. Rule Evid. 401. The language "may be" reflects Congress' express intention to allow the IRS to obtain items of even *potential* relevance to an ongoing investigation, without reference to its admissibility. The purpose of Congress is obvious: the Service can hardly be expected to know whether such data will in fact be relevant until it is procured and scrutinized. As a tool of discovery, the § 7602 summons is critical to the investigative and enforcement functions of the IRS . . . ; the Service therefore should not be required to establish that the documents it seeks are actually relevant in any technical, evidentiary sense.

*United States v. Arthur Young & Co.,* 465 U.S. 805, 814 (1984).  "The question...is whether from what the Government already knows there exists the requisite nexus between taxpayer and records of another's affairs to make the investigation reasonable - in short, whether the 'might' in the

1   articulated standard 'might throw light upon the correctness of the return,' is in the particular

2   circumstances an indication of a realistic expectation rather than an idle hope that something may

3   be discovered." *Goldman,* 637 F.2d at 667 (citing *United States v. Harrington*, 388 F.2d 520, 524

4   (2nd Cir. 1969)). Nonetheless, the Government's burden, while not great, is also not non-existent.

5   *Id.* And the summons should be "no broader than necessary to achieve its purpose." *Bisceglia*,

6   420 U.S. at 151.

7           The Court agrees that the Coinbase account holder's identity and transaction records will

8   permit the Government to investigate whether the holder had taxable gains that were not properly

9   declared. But the Government seeks more than that information; it also seeks account opening

10  records, copies of passports or driver's licenses, all wallet addresses, all public keys for all

11  accounts/wallets/vaults, records of Know-Your-Customer diligence, agreements or instructions

12  granting a third-party access, control, or transaction approval authority, and correspondence

13  between Coinbase and the account holder. The Government claims to need these records to verify

14  an account holder's identity and determine if the holder used others to make transactions on the

15  account holder's behalf. However, at this stage, where the Government is seeking records on over

16  10,000 account holders, these requests seek information than is "broader than necessary." *See

17  Bisceglia*, 420 U.S. at 151. The first question for the IRS is whether an account holder had a

18  taxable gain. If the account holder did not, then correspondence between Coinbase and a user is

19  not even potentially relevant. Similarly, while the Government needs an account holder's name,

20  date of birth, taxpayer identification and address to determine if a taxable gain was reported, it

21  only needs additional identity information such as copies of passports and driver' licenses or

22  "Know Your Customer" due diligence *if* there is potentially a taxable gain and *if* there is some

23  doubt as to the taxpayer's identity. If there is not, these additional records will not shed any light

24  on a legitimate investigation.

25          At oral argument the Government explained that it included such broad swaths of records

26  in its summons so that it will not need to return to court to ask for them if and when needed. The

27  Court is unpersuaded. Especially where, as here, the Government seeks records for thousands of

28  account holders through a John Doe summons, the courts must ensure that the Government is not

collecting thousands and thousands of personal records unnecessarily.  Moreover, if the Government later determines that it needs more detailed records on a taxpayer, it can issue the summons directly to the taxpayer or to Coinbase with notice to a named user—a process preferable to a John Doe summons.

The Court therefore finds that the relevant documents as identified in Request 1 are: (1) the taxpayer ID number, (2) name, (3) date of birth, and (4) address.  The remaining items in Request 1 are not relevant at this stage:  account opening records, copies of passports or driver's licenses, all wallet addresses, and all public keys for all accounts/wallets/vaults.

The Court also finds that transaction history, as identified in Requests 4 and 6, is relevant to the Government's legitimate purpose.  Coinbase must produce records of account activity including transaction logs or other records identifying the date, amount, and type of transaction (purchase/sale/exchange), the post transaction balance, and the names of counterparties to the transaction.  The remaining information sought by Request 4 is not relevant at this time: requests or instructions to send or receive bitcoin and information identifying the users of such accounts where counterparties transact through their own Coinbase accounts/wallets/vaults and their contact information.

The Court likewise finds the following documents are not necessary to achieve the Government's legitimate purpose at this stage:

- **Request 2**: Records of Know-Your-Customer diligence,
- **Request 3**: Agreements or instructions granting a third-party access, control, or transaction approval authority, and
- **Request 5**: Correspondence between Coinbase and the user or any third party with access to the account/wallet/vault pertaining to the account/wallet/vault opening, closing, or transaction activity.

These records may become necessary for a specific account holder once the IRS reviews the relevant records; but for many or even most of the account holders they may never be relevant and thus the Court will not order their production.  Accordingly, the Government's Petition to Enforce Requests 1, 4 and 6 is GRANTED as set forth above; in all other respects the Petition to Enforce is

1    DENIED.

2          Respondents' insistence that the entirety of the Narrowed Summons is overbroad because

3    it is not limited to those accounts that "have some indicia of wrongdoing" misstates the law.

4    Probable cause or even reasonable suspicion of wrongdoing is not required for an IRS summons.

5    *See Powell*, 379 U.S. at 51; *Arthur Young & Co.*, 465 U.S. at 813-815.  The Government has met

6    the burden that it does have: it issued the summons for a legitimate purpose and the information

7    identified above is relevant to that purpose.

8    **II.    Abuse of Process**

9          Once the government has met its burden in establishing the *Powell* elements, the party

10   challenging enforcement bears a "heavy" burden to show an abuse of process or lack of good

11   faith.  *United States v. LaSalle Nat'l Bank*, 437 U.S. 298, 316 (1978).  "'The [challenging party]

12   must allege specific facts and evidence to support his allegations of bad faith or improper

13   purpose.'"  *Crystal*, 172 F.3d at 1144 (quoting *United States v. Jose*, 131 F.3d 1325, 1328 (9th Cir.

14   1997)).  An improper purpose includes harassing the taxpayer or putting pressure on him to settle

15   a collateral dispute, or "for any other purpose reflecting on the good faith of the particular

16   investigation."  *Powell*, 379 U.S. at 58.

17         Coinbase argues that the Government committed an abuse of process because it seeks to

18   enforce "a summons that lacks a proper investigative purpose" and "the production of a vast array

19   of documents relating to 14,000 accounts, without any proper foundation."  The Court, however,

20   finds that the Government has met its burden of showing that the Narrowed Summons serves the

21   legitimate investigative purpose of enforcing the tax laws against those who profit from trading in

22   virtual currency.  And the information the Court has ordered produced is relevant and no more

23   than necessary to serve that purpose.  Coinbase's novel insistence that it has met its burden to

24   show abuse of process by virtue of the Government having narrowed its summons is unpersuasive.

25   No court has even suggested such a rule, and this Court declines to be the first.  Coinbase

26   therefore fails to meet its burden to "allege specific facts and evidence to support [its] allegations

27   of bad faith or improper purpose."  *Crystal*, 172 F.3d at 1144 (internal quotation marks and

28   citation omitted).

United States District Court
Northern District of California

12

John Doe 4 argues the Court should at least permit discovery because the IRS's guidance on how to report virtual currency is insufficient, and the IRS is using the Narrowed Summons to harass taxpayers. The Court disagrees. First, John Doe 4's argument about the lack of guidance in effect asks this Court to rule that taxpayers can trade virtual currency tax free until the IRS adopts more specific regulations. No law so limits the power of the IRS. If and when the IRS institutes a tax collection action arising from bitcoin profits a taxpayer may make whatever argument he or she desires about a lack of guidance. But it is not a reason to prevent the IRS from even investigating the failure of some bitcoin traders to pay taxes on their profits. The IRS's failure to provide further guidance after its 2014 notice does not satisfy the "specific facts and evidence" standard to support a finding of an improper purpose.

Second, John Doe 4 provides no statements, documents, or other evidence to support the allegation of harassment. Allegations that the IRS may have abused its power in other investigations have no sway here. Nor are anti-virtual currency statements by politicians and finance leaders sufficient. Without "specific facts and evidence" of harassment related to the investigation at issue, John Doe 4's harassment allegations carry no weight.

Accordingly, the Court concludes Coinbase and John Doe 4 have failed to meet their heavy burden to show abuse of process.

### III.   Evidentiary Hearing

In the event the Court does not deny the Government's petition to enforce outright, which the Court is not doing, Coinbase requests an evidentiary hearing.

If the respondent makes a sufficient showing of bad faith on the Government's part, the respondent is entitled to a limited evidentiary hearing. *Samuels*, 712 F.2d at 1346-47. The party opposing enforcement is required "to do more than allege an improper purpose." *United States v. Church of Scientology*, 520 F.2d 818, 824-25 (9th Cir. 1975). Some evidence that raises a sufficient doubt must be introduced. *Id.* Bald allegations of bad faith IRS  harassment are insufficient. *Id.* Here, Coinbase and John Doe 4 have not made a showing of bad faith or provided any evidence of harassment or other wrong doing that raises a sufficient doubt regarding the Government's purpose. Accordingly, Coinbase and John Doe 4 have failed to meet their

United States District Court
Northern District of California

1  burden to allege more than an improper purpose and their request for an evidentiary hearing is

2  denied.

3  **CONCLUSION**

4  For the reasons described above, the Court GRANTS in part and DENIES in part the

5  Government's petition to enforce the IRS summons.

6  Coinbase is ORDERED to produce the following documents for accounts with at least the

7  equivalent of $20,000 in any one transaction type (buy, sell, send, or receive) in any one year

8  during the 2013 to 2015 period:

9  (1) the taxpayer ID number,

10  (2) name,

11  (3) birth date,

12  (3) address,

13  (4) records of account activity including transaction logs or other records identifying the

14  date, amount, and type of transaction (purchase/sale/exchange), the post transaction

15  balance, and the names of counterparties to the transaction, and

16  (5) all periodic statements of account or invoices (or the equivalent).

17  In all other respects the Petition to Enforce is DENIED.  The Court GRANTS John Doe 4's

18  request for judicial notice.

19  This Order disposes of Docket Nos. 1, 37, and 45.

20

21  **IT IS SO ORDERED.**

22  Dated: November 28, 2017

23

24  JACQUELINE SCOTT CORLEY
United States Magistrate Judge

25

26

27

28

United States District Court
Northern District of California